UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :  Master File No. 08-cv-9522 (SHS)

IN RE CITIGROUP INC. BOND LITIGATION   :

                                :  ECF Case

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**MEMORANDUM OF LAW IN SUPPORT OF THE UNDERWRITER
DEFENDANTS' MOTION TO DISMISS COUNTS III AND V OF
THE CONSOLIDATED AMENDED COMPLAINT**


SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jay B. Kasner
(jay.kasner@skadden.com)
George A. Zimmerman
(george.zimmerman@skadden.com)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for the Underwriter Defendants

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ............................................................................................ 1

STATEMENT OF FACTS .................................................................................................... 5

A.  The Parties ................................................................................................................. 5

    1.  Plaintiffs .......................................................................................................... 5

    2.  The Citigroup Defendants ............................................................................... 6

    3.  The Underwriter Defendants ........................................................................... 6

B.  The Offerings ............................................................................................................. 7

C.  Citigroup Announces Its Subprime Related Exposure .............................................. 7

D.  Claims Against the Underwriter Defendants ............................................................. 8

ARGUMENT ........................................................................................................................ 9

COUNTS III AND V OF THE AMENDED COMPLAINT SHOULD BE DISMISSED ........... 9

I.  PLAINTIFFS LACK STANDING TO SUE UNDER SECTION 12(a)(2) ...................... 9

II.  PLAINTIFFS LACK STANDING UNDER SECTION 11 WITH RESPECT TO
MOST OF THE BOND OFFERINGS ........................................................................... 10

III.  PLAINTIFFS' SECURITIES ACT CLAIMS FAIL TO SATISFY THE
HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b) ................................. 12

    A.  Plaintiffs' Securities Act Claims Sound in Fraud and Are Therefore
Subject to the Heightened Pleading Requirements of Rule 9(b) ......................... 12

    B.  The Amended Complaint Does Not Allege any Untrue Statement or
Actionable Omission with the Requisite Particularity ........................................ 13

    C.  Plaintiffs Fail to Allege Facts Demonstrating Fraudulent Intent on the Part
of the Underwriter Defendants ........................................................................... 13

IV.  PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR
OMISSIONS IN THE OFFERING MATERIALS ........................................................ 16

V.    THE ALLEGATIONS IN THE AMENDED COMPLAINT REVEAL THAT
      PLAINTIFFS ARE ENTITLED TO NO RECOVERY FOR CERTAIN
      OFFERINGS ...................................................................................................... 17

VI.   CERTAIN CLAIMS ASSERTED FOR THE FIRST TIME IN THE AMENDED
      COMPLAINT ARE TIME-BARRED UNDER THE ONE-YEAR STATUTE OF
      LIMITATIONS ................................................................................................... 19

      A.    A One-Year Statute of Limitations Is Applicable ................................ 19

      B.    Claims Arising From the June 28, 2007 Citigroup Global XVIII Offering
            Are Time-Barred................................................................................... 20

      C.    Claims Arising From the May 25, 2007  Citigroup Funding Inc. Offering
            Are Time-Barred................................................................................... 21

CONCLUSION ..................................................................................................... 22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                                    <u>Page</u>

*In re Adelphia Communications Corp. Securities & Derivative Litigation*, No. 03
    MD 1529(LMM), 2005 WL 1278544 (S.D.N.Y. May 31, 2005)........................ 20, 21, 22

*In re Alcatel Securities Litigation*, 382 F. Supp. 2d 513 (S.D.N.Y. 2005) ................................... 9

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ................................................................ 5

*In re Broderbund/Learning Co. Securities Litigation*, 294 F.3d 1201 (9th Cir.
    2002) ........................................................................................................................... 17

*Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398 (S.D.N.Y. 2007) ....................................... 10

*In re Citigroup Inc. Shareholder Derivative Litigation*, Civil Action No. 3338-CC,
    2009 WL 481906 (Del. Ch. Feb. 24, 2009) ................................................................... 15

*Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405 (RPP), 2009 WL
    174656 (S.D.N.Y. Jan. 26, 2009) .................................................................................. 13

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ................................. 5

*Fisher v. Offerman & Co.*, No. 95 Civ. 2566 (JGK), 1996 WL 563141 (S.D.N.Y.
    Oct. 2, 1996) .................................................................................................................. 15

*In re Flag Telecom Holdings, Ltd. Securities Litigation*, 308 F. Supp. 2d 249
    (S.D.N.Y. 2004) ............................................................................................................. 10

*In re Friedman's, Inc. Securities Litigation*, 385 F. Supp. 2d 1345 (N.D. Ga.
    2005) ............................................................................................................................. 12

*Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597 (S.D.N.Y. 2008) ........................................... 13

*Gavish v. Revlon, Inc.*, No. 00 Civ. 7291(SHS), 2004 WL 2210269 (S.D.N.Y.
    Sept. 30, 2004) ............................................................................................................... 5

*In re Global Crossing, Ltd. Securities Litigation*, 313 F. Supp. 2d 189 (S.D.N.Y.
    2003) .................................................................................................................3, 10, 11, 12

*Gustafson v. Alloyd Co.*, 513 U.S. 561 (1995) ....................................................................... 3, 9

*Hoffman v. UBS-AG*, 591 F. Supp. 2d 522 (S.D.N.Y. 2008) ............................................... 11, 12

*In re Initial Public Offering Securities Litigation*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) ........................................................................... 17

*In re JP Morgan Chase Securities Litigation*,
    363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................3, 12,13, 16

*Kalnit v. Eichler*, 264 F.3d 131 (2d Cir. 2001) .................................................... 14, 16

*Kramer v. Time Warner, Inc.*, 937 F.2d 767 (2d Cir. 1991) ........................................5

*Mazzaro de Abreu v. Bank of America Corp.*,
    525 F. Supp. 2d 381 (S.D.N.Y. 2007) ........................................................................ 13

*In re Merrill Lynch & Co. Research Reports Securities Litigation*, 272 F. Supp.
    2d 243 (S.D.N.Y. 2003) .............................................................................................. 18

*In re Merrill Lynch & Co. Research Reports Securities Litigation*, 289 F. Supp.
    2d 416 (S.D.N.Y. 2003) ................................................................................................5

*In re Merrill Lynch & Co. Securities, Derivative & ERISA Litigation*, Master File
    No. 9633 (JSR), Mem. Order (S.D.N.Y. Feb. 27, 2009) .............................................3, 12

