UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :   Master File No. 08-cv-9522 (SHS)
IN RE CITIGROUP INC. BOND LITIGATION        :
                                            :   ECF Case
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE UNDERWRITER DEFENDANTS' MOTION TO DISMISS COUNTS III AND V OF THE CONSOLIDATED AMENDED COMPLAINT

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jay B. Kasner
(jay.kasner@skadden.com)
George A. Zimmerman
(george.zimmerman@skadden.com)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for the Underwriter Defendants

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT .................................................................................................................................2

I. PLAINTIFFS LACK STANDING UNDER SECTION 11 WITH RESPECT TO TWENTY-NINE OF THE BOND OFFERINGS ..............................................................2

II. PLAINTIFFS LACK STANDING UNDER SECTION 12(a)(2) .......................................5

III. PLAINTIFFS' CLAIMS AGAINST THE UNDERWRITER DEFENDANTS MUST BE DISMISSED PURSUANT TO RULE 9(b) ........................................................6

IV. PLAINTIFFS CANNOT RECOVER IN OFFERINGS WHERE THEY SOLD THEIR SECURITIES FOR A PROFIT .............................................................................7

V. CLAIMS ARISING FROM THE CITIGROUP GLOBAL XVIII OFFERING AND THE MAY 25 CITIGROUP FUNDING INC. OFFERING ARE TIME-BARRED .............................................................................................................................8

    A. Plaintiffs Were On Inquiry Notice In November 2007 ............................................8

    B. Rule 15's Relation-Back Doctrine Cannot Resurrect Plaintiffs' Claims ..................9

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

Cases                                                                                                    Page

*In re Adelphia Communications Corp. Securities & Derivative Litigation,*
    No. 03 MD 1529(LMM), 2005 WL 1278544 (S.D.N.Y. May 31, 2005)..........................9

*In re BellSouth Corp. Securities Litigation,* 355 F. Supp. 2d 1350 (N.D. Ga. 2005).......................7

*Coronel v. Quanta Capital Holdings Ltd.,* No. 07 Civ. 1405 (RPP),
    2009 WL. 174656 (S.D.N.Y. Jan. 26, 2009) .........................................................................6

*In re Cosi, Inc. Securities Litigation,* 379 F. Supp. 2d 580 (S.D.N.Y. 2005)...................................5

*In re Countrywide Financial Corp. Securities Litigation,*
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) .........................................................................2, 4, 5

*In re DDi Corp. Securities Litigation,* No. CV 03-7063,
    2005 WL 3090882 (C.D. Cal. July 21, 2005)......................................................................4

*Dodds v. Cigna Securities, Inc.,* 12 F.3d 346 (2d Cir. 1993)............................................................9

*In re Dreyfus Aggressive Growth Mutual Fund Litigation,*
    No. 98 CIV. 43182000, 2000 WL. 1357509 (S.D.N.Y. Sept. 20, 2000)..............................3

*In re Friedman's, Inc. Securities Litigation,* 385 F. Supp. 2d 1345 (N.D. Ga. 2005) .....................3

*In re Global Crossing, Ltd. Securities Litigation,* 313 F. Supp. 2d 189 (S.D.N.Y. 2003) ...............3

*Gustafson v. Alloyd Co.,* 513 U.S. 561 (1995).................................................................................5

*Hoffman v. UBS-AG,* 591 F. Supp. 2d 522 (S.D.N.Y. 2008)........................................................2, 3

*In re JP Morgan Chase Securities Litigation,* 363 F. Supp. 2d 595 (S.D.N.Y. 2005) .................1, 6

*In re Juniper Networks, Inc. Securities Litigation,* 542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..........3

*Ladmen Partners, Inc. v. Globalstar, Inc.,* No. 07 Civ. 0976(LAP),
    2008 WL. 4449280 (S.D.N.Y. Sept. 30, 2008).....................................................................6

*Maywalt v. Parker & Parsley Petroleum Co.,* 147 F.R.D. 51 (S.D.N.Y. 1993)...............................3