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) .................................................... 14, 15

*In re PXRE Group, Ltd. Securities Litigation*, No. 06 Civ. 3410(RJS),
    2009 WL 539864 (S.D.N.Y. Mar. 4, 2009) ............................................................ 14, 16

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) ..................................................... 12

*Rothman v. Gregor*, 220 F.3d 81 (2d Cir. 2000) .........................................................5

*Schoenhaut v. American Sensors, Inc.*, 986 F. Supp. 785 (S.D.N.Y. 1997) ............... 13

*In re Sterling Foster & Co. Securities Litigation*,
    222 F. Supp. 2d 216 (E.D.N.Y. 2002) ...................................................................... 10

*Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008) ...................................................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) .............. 5, 14, 16

Statutes and Rules

15 U.S.C. § 77m ...................................................................................4, 19, 20, 21

17 C.F.R. § 229.512(a)(1)(ii) (2008) ....................................................................... 11

17 C.F.R. § 229.512(a)(2) (2008) ............................................................................ 11

17 C.F.R. § 230.415 (2008) ......................................................................................... 11

Other Authorities

*A Special Report on the World Economy: CSI: Credit Crunch*, Economist, Oct. 18,
    2007, at 89 ............................................................................................................. 7

Randall Dodd, *Subprime: Tentacles of a Crisis*, Fin. & Dev. (Int'l Monetary Fund),
    Dec. 2007, at 15 .................................................................................................... 7

Defendants Banc of America Securities LLC, Barclays Capital Inc., Citigroup Global Markets Inc., Citigroup Global Markets Limited, Credit Suisse Securities (USA) LLC, Deutsche Bank Securities Inc., Goldman, Sachs & Co., Greenwich Capital Markets Inc., JPMorgan Chase & Co. (as alleged successor in liability to Bear, Stearns & Co.), Merrill Lynch, Pierce, Fenner & Smith Inc., Morgan Stanley & Co., Inc., UBS Securities LLC and Wachovia Capital Securities, LLC (collectively, the "Underwriter Defendants") respectfully submit this memorandum of law in support of their motion to dismiss Counts III and V of the Consolidated Amended Complaint (the "Amended Complaint" or "Am. Compl.") with prejudice, pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

In August 2007, the world financial markets experienced an unprecedented liquidity crisis.  Almost overnight, the financial markets seized up and the market for collateralized debt obligations ("CDOs"), which were backed by subprime mortgage assets, collapsed.  As a result of this crisis, nearly every bank on Wall Street announced substantial write-downs of subprime-related assets.

Citigroup Inc. ("Citigroup") was not immune from the financial crisis.  On November 4, 2007, Citigroup announced "significant declines . . . in the fair value of the approximately $55 billion in U.S. sub-prime related direct exposure" and an estimated $8 to $11 billion write-down for the fourth quarter.  (Rosen Decl. Ex. 1.)[1]  As surely as night follows day, the first of four securities fraud actions were filed against Citigroup within days of this announcement (the

---

[1]    Citations to "Rosen Decl. Ex. __" are to documents attached as exhibits to the Declaration of Richard A. Rosen, dated March 12, 2009, filed in support of the Citigroup Defendants' and Individual Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint.  Citations to "Hacker Decl. Ex. __" are to documents attached as exhibits to the Declaration of Gary J. Hacker, dated March 13, 2009, submitted herewith.

"Fraud Actions").  Using the laser-like hindsight that only class action plaintiffs' counsel seem to possess, the plaintiffs asserted that Citigroup knew, or was reckless in not knowing, that the greatest economic collapse since the Great Depression would occur – a collapse that stunned the entire financial world – and, therefore, should have announced its subprime writedowns before it did.  Cloaking their hindsight with the actionable language of the securities laws, plaintiffs alleged, *inter alia*, that Citigroup "concealed the Company's failure to write down impaired securities containing subprime debt" and that the "truth" was only belatedly revealed on November 4, 2007, thereby violating the Securities Exchange Act of 1934 (the "Exchange Act"). (Rosen Decl. Ex. 6, ¶¶ 3, 5-8.)

Almost a year later, on September 30, 2008, the first of two putative class action complaints (the "Securities Act Complaints") was filed in New York State Supreme Court against Citigroup, certain of its present and former officers and directors, its auditor and numerous underwriter defendants alleging violation of Sections 11, 12 and 15 of the Securities Act of 1933 (the "Securities Act").  Utilizing the same hindsight as the Fraud Actions, the Securities Act Complaints alleged that the registration statements and prospectuses relating to certain Citigroup and Citigroup affiliates' debt and preferred stock offerings were "false and misleading" because, among other things, they purportedly incorporated public filings that failed to present accurate disclosures regarding exposure from mortgage-related assets.

The Securities Act Complaints were subsequently removed to this Court and, on January 15, 2009, the Amended Complaint was filed.  The Amended Complaint added five new plaintiffs, seven new underwriter defendants and four new offerings and seeks to hold the Underwriter Defendants and others liable for Securities Act violations stemming from forty-eight separate offerings (the "Offerings") of debt securities over an approximately two year period despite the

fact that, by their own admission, the named plaintiffs ("Plaintiffs") purportedly purchased only *nineteen* of the *forty-eight* classes of Citigroup securities (the "Bond Class Securities") that were originally sold pursuant to those Offerings.

On its face, the Amended Complaint is fatally defective and Counts III and V against the Underwriter Defendants should be dismissed for the following reasons.  First, Plaintiffs lack standing under the Securities Act to assert their claims.  To have standing to sue under Section 12(a)(2), a plaintiff must allege facts sufficient to demonstrate that it purchased securities in the public offerings at issue rather than in any secondary market.  *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995).  Conspicuously absent from the Amended Complaint, however, is *any* allegation that Plaintiffs actually purchased the Bond Class Securities in the public Offerings at issue as opposed to the secondary market.  For this reason alone, the Section 12(a)(2) claims should be dismissed.

To have standing to assert a claim under Section 11, at least one of the named Plaintiffs must have purchased Citigroup securities "traceable" to each of the challenged Offerings.  Plaintiffs, however, admittedly did not purchase twenty-nine of the forty-eight Bond Class Securities upon which their Securities Act claims are premised.  As a result, Plaintiffs lack standing to assert Section 11 claims with regard to such Offerings.  *See In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003).