*In re National Golf Properties, Inc. Sec. Litigation,* No. CV 02-1383,
    2003 WL. 23018761 (C.D. Cal. Mar. 19, 2003)..................................................................7

*Ong ex rel. Ong IRA v. Sears Roebuck & Co.,* 388 F. Supp. 2d 871 (N.D. Ill. 2004)....................4

*In re PMA Capital Corp. Securities Litigation*, No. 03-6121,
  2005 WL. 1806503 (E.D. Pa. July 27, 2005)..................................................................3

*Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004)..............................................................6

*In re Salomon Smith Barney Mutual Fund Fees Litigation*,
  441 F. Supp. 2d 579 (S.D.N.Y. 2006)..........................................................................2

*In re Scottish Re Group Securities Litigation*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007).....7

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124 (2d Cir. 1994).......................................7

*In re Sterling Foster & Co., Securities Litigation*, 222 F. Supp. 2d 216 (E.D.N.Y. 2002).............6

*Tedesco v. Mishkin*, 689 F. Supp. 1327 (S.D.N.Y. 1988).................................................3

*In re WorldCom, Inc. Securities Litigation*, 294 F. Supp. 2d 392 (S.D.N.Y. 2003).....2, 5

<u>Statutes</u>

17 C.F.R. § 229.512(a)(1)(ii)..............................................................................................3

17 C.F.R. § 229.512(a)(2).................................................................................................3

Fed. R. Civ. P. 9(b)....................................................................................................1, 6, 7

Fed. R. Civ. P. 15(c).....................................................................................................9, 10

U.S.C. 15 § 77k(a)............................................................................................................10

## PRELIMINARY STATEMENT[1]

Plaintiffs' opposition admits that they did not purchase twenty-nine of the forty-eight Citibank securities upon which they premise their claims, a prerequisite to standing under Section 11. Plaintiffs' effort to cure this flaw by arguing that all forty-eight Offerings originated from the same three shelf registration statements (PB 63-64) is contrary to the SEC rules governing shelf offerings, as well as the case law in this district on Section 11 standing.

Similarly, Plaintiffs' opposition fails to establish their standing under Section 12(a)(2) by identifying facts in the Amended Complain sufficient to demonstrate that Plaintiffs purchased securities *in each* of the Offerings at issue rather than in any secondary market. While Plaintiffs contend that they have somehow complied with this requirement by alleging that they purchased securities "in the Offerings" (PB 64), such conclusory and vague pleading is insufficient to establish Section 12(a)(2) standing, particularly where, as here, plaintiffs have admittedly *not purchased* twenty-nine of the forty-eight subject securities. These deficiencies are fatal. Standing is a threshold issue and there is no basis to defer the inevitable, as Plaintiffs urge.

In addition, because the Amended Complaint is permeated with "wording" and "imputations" "classically associated with fraud," it must satisfy the stringent pleading requirements of Fed. R. Civ. P. 9(b). Plaintiffs argue that even if the Amended Complaint does "sound in fraud," there is no requirement that they plead fraudulent intent. (PB 32-33.) Such an assertion, however, not only ignores this Court's holding in *In re JP Morgan Chase Securities Litigation*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) (Stein, J.), but also the plain language of Rule 9(b) requiring that all averments of fraud be pled with particularity.

---

[1] To the extent applicable to this motion, the Underwriter Defendants adopt the arguments contained in the Reply Memorandum of the Citigroup Defendants. Capitalized terms not otherwise defined have the meanings ascribed to them in the Underwriter Defendants' moving brief ("UB"). References to Plaintiffs' Opposition Brief are noted as "PB".

It is also undisputed on this record that Plaintiffs sold certain of the subject securities at a profit and/or prior to the first purported corrective disclosure. Although Plaintiffs contend they "listed their profitable trades . . . not for standing purposes, but merely to reflect all transactions in the [securities]" (PB 64, n.44), because they concede such transactions were profitable, they have not suffered a loss and any claims premised on such securities must be dismissed.