Second, Plaintiffs' Securities Act claims essentially mirror the fraud tale set forth in the Fraud Actions, and are permeated with precisely the same allegations that this Court has determined "sound in fraud" and, therefore, must satisfy the stringent pleading requirements of Fed. R. Civ. P. 9(b).  *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635-36 (S.D.N.Y. 2005) (Stein, J.); *see also In re Merrill Lynch & Co., Sec., Derivative & ERISA Litig.*,

Master File No. 07 Civ. 9633 (JSR), Mem. Order at 1 (S.D.N.Y. Feb. 27, 2009).  (Rosen Decl. Ex. 31.)  As set forth below, the Amended Complaint falls far short of these pleading requirements and fails to allege the requisite fraudulent intent on the part of the Underwriter Defendants.

Third, regardless of whether the pleading standard of Rule 9(b) or Rule 8(a) is applied, Plaintiffs' Securities Act claims should be dismissed because the Amended Complaint fails to allege any actionable misstatements or omissions in the offering materials.

Fourth, as reflected in the certifications attached to the Amended Complaint, Plaintiffs incurred no losses but instead made profits in connection with their transactions in certain of the Offerings.  Where, as here, a plaintiff sells its securities at a profit, it has suffered no conceivable damages and its Section 11 or Section 12 claim must be dismissed.

Finally, the claims arising under the May 25, 2007 Offering of Series D, Medium Term Notes and the June 28, 2007 Offering of 6.829% Fixed Rate/Floating Rate Enhanced Trust Preferred Securities, which were asserted for the first time in the Amended Complaint, are time-barred under the Securities Act's one-year statute of limitations.  *See* 15 U.S.C. § 77m.  Plaintiffs were on inquiry notice of such claims no later than November 8, 2007 but failed to assert them until January 15, 2009.

For these, and additional reasons outlined below, Counts III and V of the Amended Complaint should be dismissed with prejudice. [2]

---

[2]     To the extent applicable to them, the Underwriter Defendants adopt the arguments set forth in the Citigroup Defendants' and Individual Defendants' Memorandum of Law in support of their motion to dismiss the Amended Complaint.

## STATEMENT OF FACTS[3]

A.    The Parties

1.    Plaintiffs

Plaintiffs are repeat securities class action plaintiffs, several of which have been at the forefront in creating the tsunami of litigation against financial institutions and other companies affected by the credit crisis.  Among other things, Plaintiffs Louisiana Sheriffs' Pension and Relief Fund ("Louisiana Sheriffs") and Louisiana Municipal Police Employees' Retirement System ("LAMPERS") are currently pursuing substantially similar claims to this one against Merrill Lynch and the underwriters of bond offerings over an eighteen month period.  *See In re Merrill Lynch & Co. Sec., Derivative & ERISA Litig.*, Master File No. 07 Civ. 9633 (JSR) (S.D.N.Y.).

Each of the Plaintiffs purports to have "purchased certain Bond Class Securities pursuant to the Shelf Registration Statements and related Public Offering Materials as set forth on its

---

[3]    For purposes of a motion to dismiss, this Court must accept as true only well pled allegations of fact, and not legal conclusions.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).  In addition, the Court may consider "'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference, as well as public disclosure documents required by law to be, and that have been, filed with the SEC, and documents that the plaintiffs either possessed or knew about and upon which they relied in bringing the suit.'"  *Gavish v. Revlon, Inc.*, No. 00 Civ. 7291 (SHS), 2004 WL 2210269, at *11 (S.D.N.Y. Sept. 30, 2004) (Stein, J.) (quoting *Rothman v. Gregor*, 220 F.3d 81, 88-89 (2d Cir. 2000)); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) ("[C]ourts must consider . . . sources courts ordinarily examine when ruling on Rule 12(b)(6) motions . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.").  It is likewise appropriate for the Court to consider market phenomena, such as the unprecedented liquidity crisis that emerged in 2007.  *See, e.g., First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 770 (2d Cir. 1994) (real estate market downturn); *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991) (junk bond market collapse); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 289 F. Supp. 2d 416, 421 n.6 (S.D.N.Y. 2003) (judicial notice of "the internet bubble and its subsequent crash").

certification attached [to the Amended Complaint]."  (Am. Compl. ¶¶ 21-28.)  But, as revealed by those certifications (the contents of which are summarized in Exhibit 1 to the Hacker Declaration), the Plaintiffs collectively purchased only *nineteen* of the *forty-eight* Bond Class Securities that were originally sold pursuant to the Offerings.

      2.   The Citigroup Defendants

Defendant Citigroup is a diversified global financial services holding company whose businesses provide a broad range of financial services to consumer and corporate customers. (Am. Compl. ¶ 29.)  Citigroup is an issuer of certain of the securities at issue in this action.  (*Id.*)

Defendant Citigroup Funding Inc. ("CFI") is a wholly-owned subsidiary of Citigroup.  (*Id.* ¶ 30.)  CFI is an issuer of certain of the securities at issue in this action.  (*Id.*)

Defendants Citigroup Capital XIV-XXI ("Citigroup Trusts") are Delaware Statutory Trusts.  (Am. Compl. ¶¶ 31-38.)  The Citigroup Trusts are issuers of certain of the securities at issue in this action.  (*Id.*)

      3.   The Underwriter Defendants

The Underwriter Defendants are financial services firms that acted as underwriters for certain of the Offerings.  (*Id.* ¶¶ 70-147.)[4]

---

[4]     Plaintiffs and the following underwriters entered into a tolling agreement and a stipulation of dismissal without prejudice so ordered by this Court on February 17, 2009: A.G. Edwards & Sons, Inc.; ABN AMRO Inc.; Apex Pryor Securities; Barclays Bank PLC; B.C. Ziegler and Company; BB&T Capital Markets; Blaylock Robert Van, LLC; BNP Paribas Securities Corp.; C.L. King & Associates, Inc.; Cabrera Capital Markets, LLC; CastleOak Securities, L.P.; Charles Schwab & Co.; Comerica Securities Inc.; Credit Suisse Securities (Europe) Limited; Crowell, Weedon & Co.; D.A. Davidson & Co.; Danske Bank A/S; Davenport & Company LLC; Deutsche Bank AG, London Branch; Doley Securities, LLC; Ferris, Baker, Watts, Inc.; Fidelity Capital Markets, a division of National Financial Services LLC; Advisors Asset Management, Inc. (f/k/a Fixed Income Securities, LP); Fortis Bank NV-SA; Guzman & Co.; H&R Block Financial Advisors Inc. (n/k/a Ameriprise Advisor Services, Inc.); HSBC Securities (USA) Inc.; ING Belgium, SA; J.J.B. Hilliard, W.L. Lyons, Inc.; J.P. Morgan Securities Inc.; Jackson Securities LLC; Janney Montgomery Scott LLC; Jefferies & Company, Inc.;