Finally, Plaintiffs' claims regarding two of the subject securities are time-barred. While Plaintiffs argue that they were not on inquiry notice of their claims until November 2008 and that the claims somehow "relate back" to the original complaints in this action (PB 65-66), such arguments have no basis in either fact or law.

## ARGUMENT

### I. PLAINTIFFS LACK STANDING UNDER SECTION 11 WITH RESPECT TO TWENTY-NINE OF THE BOND OFFERINGS

Plaintiffs did not purchase twenty-nine of the forty-eight Citigroup Securities upon which their Securities Act claims are premised. Nevertheless, in an effort to salvage their lack of standing, Plaintiffs argue that (i) Defendants' standing challenge is somehow "premature" (PB 63) and (ii) the forty-eight challenged Offerings originated from the same three shelf registration statements. (*Id.* at 63-64.) Neither contention has merit.

First, standing is a threshold issue that may properly be adjudicated on a motion to dismiss. As Judge Sand held in *Hoffman v. UBS-AG*, 591 F. Supp. 2d 522, 532 (S.D.N.Y. 2008) – a case nowhere addressed by Plaintiffs – "[s]tanding concerns the scope of the court's power in the first instance" and "is antecedent to the class certification issue." *See also In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579, 607 (S.D.N.Y. 2006).[2]

---

[2] The cases cited by Plaintiffs (PB 63) are not to the contrary. In *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 420 (S.D.N.Y. 2003), two named plaintiffs had, in fact, purchased WorldCom bonds pursuant to the subject offerings even though lead plaintiff had not. *Id.* As a result, the court simply held that the complaint adequately

Second, try as they might, Plaintiffs cannot cure their lack of standing under Section 11 by relying on the fact that the forty-eight Offerings originated from the same three shelf registrations. (PB 63.) Each new issuance pursuant to a shelf offering requires amending the shelf registration statement, *see* 17 C.F.R. § 229.512(a)(1)(ii), thereby creating a new "registration statement." 17 C.F.R. § 229.512(a)(2)). Indeed, Plaintiffs themselves concede that the "effective date" of the registration statement "is the date of the relevant Offering, not the earlier date on which the Shelf Registration Statement itself was filed." (Am. Compl. ¶ 304.) Thus, only those persons or entities acquiring the subject securities *in each respective Offering* possess standing to sue. *See, e.g., Hoffman*, 591 F. Supp. 2d at 531-32 (even where securities were "substantially identical," plaintiffs must show individual standing for each offering).

It is therefore insufficient for Plaintiffs to assert, as they do here, that they have "suffered a common injury shared by the purchasers of all of Citigroup's Bond Class Securities." (PB 63.) As Judge Lynch observed in *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003), "it is not enough that plaintiffs seek damages only for a class that has standing; at least one named plaintiff must be a member of that class – that is, a named plaintiff must have purchased shares traceable to the challenged offering."[3]

---

alleged that the named plaintiffs "[had] standing to assert claims based on the two Offerings" and stated that whether the various plaintiffs are "adequate class representatives [would] be determined at the time that the class certification motion is litigated." *Id.* at 422-23. Moreover, in the two California cases cited by Plaintiffs (PB 63) – *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1166-67 (C.D. Cal. 2008) and *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1052 (N.D. Cal. 2008) – the courts did, in fact, make rulings on certain aspects of the defendants' standing arguments at the motion to dismiss stage.

[3] The cases cited by Plaintiffs in support of Section 11 standing are wholly inapposite. (*See* PB 63.) In *In re Friedman's, Inc. Sec. Litig.*, 385 F. Supp. 2d 1345, 1372-73 (N.D. Ga. 2005), the court actually held that plaintiffs lacked Section 11 standing where, as here: (i) they conceded that they had not purchased securities in one challenged offering even though they had purchased securities in a separate offering that originated from the same shelf registration statement, (ii) the two offerings had separate prospectus, and (iii) the two offerings were separately underwritten. Moreover, neither *In re Dreyfus Aggressive Growth Mutual Fund Litig.*, No. 98 CIV. 43182000, 2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000), *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51 (S.D.N.Y. 1993), nor *Tedesco v. Mishkin*, 689 F. Supp. 1327 (S.D.N.Y. 1988) addressed a motion to dismiss for lack of standing. Each of those cases arose in the context of class certification motions and involved the very different

The decision in *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F. Supp. 2d 1132 (C.D. Cal. 2008) (PB 63-64), is contrary to the SEC rules governing shelf offerings and other relevant precedents. Moreover, it was expressly limited to the facts of that case, which are distinguishable from those alleged by Plaintiffs herein.