B.    The Offerings

On March 2, 2006, March 10, 2006 and June 20, 2006, Citigroup, CFI and the Citigroup

Trusts respectively filed shelf registration statements with the SEC on Form S-3 (collectively, the

"Shelf Registration Statements").  (Am. Compl. ¶ 304.)  Between May 18, 2006 and August 19,

2008, Citigroup, CFI and the Citigroup Trusts issued debt securities in a number of separate

offerings, forty-eight of which are at issue in this case.  (*Id.* ¶¶ 304-09.)  A chart of the subject

offerings is attached as Exhibit 1 to the Hacker Declaration.

C.    Citigroup Announces Its Subprime Related Exposure

In the summer of 2007, an unprecedented confluence of events caused volatility in credit

markets worldwide.  By August 2007, the credit markets had suffered an unparalleled liquidity

seizure.  *See CSI: Credit Crunch*, Economist, Oct. 18, 2007.  (Rosen Decl. Ex. 2.)  Indeed, as the

International Monetary Fund noted, "the markets for subprime mortgage-backed securities

became illiquid at the very time that highly leveraged investors such as hedge funds needed to

adjust positions or trade out of losing positions. . . .  As a result, hedge funds stopped trading,

and the collateralized debt obligation market and related credit derivatives markets essentially

ceased to exist."  Randall Dodd, *Subprime: Tentacles of a Crisis*, Fin. & Dev., (Int'l Monetary

Fund), Dec. 2007, at 15, 18.  (Rosen Decl. Ex. 3.)

---

Keefe, Bruyette & Woods, Inc.; KeyBanc Capital Markets; Loop Capital Markets, LLC; Melvin Securities, L.L.C.; Mesirow Financial, Inc.; Morgan Keegan & Company, Inc.; Muriel Siebert & Co.; nabCapital Securities, LLC; Oppenheimer & Co., Inc.; Pershing LLC; Piper Jaffray & Co.; Raymond James & Associates, Inc.; RBC Capital Markets Corporation; RBC Dain Rauscher Inc.; Robert W. Baird & Co., Inc.; The Royal Bank of Scotland plc; Ryan Beck & Co., Inc.; Samuel A. Ramirez & Co., Inc.; Sandler O'Neill & Partners, L.P.; SBK-Brooks Investment Corp.; Stifel, Nicolaus & Company, Inc.; Stone & Youngberg LLC; SunTrust Robinson Humphrey, Inc.; TD Ameritrade, Inc.; TD Securities (USA) LLC; Toussaint Capital Partners, LLC incorrectly named as Toussaint Capital Markets LLC; UBS Limited; Utendahl Capital Partners, L.P., Wedbush Morgan Securities Inc.; Wells Fargo Investments, LLC; William Blair & Company L.L.C.; and The Williams Capital Group, L.P.

It was in this context that on November 4, 2007, Citigroup issued a press release, entitled "Citi's Subprime Related Exposure in Securities and Banking" (the "November 4 Release"). (Am. Compl. ¶ 176.)  The press release announced, among other things, that

> significant declines since September 30, 2007 in the fair value of the approximately $55 billion in U.S. sub-prime related direct exposure in [Citi's] Securities and Banking (S&B) business.  Citi estimates that, at the present time, the reduction in revenues attributable to these declines range from approximately $8 billion to $11 billion (representing a decline of approximately $5 billion to $7 billion in net income on an after-tax basis).

(Rosen Decl. Ex. 1.)

Citigroup would proceed to issue additional write-downs associated with its subprime-related exposure in its Securities and Banking business as the credit markets continued to decline. (*See* Am. Compl. ¶¶ 185-87.)[5]

D.    Claims Against the Underwriter Defendants

Plaintiffs purport to assert two claims against the Underwriter Defendants.  Count III alleges that the Underwriter Defendants violated Section 11 of the Securities Act and Count V alleges that the Underwriter Defendants violated Section 12(a)(2) of the Securities Act.  The Amended Complaint generally alleges, in formulaic fashion, that: (i) the Offerings took place; (ii)

---

[5]    Plaintiffs complain that the market was "shocked" by Citigroup's November 4 Release and that, as a result of this and other disclosures in early November 2007, the Bond Class Securities declined substantially.  (Am. Compl. ¶ 184.)  Of course, the securities offerings that had not yet occurred could not have declined.  Rather, the securities from these post-November 2007 Offerings which Plaintiffs allegedly purchased, traded at or above par at the time of their offerings.  (*See* Rosen Decl. Ex. 4.)  Moreover, a review of the trading records of the subject securities (*see id.*) reveals that many of the securities traded at or above par shortly after various of the Citigroup disclosures that Plaintiffs claim were responsible for significant declines in the securities' prices.  (Am. Compl. ¶¶ 184-87.)  Notwithstanding all of the disclosures about which Plaintiffs complain, the following securities traded at or above par on at least one occasion after the first Securities Act Complaint was filed on September 30, 2008:  172967DP3, 172967DQ1, 172967DU2, 172967DZ1, 172967EC1, 172967EH0, 172967EJ6, 172967EL1, 172967EM9, 172967EP2, 172967EQ0, 172967ES6 and 172967EU1.  (*See* Rosen Decl. Ex. 4.)

certain financial institutions served as underwriters for particular Offerings; (iii) the Offering documents contained "untrue statements of material fact and omitted other facts necessary to make the statements made therein not misleading;" (iv) the Underwriter Defendants "did not make a reasonable investigation or possess reasonable grounds to believe that [the statements in the Offering documents] were true and that there were no omissions of any material fact;" and, as a result, (v) the Underwriter Defendants are liable for violations of Sections 11 and 12(a)(2) of the Securities Act.  (Am. Compl. ¶¶ 374-77, 394-403.)