There, the court allowed the plaintiffs to pursue claims on a series of securities they did not purchase because there was an overlap with the series they did purchase in the allegedly false documents incorporated by reference in the registration supplements. *Id.* at 1166. The court specifically held that "[s]o long as (1) the securities are traceable to the same initial shelf registration and (2) the registration statements share common 'parts' that (3) were false and misleading at each effective date, there is § 11 standing." *Id.* The court, however, "emphasize[d] the narrow application of [its] analysis," stating that "it only applies where there is more than one issuance of securities originally registered at the same time" and that "it is possible that later issuances could incorporate very different alleged violations and have in common only a minor common misrepresentation or omission." *Id.* at 1167.

Here, Plaintiffs allege causes of action arising out of forty-eight separate Offerings over the course of a twenty-seven month period, many of which involved different underwriters and different disclosures – a situation far different from that in *Countrywide*. In addition, the court in *Countrywide* specifically referenced two cases that "squarely rejected" the rule adopted by the court – *Ong ex rel. Ong IRA v. Sears Roebuck & Co.*, 388 F. Supp. 2d 871, 890-91 (N.D. Ill.

---

question of whether the class representative had satisfied the "typicality" requirement of Rule 23(b)(3). Both *In re PMA Capital Corp. Sec. Litig.*, No. 03-6121, 2005 WL 1806503, at *18 (E.D. Pa. July 27, 2005) and *In re DDi Corp. Sec. Litig.*, No. CV 03-7063, 2005 WL 3090882, at *6 (C.D. Cal. July 21, 2005) allowed plaintiffs who themselves purchased securities in an offering to represent purchaser of other securities in the *same* offering – a situation completely distinct from the one here. Finally, although the court in *In re Juniper*, 542 F. Supp. 2d at 1052 held that a lead plaintiff had standing to represent noteholders even though it had not itself purchased any of the notes, such reasoning has been rejected by courts in this district, which mandate that at least one named plaintiff must have purchased securities traceable to the challenged offering in order to have Section 11 standing. *See, e.g., Hoffman*, 591 F. Supp. 2d at 532; *Global Crossing*, 313 F. Supp. 2d at 207.

4

2004) and *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 420-21 (S.D.N.Y. 2003). *See Countrywide*, 588 F. Supp. 2d at 1166 n.38.[4]

## II. PLAINTIFFS LACK STANDING UNDER SECTION 12(a)(2)

Plaintiffs do not dispute that to have Section 12(a)(2) standing they must specifically allege facts sufficient to demonstrate that they purchased Citigroup securities in the public offerings at issue rather than in any secondary market. *See, e.g., Gustafson v. Alloyd Co.*, 513 U.S. 561, 578 (1995). Instead, Plaintiffs suggest that they have complied with this requirement because the Amended Complaint purportedly asserts that they "purchased 'in the Offerings' for the purpose of Section 12." (PB 64 (citing Am. Compl. ¶ 389).) Such an assertion is insufficient.

As an initial matter, the sentence relied on by Plaintiffs actually states that "Plaintiffs and other members of the Class purchased or otherwise acquired Bond Class Securities in the Offerings." (Am. Compl. ¶ 389.) Such an allegation, however, does not, as it must, indicate which securities, if any, Plaintiffs purportedly purchased directly in the subject Offerings. *See In re Cosi, Inc. Sec. Litig.*, 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005) (holding that a plaintiff asserting Section 12(a)(2) claims must allege facts sufficient to demonstrate that it purchased securities directly in the public offering at issue). Moreover, Plaintiffs' suggestion that this conclusory assertion is somehow sufficient to demonstrate that they purchased securities "in each