The Section 11 and Section 12(a)(2) claims are based on the same alleged misstatements and omissions.  Plaintiffs specifically allege that

> [t]he Public Offering Materials associated with each Offering contained untrue statements of material fact and/or omitted to disclose material facts regarding: (1) Citigroup's direct exposure to as much as $66 billion of CDOs containing subprime residential mortgage backed securities ("RMBS"); (2) Citigroup's exposure to approximately $100 billion of securities held by its SIVs; (3) Citigroup's approximately $213 billion portfolio of residential mortgage loans; (4) Citigroup's exposure to approximately $11 billion of impaired, illiquid auction rate securities ("ARS"); (5) the value of Citigroup's assets; (6) the Company's "well capitalized" status; (7) Citigroup's net income; and (8) various other metrics related to Citigroup's financial results during the Offerings Period.

(*Id.* ¶ 150.)

## ARGUMENT

### COUNTS III AND V OF THE AMENDED COMPLAINT SHOULD BE DISMISSED

## I.  PLAINTIFFS LACK STANDING TO SUE UNDER SECTION 12(a)(2)

To have standing to sue pursuant to Section 12(a)(2), a plaintiff must allege facts sufficient to demonstrate that it purchased securities in the public offerings at issue rather than in any secondary market.  *See Gustafson*, 513 U.S. 578; *see also In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530 n.8 (S.D.N.Y. 2005) ("Only those plaintiffs who purchased . . . shares pursuant to (*i.e.*, in) the IPO have standing to bring [a] section 12(a)(2) claim.").

In support of their Section 12(a)(2) claims, Plaintiffs offer nothing more than the boilerplate assertion that they "purchased certain Bond Class Securities pursuant to the Shelf Registration Statements and related Public Offering Materials, as set forth on its certification attached [to the Amended Complaint]."  (Am. Compl. ¶¶ 21-28.)  Conspicuously absent from the Amended Complaint is *any* allegation by the Plaintiffs that they purchased the Bond Class Securities in the public Offerings at issue rather than in the secondary market.  Although Plaintiffs attach certifications to the Amended Complaint that purportedly detail Plaintiffs' "transactions in the securities identified in the [Amended Complaint]," such certifications fail to specify whether such securities were actually purchased *in* the subject Offerings.  Such conclusory and vague pleading is wholly insufficient to establish standing to assert a claim under Section 12(a)(2).  *See Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 407-08 (S.D.N.Y. 2007) (dismissing Section 12(a)(2) claim where complaint did not allege that plaintiffs purchased shares in a public offering); *see also In re Sterling Foster & Co., Sec. Litig.*, 222 F. Supp. 2d 216, 245-46 (E.D.N.Y. 2002) (dismissing Section 12(a)(2) claims where "the plaintiffs fail[ed] to allege that they purchased the securities in a public offering, as opposed to in the aftermarket," despite the fact that "[s]ome of the purchase dates listed in the complaint [were] close enough in time to suggest that the plaintiffs could have made their purchases in the offering").

## II.   PLAINTIFFS LACK STANDING UNDER SECTION 11 WITH RESPECT TO MOST OF THE BOND OFFERINGS

To have standing to assert a Section 11 claim on behalf of a class, "at least one named plaintiff . . . must have purchased [securities] traceable to the challenged offering."  *Global Crossing*, 313 F. Supp. 2d at 207; *see also In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 257 (S.D.N.Y. 2004) (named plaintiff must "have standing to pursue the claims at issue").

10

Here, the Plaintiffs purport to bring their Section 11 claims "on behalf of members of the Class who purchased or otherwise acquired the Bond Class Securities pursuant to or traceable to the materially false and misleading Shelf Registration Statements and Public Offering Materials incorporated by reference in those Registration Statements." (Am. Compl. ¶ 374.)  Nevertheless, as discussed above, the named Plaintiffs admittedly did not purchase twenty-nine of the forty-eight classes of Citigroup securities upon which Plaintiffs premise their Securities Act claims. As a result, Plaintiffs cannot demonstrate that they purchased securities traceable to the twenty-nine Offerings for those securities and, therefore, do not have standing to assert Section 11 claims with regard to such Offerings.  *See Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008) (plaintiffs must show individual standing for each offering); *Global Crossing*, 313 F. Supp. 2d at 207.

Plaintiffs cannot cure their lack of standing under Section 11 by relying on the fact that the forty-eight Offerings set forth in the Amended Complaint originated from the same three shelf offerings.  By regulation, each new issuance pursuant to a shelf offering requires amending the shelf registration statement, *see* 17 C.F.R. § 229.512(a)(1)(ii) (2008), thereby creating a new "registration statement."  *See* 17 C.F.R. § 229.512(a)(2) (2008) ("[F]or the purpose of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein.")  As Plaintiffs concede in the Amended Complaint, the "effective date" of the registration statement "is the date of the relevant Offering, not the earlier date on which the Shelf Registration Statement itself was filed."  (Am. Compl. ¶ 304 (citing 17 C.F.R. § 230.415 (2008); 17 C.F.R. § 229.512(a)(2) (2008)).)  Thus, despite the existence of the Shelf Registration Statements, it necessarily follows that Plaintiffs do not have standing to assert Section 11 claims with respect to

11

Offerings for securities which they admittedly did not purchase. *See, e.g., In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1371-72 (N.D. Ga. 2005) (holding that plaintiffs did not have standing to bring Section 11 claim where they conceded that they had not purchased securities in one challenged offering even though they had purchased securities in a separate offering that originated from the same shelf registration statement); *see also, e.g., Hoffman*, 591 F. Supp. 2d at 532 (even where securities were "substantially identical," plaintiffs must show individual standing for each offering); *Global Crossing*, 313 F. Supp. 2d at 207 (no standing where neither lead plaintiff nor any named plaintiff could trace its shares to offering).

## III.   PLAINTIFFS' SECURITIES ACT CLAIMS FAIL TO SATISFY THE HEIGHTENED PLEADING REQUIREMENTS OF RULE 9(b)

### A.   Plaintiffs' Securities Act Claims Sound in Fraud and Are Therefore Subject to the Heightened Pleading Requirements of Rule 9(b)

Claims under Sections 11 and 12(a)(2) of the Securities Act must comply with the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure if they "sound in fraud." *Rombach v. Chang*, 355 F.3d 164, 171 (2d Cir. 2004). As set forth in the Citigroup Defendants' and Individual Defendants' memorandum of law in support of their motion to dismiss the Amended Complaint, Plaintiffs' Securities Act claims bristle with "'wording and imputations . . . classically associated with fraud,'" *JP Morgan Chase*, 363 F. Supp. 2d at 635 (quoting *Rombach*, 355 F.3d at 172), and are therefore subject to Rule 9(b)'s heightened pleading requirements. (*See* Citigroup Defendants' Moving Br. at Argument, § B.)[6] *See also Merrill Lynch & Co.*, Mem. Order at 1 (holding that Securities Act claims asserted against Merrill Lynch and the underwriters of certain bond offerings utilized "'wording and imputations . . . classically

---

[6]   Citations to "Citigroup Defendants' Moving Br." are to the Memorandum of Law in Support of Citigroup Defendants' and Individual Defendants' Motion to Dismiss the Consolidated Amended Class Action Complaint.

associated with fraud'" and were therefore subject to the heightened pleading standards of Rule 9(b)) (quoting *Rombach*, 355 F.3d at 172). (Rosen Decl. Ex. 31.)