---

[4] Plaintiffs' position that they have standing to assert both Section 11 and Section 12(a)(2) claims with regard to securities that none of them purchased is belied by the actions of Louisiana Sheriffs and LAMPERS (both plaintiffs herein) in *In re Merrill Lynch & Co. Sec., Deriv. & ERISA Litig.*, No. 07 Civ. 9633 (JSR). In that case, Louisiana Sheriffs and LAMPERS asserted Section 11 and Section 12(a)(2) claims against Merrill Lynch and the underwriters of ten separate bond offerings alleging – as here – that each of the offerings were materially false and misleading. As in this case, Louisiana Sheriffs and LAMPERS asserted claims in connection with securities that none of the named plaintiffs had purchased. Following oral argument on defendants' motions to dismiss, during which Judge Rakoff stated that he was "tentatively leaning" towards dismissing any claims relating to securities plaintiffs had not purchased (*see* Kasner Reply Decl. Ex. 1 at 5:20-5:24), the plaintiffs filed an amended complaint. The amended complaint again included claims based on securities that none of the named plaintiffs had purchased. Thereafter, the plaintiffs filed a "corrected amended complaint" that did not include such securities, along with a letter explaining that they "intended, consistent with the Court's prior comments with respect to standing, to assert claims relating only to securities that at least one of the named Plaintiffs purchased." (*Id.* Ex. 2.)

Offering" is trumped by their admission that they did not purchase twenty-nine of the forty-eight securities at issue in this case. Such conclusory and vague pleading is wholly insufficient to establish standing to assert a claim under Section 12(a)(2). (*See* UB 9-10.)

Plaintiffs, nevertheless, argue that Defendants can determine which purchases were made "in" the Offerings from reviewing the certifications attached to the Amended Complaint. (PB 64.) *In re Sterling Foster & Co., Sec. Litig.*, 222 F. Supp. 2d 216, 245-46 (E.D.N.Y. 2002), a case cited by the Underwriter Defendants but ignored by Plaintiffs, rejected a substantially similar argument, dismissing a Section 12(a)(2) claim where "the plaintiffs fail[ed] to allege that they purchased the securities in the public offering, as opposed to in the aftermarket," despite the fact that "[s]ome of the purchase dates listed in the complaint [were] close enough in time to suggest that the plaintiffs could have made their purchases in the offering." *Id.*

### III. PLAINTIFFS' CLAIMS AGAINST THE UNDERWRITER DEFENDANTS MUST BE DISMISSED PURSUANT TO RULE 9(b)

For the reasons set forth in the Citigroup Defendants' moving and reply papers, the Securities Act claims are subject to Rule 9(b).[5] Plaintiffs' argument that even if their claims sound in fraud they need not plead scienter (PB 32) ignores this Court's holding in *JP Morgan Chase*, in which the Court dismissed a Section 11 claim that sounded in fraud for, among other things, *failure adequately to plead fraudulent intent*. 363 F. Supp. 2d at 635;[6] *see also Coronel v.*

---

[5] While plaintiffs note that the court in *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004) reviewed claims asserted against underwriters under Rule 8(a), instead of Rule 9(b), because Plaintiffs here incorporate *all* preceding paragraphs of the Amended Complaint – which are replete with "wording" and "imputations" classically associated with fraud – into their claims against the Underwriter Defendants, Rule 9(b) is applicable. *See, e.g., Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976(LAP), 2008 WL 4449280, at *12 (S.D.N.Y. Sept. 30, 2008).

[6] Plaintiffs argue that the Court's holding in *JP Morgan Chase* is distinguishable from the present case because, unlike here, "*JPMorgan* concerned Section 10(b) claims asserted against all defendants." (PB 32 n.15.) However, in *JP Morgan Chase*, this Court analyzed the Section 11 claim separately and concluded that because the complaint sounded in fraud, the heightened pleading standards of Rule 9(b) applied to plaintiffs' Securities Act claims, including the requirement that plaintiffs "plead a strong inference of scienter." *JP Morgan Chase*, 363 F. Supp. 2d at 635.