      B.      The Amended Complaint Does Not Allege any Untrue Statement
                or Actionable Omission with the Requisite Particularity

For the reasons set forth in the Citigroup Defendants' and Individual Defendants' memorandum of law in support of their motion to dismiss the Amended Complaint, Plaintiffs have failed to allege any untrue statement or actionable omission with the particularity required by Rule 9(b). (*See* Citigroup Defendants' Moving Br. at Argument, § III.) For this reason alone, Counts III and V of the Amended Complaint should be dismissed.

      C.      Plaintiffs Fail to Allege Facts Demonstrating Fraudulent
                Intent on the Part of the Underwriter Defendants

Plaintiffs' Securities Act claims against the Underwriter Defendants also fail for the independent reason that Plaintiffs do not adequately allege fraudulent intent on the part of the Underwriter Defendants.

It is "only fair that if plaintiffs have pled fraud, they must comply with the requirements of Rule 9(b)." *Schoenhaut v. American Sensors, Inc.*, 986 F. Supp. 785, 795 (S.D.N.Y. 1997). Plaintiffs must, therefore, allege facts showing that the Underwriter Defendants acted with the required state of mind, or "scienter." *See Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405(RPP), 2009 WL 174656, at *15-17 (S.D.N.Y. Jan. 26, 2009) (holding that where Securities Act claims "sound in fraud," the complaint must, among other things, allege facts demonstrating "that the defendants made materially false statements, and that they did so with *scienter*"); s*ee also Mazzaro de Abreu v. Bank of America Corp.*, 525 F. Supp. 2d 381, 387 (S.D.N.Y. 2007); *JP Morgan Chase*, 363 F. Supp. 2d at 635.

"To satisfy the Rule 9(b) . . . pleading requirements with respect to scienter, plaintiffs must allege facts giving rise to a 'strong inference' of fraudulent intent." *Garber v. Legg Mason,*

*Inc.*, 537 F. Supp. 2d 597, 615 (S.D.N.Y. 2008) (citation omitted).  According to the Supreme

Court, for the inference of fraudulent intent to qualify as "strong," it must be more than merely

plausible or reasonable – it "must be cogent and at least as compelling as any opposing

inferences of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499,

2504-05 (2007).

Before *Tellabs*, courts in this Circuit recognized two principal methods for pleading

scienter.  First, scienter could be pleaded through allegations of "motive and opportunity" to

commit fraud.  *See Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000).  However, in *Tellabs*, the

Supreme Court held that "motive" allegations may not be considered in isolation and instructed

that "the significance that can be ascribed to an allegation of motive, or lack thereof, depends on

the entirety of the complaint."  127 S. Ct. at 2511.  Alternatively, scienter could be pleaded by

alleging facts showing "strong circumstantial evidence of conscious misbehavior or

recklessness." *Kalnit v. Eichler*, 264 F.3d 131, 141 n.5 (2d Cir. 2001); *see also In re PXRE*

*Group, Ltd. Sec. Litig.*, No. 06 Civ. 3410(RJS), 2009 WL 539864, at *14, *20 (S.D.N.Y. Mar. 4,

2009).  In this context, recklessness means "highly unreasonable" conduct that "represents an

extreme departure from the standards of ordinary care to the extent that the danger was either

known to the defendant or so obvious that the defendant must have been aware of it." *Kalnit*,

264 F.3d at 142 (citation and internal quotation marks omitted).  Regardless of the pleading

method used, the scienter allegations must now satisfy the *Tellabs* test.  *See Teamsters Local 445*

*Freight Division Pension Fund v. Dynex Capital Inc.*, 531 F.3d 190, 194 (2d Cir. 2008).

Here, any inference of scienter is not cogent and is less compelling than nonfraudulent

inferences.  Indeed, the Amended Complaint is utterly devoid of any alleged facts demonstrating

fraudulent intent on the part of the Underwriter Defendants, let alone that the Underwriter

Defendants had "motive and opportunity to commit fraud" or were somehow "reckless."

      As to "motive," the Amended Complaint offers no reason why the Underwriter

Defendants would have committed fraud.  While Plaintiffs do allege that the Underwriter

Defendants were "motivated at least in part by the desire to serve the Underwriter Defendants'

own financial interest" (Am. Compl. ¶ 397), general allegations that the Underwriter Defendants

acted in their economic self-interest are "not alone sufficient to sustain a strong inference of

fraudulent intent.  If [they] were, every underwriter . . . would have a motive to commit fraud,

which would make Rule 9(b) wholly meaningless."  *Fisher v. Offerman & Co.*, No. 95 Civ. 2566

(JGK), 1996 WL 563141, at *7 (S.D.N.Y. Oct. 2, 1996).  Indeed, it would have been

economically irrational for the Underwriter Defendants to have accumulated positions in

Citigroup knowing that such positions were about to implode, thereby causing significant

economic damage to themselves.  *See, e.g., In re Citigroup Inc. Shareholder Derivative Litig.*,

Civil Action No. 3338-CC, 2009 WL 481906, at *16 n.78 (Del. Ch. Feb. 24, 2009) ("If

defendants had been able to predict the extent of the problems in the subprime mortgage market,

then [Citibank] would not only have been able to avoid losses, but presumably would have been

able to make significant gains . . . by taking positions that would have produced a return when

the value of the subprime securities dropped.").