6

*Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405 (RPP), 2009 WL 174656, at *16 (S.D.N.Y. Jan. 26, 2009). Such decisions are in full accord with the plain language of Rule 9(b) requiring that *all* averments of fraud must be pled with particularity and that, as a consequence, a plaintiff must "allege facts that give rise to a strong inference of fraudulent intent." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).[7]

Plaintiffs rely heavily on Judge Rakoff's comments that "[w]hen they are saying you have to plead fraud with particularity, it doesn't mean you have to plead with particularity an element that is not an element of the complaint." (PB 32-33.) That position is at odds with this Court's holding in *JP Morgan Chase*, where plaintiffs were required to plead a strong inference of scienter in connection with Section 11 claims that "sounded in fraud." Moreover, Rule 9(b) requires that *all* averments of fraud be pled with particularity. (*See supra* Section III.)

The remaining cases relied on by Plaintiffs are similarly inapposite. In *In re Scottish Re Group Sec. Litig.*, 524 F. Supp. 2d 370 (S.D.N.Y. 2007), the court declined to rule on whether the plaintiffs' Securities Act claims sounded in fraud for purposes of determining whether Rule 9(b) was applicable. *Id.* at 399, n.213. In addition, neither *In re BellSouth Corp. Sec. Litig.*, 355 F. Supp. 2d 1350 (N.D. Ga. 2005) nor *In re National Golf Properties, Inc. Sec. Litig.*, No. CV 02-1383, 2003 WL 23018761 (C.D. Cal. Mar. 19, 2003) addressed the question of whether Securities Act claims that "sound in fraud" must adequately allege fraudulent intent.

## IV. PLAINTIFFS CANNOT RECOVER IN OFFERINGS WHERE THEY SOLD THEIR SECURITIES FOR A PROFIT

The Underwriter Defendants established that for three offerings (the August 26, 2006; August 15, 2007; and January 23, 2008) Plaintiffs' transactions resulted in profits and, therefore,

---

[7] Plaintiffs' argument that "the [PSLRA's] pleading provisions regarding fraud apply only to Exchange Act Claims" (PB 32) is irrelevant given the application of Rule 9(b).

7

they could not assert a claim under Section 11 or Section 12. (UB 17-18.) Plaintiffs state that they "listed their *profitable* trades in these three Offerings not for standing purposes, but merely to reflect all transactions in the Bond Class Securities undertaken during the Offerings Period." (PB 64 n.44) (emphasis added). Because Plaintiffs concede their transactions were profitable, they suffered no loss in these offerings and, thus, have no conceivable damages. (*See* UB 17.) Accordingly, claims based on these offerings must be dismissed.[8]

## V. CLAIMS ARISING FROM THE CITIGROUP GLOBAL XVIII OFFERING AND THE MAY 25 CITIGROUP FUNDING INC. OFFERING ARE TIME-BARRED

### A. Plaintiffs Were On Inquiry Notice In November 2007

Plaintiffs seek to avoid the consequences caused by their delay in asserting claims based on the Citigroup Global XVIII offering and the May 25 Citigroup Funding Inc. offering by claiming that (i) the November 8, 2007 fraud complaint did not place them on inquiry notice; (ii) the issue of inquiry notice is too fact specific for resolution at this stage; and (iii) the alleged full truth about Citigroup's financial condition was not revealed until November 2008. (PB 65-66.) These arguments can be dispatched quickly.

First, the Underwriter Defendants did not rely solely on the filing of the November 8 complaint as the trigger for Plaintiffs' inquiry notice. Rather, the Underwriter Defendants argued that the "one-year time-period expired on November 4, 2008 or, at the latest, on November 8, 2008" because "[t]he same disclosures that triggered the November 8, 2007 complaint placed Plaintiffs on inquiry notice of their claims in the present action." (UB 19, 20 n.4.)

A central component of Plaintiffs' complaint is Citigroup's November 4, 2007 disclosure that it had more than $55 billion of direct exposure to subprime mortgage-backed CDO securities

---

[8] Because no other Plaintiff claims to have purchased or acquired securities from these offerings, none has standing to assert claims based on these three offerings. (*See supra* Section I.)