      With regard to "circumstantial evidence of conscious misbehavior or recklessness,"

Plaintiffs are required to "specifically allege[] defendants' knowledge of facts or access to

information contradicting their public statements."  *Novak*, 216 F.3d at 308.  No such allegation

exists in the Amended Complaint.  Plaintiffs make no particularized factual allegation at all

regarding the Underwriter Defendants' supposed knowledge of or participation in the alleged

scheme.  Moreover, according to the Second Circuit, reckless conduct is "'at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'"  *Kalnit*, 264 F.3d at 142 (citation omitted).  While Plaintiffs have alleged that the Underwriter Defendants failed to conduct a "reasonable and diligent investigation of the statements contained in the Registration Statements and incorporated Public Offering Materials" (Am. Compl. ¶ 377), Plaintiffs have not, by any stretch of the imagination, alleged that the Underwriter Defendants' conduct was "an extreme departure from the standards of ordinary care."  *Kalnit*, 264 F.3d at 142; *see also PXRE Group*, 2009 WL 539864, at *21 ("'[A]n allegation that a defendant merely 'ought to have known' is not sufficient to allege recklessness.'") (citations omitted).

Accordingly, Plaintiffs have not alleged facts demonstrating any inference of scienter, let alone an inference that is "cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs*, 127 S. Ct. at 2510.  The Securities Act claims against the Underwriter Defendants should therefore be dismissed.  *See JP Morgan Chase*, 363 F. Supp. 2d at 635 (dismissing Section 11 claim for failure to allege scienter).

## IV.  PLAINTIFFS FAIL TO ALLEGE ANY ACTIONABLE MISSTATEMENTS OR OMISSIONS IN THE OFFERING MATERIALS

For the reasons set forth in the Citigroup Defendants' and Individual Defendants' memorandum of law in support of their motion to dismiss the Amended Complaint, even if the Court were to determine that Rule 9(b)'s heightened pleading standards are not applicable here, Plaintiffs' Securities Act claims should, nevertheless, be dismissed for failure to sufficiently allege any actionable misstatements or omissions in the Offering Materials.  (*See* Citigroup Defendants' Moving Br. at Argument, § II.)

16

**V.    THE ALLEGATIONS IN THE AMENDED COMPLAINT REVEAL THAT
PLAINTIFFS ARE ENTITLED TO NO RECOVERY FOR CERTAIN
OFFERINGS**

Although Sections 11 and 12 do not require that a plaintiff plead damages, where, as here,

a plaintiff has no conceivable damages, the claim must be dismissed.  *See In re Initial Pub.*

*Offering Sec. Litig.,* 241 F. Supp. 2d 281, 347, 351 (S.D.N.Y. 2003) (dismissing Section 11

claims where plaintiffs suffered no loss).  Accordingly, a plaintiff that sells securities at a profit,

and thus suffered no loss on the transaction, cannot sustain a claim under Section 11 or Section

12.  *See id.*; *see also In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1203-05 (9th Cir.

2002) (where plaintiff's own pleadings revealed that he made a profit on the sale of his securities,

dismissal of Section 11 and Section 12 claims pursuant to Rule 12(b)(6) was proper).

As reflected in Exhibit 2 to the Hacker Declaration, Plaintiffs' certifications demonstrate

that they incurred no losses but instead made profits in connection with their transactions in

certain of the Offerings.  In particular, with respect to Offering No. 6 (the August 25, 2006

offering with CUSIP 172967DR9),[7] plaintiff Miami Beach Employees' Retirement Plan

("Miami") purchased securities for $27,447,475 and sold them for $29,003,150, for a profit of

$1,555,675.  Likewise, Louisiana Sheriffs paid $46,789,450 for the subject securities and sold

them for $46,881,635, thereby turning a profit of $92,185.

Moreover, even if these transactions had not resulted in a profit, they could not support a

Securities Act claim because each of these transactions occurred before November 4, 2007, the

date of the first disclosure that Plaintiffs allege revealed previously undisclosed information.[8]

---

[7]      For ease of identification, each Offering is described by the number assigned to it in
Exhibit 1 to the Hacker Declaration, as well as by offering date and CUSIP.

[8]      As shown for Offering No. 14 (*see* Hacker Decl. Ex. 3) the purchases and sales by
plaintiff Minneapolis Firefighters' Relief Association ("Minneapolis Firefighters") are not

*See In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 272 F. Supp. 2d 243, 255 (S.D.N.Y. 2003) (declines in value of securities occurring prior to public disclosure of allegedly concealed information may not be charged to defendants under Section 11 or Section 12(a)(2)).

With respect to Offering No. 21 (the August 15, 2007 offering with CUSIP 172967EH0), Miami paid $23,914,560 for the subject securities and later sold them for $24,301,360, thereby realizing a profit of $386,800.  With respect to Offering No. 27 (the January 23, 2008 offering with CUSIP 172967598), plaintiff City of Tallahassee Retirement System ("City of Tallahassee") paid $20,000 for the subject securities and later sold them for $20,250, thereby realizing a profit of $250.[9]

Based on the foregoing, Plaintiffs suffered no losses and, therefore, cannot assert a claim under Section 11 or Section 12 for the Offerings numbered 6, 21 and 27.[10]  (*See* Hacker Decl. Ex. 2.)  Thus, after removing (i) Offerings where none of the Plaintiffs alleges a purchase or acquisition of the securities; and (ii) Offerings where the only Plaintiffs to have purchased or acquired securities subsequently sold at a profit, only 16 of the 48 Offerings remain.  (*See* Hacker Decl. Ex. 3.)

---

actionable because they all occurred before any of the disclosures about which Plaintiffs complain.  *See Merrill Lynch & Co.*, 272 F. Supp. 2d at 253-55.

[9]  With respect to the City of Tallahassee's October 2, 2008 transaction, these securities were purchased after this action was commenced on September 30, 2008 and long after the November 2007 disclosures were made.

[10]  For Offering No. 29, Miami has no claim under Section 11 or Section 12 because it purchased these securities for $4,966,100 and sold them for $5,118,750, realizing a profit of $ 152,650.  (*See* Hacker Decl. Ex. 3.)  For offering No. 30, plaintiff Southeastern Pennsylvania Transit Authority ("SEPTA") has no claim under Section 11 or Section 12 because it purchased these securities for $11,939,040 and sold them for $12,020,750, realizing a profit of $81,710.  (*See id.*)

## VI.   CERTAIN CLAIMS ASSERTED FOR THE FIRST TIME IN THE AMENDED COMPLAINT ARE TIME-BARRED UNDER THE ONE-YEAR STATUTE OF LIMITATIONS

### A.   A One-Year Statute of Limitations Is Applicable

Pursuant to the Securities Act, "[n]o action shall be maintained to enforce any liability created under section 11 or section 12(a)(2) unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence."  15 U.S.C. § 77m.  Here, the one-year time-period expired on November 4, 2008 or, at the latest, on November 8, 2008.