8

and the views allegedly expressed in response to such disclosure by analysts and the financial press. (Am. Compl. ¶ 4.) Plaintiffs cannot credibly argue that there is a factual issue as to whether such disclosure, which triggered the commencement of a fraud complaint within four days, did not place them on inquiry notice for their claims.

Finally, Plaintiffs' argument that they could wait until additional disclosures were made about Citigroup's financial condition is contrary to Second Circuit authority. *See Dodds v. Cigna Sec., Inc.*, 12 F.3d 346, 352 (2d Cir. 1993) ("An investor does not have to have notice of the entire fraud being perpetrated to be on inquiry notice.").

### B. Rule 15's Relation-Back Doctrine Cannot Resurrect Plaintiffs' Claims

Plaintiffs' reliance on non-controlling, out-of-Circuit authority for the argument that their time-barred claims are revived because they relate back to the initial complaints in this action and "arise 'out of the conduct, transaction, or occurrence set forth . . . in the original pleading,'" and "are asserted against existing defendants" (PB 66-67) ignores the plain text of Rule 15(c)(1).

With respect to the Citigroup Global XVIII offering, Plaintiffs seek to amend the complaint to add new parties. Adding new parties triggers Rule 15(C)(1)(c)(ii). *See In re Adelphia Commn's Corp. Sec. & Deriv. Litig.*, No. 03 MD 1529(LMM), 2005 WL 1278544, at *13 (S.D.N.Y. May 31, 2005). Under that provision, Plaintiffs' failure to timely assert claims against Citigroup Global Markets Ltd. ("CGM Ltd.") must have resulted from a mistake concerning its identity. But the identity of CGM Ltd. was publicly available on June 26, 2007 at www.sec.gov when Citigroup Capital XVIII filed its prospectus for this offering.[9]

Moreover, Plaintiffs' claims with regard to both the Citigroup Capital XVIII and the May 25 Citigroup Funding Inc. Offerings cannot relate back to the original complaints. (*See* PB 66.)

---

[9] Plaintiffs' attempt to argue that CGM Ltd., a wholly-owned subsidiary of Citigroup Inc., should have had notice of claims against it ignores the required element of Rule 15(c)(1)(C)(ii).

9

Liability under Section 11 is triggered where "any part of a registration statement, *when such part became effective*, contained [a material misstatement or omission]." U.S.C. 15 § 77k(a) (emphasis added). As discussed, Plaintiffs concede that the "effective date" of the registration statement "is the date of the relevant Offering, not the earlier date on which the Shelf Registration Statement itself was filed." (Am. Compl. ¶ 304.) Thus, no *claim* under Section 11 (or for that matter Section 12) could have arisen until the date of the relevant Offering.

Pursuant to Rule 15(c)(1)(B), an amendment relates back when it asserts a claim arising out of the "conduct, transaction or occurrence set out . . .in the original complaint." Because the Offerings themselves are the only "conduct, transaction or occurrence" that could give rise to a claim here, and since the original complaints do not contain any allegations relating to these two Offerings, Plaintiffs' amendments cannot relate back to the original complaints.[10]

## CONCLUSION

For the foregoing reasons, the Underwriter Defendants respectfully request that Counts III and V of the Amended Complaint be dismissed in their entirety with prejudice.

Dated:  New York, New York
        May 13, 2009

                                            Respectfully submitted,

                                            /s/ Jay B. Kasner
                                            Jay B. Kasner
                                            (jay.kasner@skadden.com)
                                            George A. Zimmerman
                                            (george.zimmerman@skadden.com)
                                            SKADDEN, ARPS, SLATE,
                                              MEAGHER & FLOM LLP
                                            Four Times Square
                                            New York, New York  10036
                                            (212) 735-3000

                                            Attorneys for the Underwriter Defendants

---

[10] Of course, the fact that no Plaintiff alleges it purchased securities in either of these offerings is also fatal to any claims based on them. (UB 9-12.)

10