The first of the fraud complaints in *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901 (SHS) (S.D.N.Y.)[11] was filed on November 8, 2007, shortly after Citigroup disclosed on November 4, 2007 approximately $55 billion in sub-prime related direct exposure in its securities and banking business.  (Rosen Decl. Ex. 6.)  That complaint purported to assert fraud claims pursuant to Sections 10(b) and 20(a) of the Exchange Act against Citigroup and certain of its officers and alleged that they had issued materially false and misleading statements concerning Citigroup's business and financial results.  (*Id.* Ex. 6, ¶ 3.)  It also alleged that the following Citigroup disclosures contained material false and misleading statements and omissions:  July 17, 2006 earnings results release; August 4, 2006 Form 10-Q for the second quarter of 2006; October 19, 2006 earnings results release; November 3, 2006 Form 10-Q for the third quarter of 2006; January 19, 2007 financial results release; February 23, 2007 Form 10-K for 2006; April 16, 2007 earnings results release; May 4, 2007 Form 10-Q for the first quarter of 2007; July 20, 2007 earnings results release; August 13, 2007 Form 10-Q for the second quarter of 2007; October 15, 2007 earnings results release; and the November 4 Release.

---

[11]     This action is supervised by Lead Plaintiff and Lead Counsel in *In re Citigroup Inc. Sec. Litig.*, No. 07 Civ. 9901 (SHS) (S.D.N.Y.).  (Rosen Decl. Ex. 5.)

Thus, no later than November 8, 2007, holders of Citigroup-related securities were on inquiry notice that Citigroup's financial disclosures allegedly contained material misstatements and omissions concerning its financial condition. *See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MD 1529(LMM), 2005 WL 1278544, *7-11 (S.D.N.Y. May 31, 2005) (holding that a previously filed complaint containing the same allegations as a later complaint and the existence of "storm warnings" triggered inquiry notice).  Any claims asserted after November 8, 2008 must therefore be dismissed.[12]

   B.    Claims Arising From the June 28, 2007
         Citigroup Global XVIII Offering Are Time-Barred

Plaintiffs asserted claims based on Offering No. 45 (the June 28, 2007 offering with CUSIP EG5909395) ("June 28 Offering") for the first time in the Amended Complaint, filed on January 15, 2009.  Thus, these claims should be dismissed as time-barred. *See* 15 U.S.C. § 77m.

On September 30, 2008, plaintiffs LAMPERS and Louisiana Sheriffs filed a putative class action complaint against a subset of the underwriters named as defendants in the Amended Complaint for claims based on a subset of the offerings at issue here.  On October 28, 2008, plaintiffs Minneapolis Firefighters and Louisiana Sheriffs filed a putative class action against a larger subset of the underwriters for claims based on a larger subset of the offerings at issue here. Both the September 30, 2008 and October 28, 2008 complaints were filed within one year of the November 8, 2007 fraud complaint.

Notwithstanding that the allegedly false and misleading documents incorporated in the public offering materials for the June 28 Offering were also incorporated in the public offering materials for most of the offerings at issue in the September 30, 2008 and October 28, 2008

---

[12]    The same disclosures that triggered the November 8, 2007 complaint placed Plaintiffs on inquiry notice of their claims in the present action. *See Adelphia*, 2005 WL 1278544, at *11.

complaints, Plaintiffs waited until filing the Amended Complaint to assert claims based on the June 28 Offering.  (*See* Am. Compl. at A-19-20.)  Further, Plaintiffs for the first time named certain foreign underwriters as defendants.  *Id.*  Accordingly, because the claims based on the June 28 Offering and asserted against the underwriters of that offering were asserted more than one year after the November 4 Release and the November 8, 2007 complaint, these claims should be dismissed as time-barred.[13]  *See Adelphia*, 2005 WL 1278544, at *13 (dismissing as time-barred claims asserted against newly named defendants).  In addition, because Citigroup Global Markets Limited is alleged only to have been an underwriter in connection with the June 28 Offering, it should be dismissed from this action.  (*See* Am. Compl. at A-19-20.)

       C.      Claims Arising From the May 25, 2007
              <u>Citigroup Funding Inc. Offering Are Time-Barred</u>

Like the June 28 Offering, claims based on Offering No. 36 (the May 25, 2007 offering with CUSIP 1730T0CR8) ("May 25 Offering") should be dismissed because they are time-barred under the Securities Act's one-year limitations period.  *See* 15 U.S.C. § 77m.

As discussed above, Plaintiffs were on notice of claims relating to the May 25 Offering as early as November 4, 2008.  The May 25 Offering is alleged to have incorporated some or all of the same purportedly false and misleading public filings incorporated in the offerings that were the subject of the September 30, 2008 and October 28, 2008 complaints.  (*See* Am. Compl. at A-12.)  Accordingly, Plaintiffs' claims relating to the May 25 Offering – which allegedly was solely underwritten by defendant Citigroup Global Markets, Inc. – should be dismissed as time-barred.

---

[13]     The June 28 Offering was allegedly underwritten by Citigroup Global Markets Limited, Barclays Bank PLC, Credit Suisse Securities (Europe) Limited, The Royal Bank of Scotland plc, UBS Limited, BNP Paribas, Deutsche Bank AG, London Branch, Goldman Sachs International and ING Belgium SA-NV.  Plaintiffs named only Citigroup Global Markets Limited, Barclays Bank PLC, Credit Suisse Securities (Europe) Limited, The Royal Bank of Scotland plc, UBS Limited and ING Belgium SA-NV as defendants and tolled claims as to all these defendants except Citigroup Global Markets Limited.

*See Adelphia*, 2005 WL 1278544, at *13 (dismissing as time-barred new claims asserted against previously named defendants).

## CONCLUSION

For the foregoing reasons, the Underwriter Defendants respectfully request that Counts III and V of the Amended Complaint be dismissed in their entirety with prejudice.

Dated:   New York, New York
         March 13, 2009

Respectfully submitted,

/s/ Jay B. Kasner
Jay B. Kasner
(jay.kasner@skadden.com)
George A. Zimmerman
(george.zimmerman@skadden.com)
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for the Underwriter Defendants