UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: CITIGROUP INC. BOND LITIGATION | Master File No. 08 Civ. 9522 (SHS)<br><br>**ECF Case** |

## BOND PLAINTIFFS' OPPPOSITION TO
## DEFENDANTS' MOTION FOR RECONSIDERATION

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**
Steven B. Singer
John C. Browne
Kurt Hunciker
John Rizio-Hamilton
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Bond Plaintiffs and Court-
Appointed Bond Counsel*


Additional counsel listed on signature block

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND AND THE COURT'S ORDER ................................................................... 4

STANDARD OF REVIEW .................................................................................................... 6

ARGUMENT ......................................................................................................................... 6

CONCLUSION ...................................................................................................................... 15

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beatty v. United States*,
2001 U.S. Dist. LEXIS 6895 (S.D.N.Y. May 24, 2001) .........................................................6

*In re Citigroup, Inc. Bond Litig.*,
-- F. Supp. 2d --, 2010 WL 2772439 (S.D.N.Y. July 12, 2010) ..................................... *passim*

*City of Ann Arbor Employees' Retirement System v. Citigroup Mortgage Loan Trust Inc.*,
2010 WL 1371417 (E.D.N.Y. Apr. 6, 2010) ...........................................................14

*In re Countrywide Fin. Corp.*,
588 F. Supp. 2d 1132 (C.D. Cal. 2008) ...........................................................5, 9

*DeMaria v. Andersen*,
318 F.3d 170 (2d Cir. 2003).......................................................... *passim*

*In re Dreyfus Aggressive Growth Mutual Fund Litig.*,
2000 WL 1357509 (S.D.N.Y. Sept. 20, 2000).........................................................11

*Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
2004 U.S. Dist. LEXIS 5155 (S.D.N.Y. Mar. 29, 2004) .........................................................6

*In re Friedman's Inc. Sec. Litig.*,
385 F. Supp. 2d 1345 (N.D. Ga. 2005) .........................................................14, 15

*In re Global Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 (S.D.N.Y. 2003).........................................................2, 4, 11

*In re Globalstar Sec. Litig.*,
2003 WL 22953163 (S.D.N.Y. Dec. 15, 2003) .........................................................7

*In re Indymac Mortgage-Backed Sec. Litig.*,
2010 WL 2473243 (S.D.N.Y. June 21, 2010) .........................................................13

*In re Initial Pub. Offering Sec. Litig.*,
214 F.R.D. 117 (S.D.N.Y. 2002) .........................................................14

*J&R Mktg. v. GMC*,
549 F.3d 384 (6th Cir. 2008) .........................................................8

*Judd v. Take-Two Interactive Software*,
2009 U.S. Dist. LEXIS 122626 (S.D.N.Y. Dec. 31, 2009) .........................................................3, 6, 10

ii

*In re Juniper Networks, Inc. Sec. Litig.*,
    542 F. Supp. 2d 1037 (N.D. Cal. 2008) ..................................................................11

*Klickads, Inc. v. Real Estate Board of New York*,
    2007 U.S. Dist. LEXIS 75768 (S.D.N.Y. Oct. 9, 2007) ........................................3, 7

*Legal Aid Society v. The City of New York*,
    2001 U.S. Dist. LEXIS 21 (S.D.N.Y. Jan. 3, 2001) ................................................10

*In re Lehman Brothers Securities and ERISA Litig.*,
    684 F. Supp. 2d 485 (S.D.N.Y. 2010)......................................................................13

*In re Mobilemedia Sec. Litig.*,
    28 F. Supp. 2d 901 (D.N.J. 1998) ............................................................................11

*Morales v. City of New York*,
    2005 U.S. Dist. LEXIS 17130 (S.D.N.Y. Aug. 16, 2005)........................................6

*New Jersey Carpenters Health Fund v. DLJ Mortgage Capital, Inc.*,
    2010 WL 147322 (S.D.N.Y. Mar. 29, 2010) ...........................................................13

*New Jersey Carpenters Health Fund v. Residential Capital, LLC*,
    2010 WL 1257528 (S.D.N.Y. Mar. 31, 2010) .........................................................13

*New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC*,
    2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010) .........................................................13

*Ong v. Sears, Roebuck & Co.*,
    388 F. Supp. 2d 871 (N.D. Ill. 2004) .......................................................................14

*In re Paracelsus Corp. Sec. Litig.*,
    6 F. Supp. 2d 626 (S.D. Tex. 1998) .........................................................................14

*Petit v. Bender*,
    2003 U.S. Dist. LEXIS 20925 (S.D.N.Y. Nov. 19, 2003) ........................................6

*Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*,
    658 F. Supp. 2d 299 (D. Mass. 2009) ......................................................................14

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995)....................................................................................3, 6

*In re Salomon Smith Barney Mut.Fund Fees Litig.*,
    441 F. Supp. 2d 579 (S.D.N.Y. July 26, 2006).......................................................14

*In re Wells Fargo Mortgage-Backed Certificates Litig.*,
    2010 WL 1661534 (N.D. Cal. Apr. 22, 2010) .........................................................13

**STATUTES**

15 U.S.C. § 77 (2010) ...............................................................................................................4, 5

**OTHER AUTHORITIES**

17 C.F.R. § 229.512 (2010) …………………………………………………………………... 9

## PRELIMINARY STATEMENT

On July 12, 2010, after extensive briefing that included the submission of no fewer than 190 pages of briefs and 18 letter briefs totaling more than 80 pages, the Court issued a detailed and well-reasoned 50 page opinion and order denying in large part Defendants' motions to dismiss Bond Plaintiffs' Complaint (the "Order").  *See In re Citigroup, Inc. Bond Litig.*, -- F. Supp. 2d --, 2010 WL 2772439 (S.D.N.Y. July 12, 2010) (cited as "*Citigroup*, at *_").   Among other things, the Order held that Plaintiffs have standing to pursue claims under Section 11 of the Securities Act on behalf of all class members who purchased securities pursuant to three common shelf registration statements.  *See Citigroup*, at *13-14.  Now, seeking to relitigate an issue that was carefully considered by the Court, Defendants ask the Court to reverse its decision on standing because the Court supposedly "overlooked" controlling Second Circuit authority and "[did] not address statutory standing under Section 11."  Memorandum of Law In Support of Defendants' Motion for Reconsideration ("Def. Mem.") at 2.  Defendants' arguments are meritless.

Contrary to Defendants' contentions, the Court's Order carefully considered – and properly rejected – the very same arguments that Defendants attempt to rehash in their motion for reconsideration.  Defendants do not support their motion by pointing to any change in the factual circumstances present at the time the motions to dismiss were briefed.  Nor can they point to any legal issue that was not fully vetted by the parties and the Court in over 190 pages of briefing and the Court's extremely thorough Order.  Indeed, Defendants' primary argument – that the Court supposedly "overlooked" the Second Circuit's "controlling" decision in *DeMaria v. Andersen*, 318 F.3d 170, 176 (2d Cir. 2003) – is frivolous.  Defendants themselves did not cite *DeMaria* in their motions to dismiss, and even after Plaintiffs cited *DeMaria* in their opposition

brief, Defendants <u>still</u> did not address that case in their reply briefs.  The fact that Defendants failed to cite this supposedly "controlling" authority in any of their briefs is compelling evidence that *DeMaria* does not support their arguments – and certainly is not "controlling" authority – on the issue of standing.  Nor can Defendants credibly maintain that the Court "overlooked" *DeMaria*, as the Court <u>expressly cited</u> it in the Order.  *See Citigroup*, at *14.

The reason that Defendants did not previously cite *DeMaria* and the Court did not find it "controlling" on the issue of standing is obvious:  as discussed below, that case is not relevant to whether Plaintiffs have standing to represent class members who purchased pursuant to the three common registration statements at issue in the complaint.  Unlike Defendants, the Court correctly cited *DeMaria* for the different proposition for which it actually stands:  that a Section 11 claim may be brought by all <u>aftermarket</u> purchasers who "can trace their shares to an allegedly misleading registration statement."  *See Citigroup*, at *14 (citing *DeMaria*, 318 F.3d at 178).  This issue is not relevant to the question Defendants now seek to relitigate.

Defendants' other arguments fare no better.  They incorrectly contend that the Court wrongly applied a rule of "constitutional standing" and failed to address "statutory standing under Section 11."  Def. Mem. at 3.  The Court's Order, however, extensively quotes from Section 11 and is directly based on the express terms of the statute itself.  *See Citigroup*, at *13-14 (holding that Plaintiffs have standing to sue under Section 11 where "any part" of a registration statement is materially misleading).

Defendants also cite to a line of non-controlling district court cases that follow *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003), in applying a different rule of standing than that applied by the Court in its Order.   Notably, several of the cases Defendants now cite were either available <u>before</u> they filed their motions to dismiss or

were actually <u>included</u> in the parties' motion to dismiss briefing.  *See infra* p. 14.  Indeed, the Order specifically cites to *Global Crossing* in making clear that the Court was aware of this line of cases and perfectly understood Defendants' arguments on this point.  *See Citigroup*, at \*13.  The fact that the Court <u>disagreed</u> with those arguments and (properly) rejected them does not provide a basis for granting a motion for reconsideration.  *Judd v. Take-Two Interactive Software*, 2009 U.S. Dist. LEXIS 122626, at \*2 (S.D.N.Y. Dec. 31, 2009) (Stein, J.) (motion to reconsider "should not be granted where the moving party seeks solely to relitigate an issue already decided") (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)).

While a handful of the district court cases that Defendants now cite were decided after the motions to dismiss were fully briefed, these were available <u>months</u> before the Court issued its Order.  If these cases were truly relevant, Defendants undoubtedly would have submitted them to the Court long ago.  Tellingly, however, despite the fact that Defendants submitted at least 8 post-briefing letters to the Court discussing numerous additional decisions, Defendants somehow failed to submit any of these now-supposedly critical decisions.  This is nonsense.  A motion for reconsideration is not the appropriate vehicle in which to submit additional non-controlling "authority" that was available long before the Court issued its decision.  *See Klickads, Inc. v. Real Estate Board of New York*, 2007 U.S. Dist. LEXIS 75768, at \*6-7 (S.D.N.Y. Oct. 9, 2007) ("defendants' attempt to cite additional cases which are not controlling and were not considered in its original motion is improper in a motion for reconsideration").

But even if the Court considers these cases, they provide no basis for reconsideration.  Here, standing exists because the three registration statements incorporated common misstatements.  As discussed below, the registration statements at issue in the cases that Defendants now cite involved alleged misstatements that were unique to each separate offering

and contained within the prospectus supplements for each separate offering.  Thus, these belatedly-submitted decisions provide no basis for the Court to reverse its thoroughly considered holding.

In sum, Defendants utterly fail to meet the rigorous standard for granting a motion for reconsideration, and their motion should be denied.

## BACKGROUND AND THE COURT'S ORDER

On March 13, 2009, Defendants filed opening briefs totaling 82 pages in length in support of their motions to dismiss the complaint.  On April 24, 2009, Plaintiffs filed a 73-page opposition brief, and on May 13, 2009, Defendants filed reply briefs totaling 35 pages.   During the next year, Defendants submitted at least 8 additional letter briefs, which addressed a wide variety of substantive factual and legal issues relating to the motions to dismiss, and addressed no fewer than 8 additional district court and appellate decisions.

The Court's 50 page, July 12, 2010 Order comprehensively addressed the arguments raised by all parties in the lengthy motion to dismiss briefing.  Indeed, the Court addressed in detail the very issue that Defendants are now attempting to re-litigate:  the issue of Plaintiffs' standing under Section 11.  Notably, the Court exhibited its understanding (and rejection) of Defendants' position on this issue and the authority on which it was based:

> With respect to the Section 11 claims, defendants contend the eight named plaintiffs only purchased bond class securities in nineteen of the 48 offerings listed in the complaint, and, accordingly, can only be heard to raise claims respecting the nineteen offerings they participated in.  See In re Global Crossing, Ltd. Sec. Litig., 313 F. Supp. 2d 189, 207 (S.D.N.Y. 2003).

*Citigroup*, at *13.

The Court went on to quote extensively from Section 11, noting that "Section 11 provides a cause of action to 'any person acquiring [a] security' pursuant to a 'registration statement' if

'any part of the registration statement contained an untrue statement of a material fact or omitted to state a material fact[.]"  *Id.* (citing 15 U.S.C. § 77k).  The Order accurately summarized Plaintiffs' and Defendants' respective standing arguments, and stated that the Court agreed with Plaintiffs' position:  because Plaintiffs "participated in at least one offering pursuant to each of the three shelf registration statements … they have standing to raise claims on behalf of all buyers who participated in all offerings made pursuant to those three shelf registration statements." *Id.*

The Court further explained the basis for its holding in detail.  The Order extensively and accurately discussed the shelf registration process (*id.* at *13), noting that each of the "shelf" offerings at issue incorporated by reference a common set of alleged misstatements, and that "at least one court" had concluded that a plaintiff who can trace his purchase to a shelf registration statement has standing in these circumstances to represent all unnamed plaintiffs who also purchased pursuant to the same shelf registration statement.  *Id.*  (citing *In re Countrywide Fin. Corp.*, 588 F. Supp. 2d 1132, 1166 (C.D. Cal. 2008)).  In "agree[ing] with that conclusion," the Court based its holding directly on the express terms of the statute:

> Pursuant to Section 11, if "<u>any part</u> of the registration statement … contained an untrue statement of a material fact or omitted to state a material fact," then any person acquiring a security pursuant to that registration statement has standing to sue a variety of participants in the security's issuance.  15 U.S.C. § 77k(a). Accordingly, where the actionable part of the registration statement is alleged to be common to all purchasers from the same shelf, then a plaintiff has standing to represent them because they have all suffered from the same injury.

*Id.* at *14 (emphasis in original).  Applying that legal principle here, the Court noted that "plaintiffs allege actionably untrue or misleading statements or omissions in SEC filings incorporated into <u>each of the three shelf registration statements</u> from which all forty eight offerings identified in the complaint derive." *Id.* (emphasis added).  In light of the foregoing and

because the named plaintiffs bought pursuant to all three shelf registration statements, the Court concluded, "that is sufficient, at this stage, to establish plaintiffs' standing to raise claims on behalf of all those who purchased pursuant to those shelf registration statements and thus to challenge all forty eight offerings." *Id.*

## STANDARD OF REVIEW

Motions for reconsideration are disfavored and ordinarily denied.[1]  Indeed, a motion for reconsideration is considered an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Fields v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2004 U.S. Dist. LEXIS 5155, at *5 (S.D.N.Y. Mar. 29, 2004).  It is well-established that a motion to reconsider "'should not be granted where the moving party seeks solely to relitigate an issue already decided.'" *Judd*, 2009 U.S. Dist. LEXIS 122626, at *2 (quoting *Shrader*, 70 F.3d at 257).  "Because a motion for reconsideration 'is not a substitute for appeal,' the legal standard 'must be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the Court.'" *Id.* (citations omitted).

## ARGUMENT

Defendants' arguments in support of their motion for reconsideration ignore the Court's Order, rehash the same arguments that were previously raised at length by the parties and fully vetted by the Court, and are based on irrelevant authorities that were either considered and

---

[1] *See, e.g.*, *Beatty v. United States*, 2001 U.S. Dist. LEXIS 6895 (S.D.N.Y. May 24, 2001) (Stein, J.) (motion for reconsideration denied where defendants restate arguments previously made and considered or make new arguments which they failed to raise on the underlying motion); *Petit v. Bender*, 2003 U.S. Dist. LEXIS 20925 (S.D.N.Y. Nov. 19, 2003) (Stein J.) (same); *Morales v. City of New York*, 2005 U.S. Dist. LEXIS 17130 (S.D.N.Y. Aug. 16, 2005) (same).

rejected by the Court or are inapposite to this matter.  As such, their motion for reconsideration should be denied.

First, Defendants' claim that the Court "overlooked" "controlling" Second Circuit authority in *DeMaria* is baseless.  As discussed above, Defendants themselves "overlooked" *DeMaria* in the hundreds of pages of briefing and post-motion letter briefs they submitted to the Court – an indisputable concession that *DeMaria* is not "controlling" on the issue of standing. *See, e.g.*, *Klickads*, 2007 U.S. Dist. LEXIS 75768, at *6-7 ("defendants' attempt to cite additional cases which are not controlling and were not considered in its original motion is improper in a motion for reconsideration").  Moreover, far from overlooking *DeMaria* in its Order, the Court did in fact cite that case, and, unlike Defendants, cited it correctly for the unremarkable proposition that aftermarket purchasers have standing to pursue a Section 11 claim if "they can trace their shares to an allegedly misleading registration statement."  *See Citigroup*, at *14 (citing *DeMaria*, 318 F.3d at 178).  Further, as Plaintiffs pointed out in their opposition to Defendants' motions to dismiss, this Court has previously cited to *DeMaria* in several decisions addressing Section 11.  *See* Bond Plaintiffs' Opposition to Defendants' Motions to Dismiss ("Opp") at 6 (citing *In re Globalstar Sec. Litig.*, 2003 WL 22953163, at *10 (S.D.N.Y. Dec. 15, 2003) (Stein, J.) (quoting *Demaria*, 318 F.3d at 180)).  Thus, Defendants' assertion that the Court "overlooked" *DeMaria* is meritless.

That Defendants did not previously cite *DeMaria* is not only a concession that the decision is not "controlling" on the issue of standing, but that it is irrelevant to the issue presented here.  As the Court recognized in its Order, in *DeMaria* the Second Circuit considered only whether aftermarket purchasers of securities had standing to sue under Section 11.  *See* 318 F.3d at 175-78; *see also Citigroup*, at *14.  In concluding that aftermarket purchasers had such

standing, *DeMaria* simply "conform[ed] with the long-standing practice in this circuit of permitting suit under § 11 by those who can 'trace' their shares to the allegedly defective registration statement."  *Id.*   Here, there was never any dispute that Plaintiffs who purchased bond securities in the aftermarket have standing to assert Section 11 claims.  The dispute on the motions to dismiss (which the Court resolved in Plaintiffs' favor) was whether Plaintiffs have standing to assert Section 11 claims for offerings conducted pursuant to common shelf registration statements if no named plaintiff purchased in that particular offering.  *DeMaria* did not address that question, and provides no basis for reversing the Court's holding.[2]

Second, contrary to Defendants' contention, the Court did not fail to address "statutory standing under Section 11."  *See* Def. Mem. at 3.  The Order not only extensively quotes from Section 11 but the Court specifically based its holding on the plain language of the statute.  *See Citigroup*, at *13-14.   The Court examined the language of Section 11, and correctly noted that the statute confers standing on any plaintiff that "acquir[ed] [a] security" pursuant to a "registration statement" if "<u>any part</u> of the registration statement contained an untrue statement of material fact[.]"  *Id.* (emphasis in original).  Based on this statutory language, the Court held that, because the three shelf registration statements for all 48 offerings incorporated Citigroup's SEC filings and thereby contained common information that is alleged to be misleading,

---

[2] Contrary to Defendants' suggestion, neither *DeMaria* nor any other appellate court has ever held that a plaintiff who purchased securities in an offering conducted under a registration statement lacks standing to represent absent purchasers who bought from another offering conducted pursuant to the same shelf registration statement.  For instance, in *J&R Mktg. v. GMC*, 549 F.3d 384, 389-90 (6th Cir. 2008), although the Sixth Circuit found that it did not need to determine the issue of standing, it expressed "grave concerns" about the district court's finding that the named plaintiff lacked standing under Section 11 to pursue claims in ten offerings because the plaintiff had purchased bonds in only one of them.

purchasers in all 48 offerings could trace their injury to the same defective "part of the registration statement," and standing was established.  *Id.* at \*14.

Similarly unavailing is Defendants' claim that the Court erred by allowing Plaintiffs to assert claims based on misstatements in the shelf registration statements despite noting that "each time an issuer makes an offering, it creates a new 'registration statement.'" Def. Mem. at 4. According to Defendants, because each new offering is a new registration statement, "a purchaser in one offering under a common shelf does not purchase under the same registration statement as a purchaser in a second offering, and therefore lacks standing to sue with respect to that second offering."  *Id.*  This exact argument was extensively addressed – and soundly rejected – in *Countrywide*, 588 F. Supp. 2d at 1164-66, a decision that the Order discusses at length and cites with approval.  *See Citigroup*, at \*14.  As the court held in *Countrywide*, a new registration statement for Section 11 liability purposes "simply means that each new offering (or other event that requires amending the registration statement) creates potential <u>new liability</u> [that may be pursued by] those who acquired the security under the registration statement after the amendment's effective date."  *Countrywide*, 588 F. Supp. 2d at 1165-66 (citing 17 C.F.R. § 229.512(a)) (emphasis in original).  Because Section 11 contemplates that "any part" of the registration statement may contain a material misrepresentation or omission, and confers standing on anyone who buys "such security" – *i.e.*, one traceable to a defective registration statement – "if the initial shelf registration statement contained an actionable statement or omission that is common to more than one issuance under the shelf registration, then purchasers in those issuances may be able to trace the same injury to the same 'registration statement.'"  *Id*.

This Court plainly understood and explicitly (and properly) agreed with the *Countrywide* court's analysis – which, indeed, is the only result that is consistent with the plain language of

Section 11.  The fact that Defendants' arguments on the motion to reconsider on this point are <u>identical</u> to the arguments they made in their motions to dismiss establishes that Defendants merely disagree with this well-reasoned holding.  *Compare* Def. Mem. at 4 *with* Memorandum of Law in Support of the Underwriter Defendants' Motion to Dismiss ("UW MTD") at 10.  As discussed above, mere disagreement with the Court's decision is not a proper basis for a motion for reconsideration.  *See, e.g.*, *Judd*, 2009 U.S. Dist. LEXIS 122626, at *2.

<u>Third</u>, Defendants argue for the first time that purported differences between the types of securities issued in each offering create unspecified "anomalies" that compel the Court to reconsider its decision.  *See* Def. Mem. at 5-8.  As an initial matter, Defendants failed to raise this argument on the motions to dismiss, and it therefore cannot be the basis for granting a motion for reconsideration.  *See, e.g.*, *Legal Aid Society v. City of New York*, 2001 U.S. Dist. LEXIS 21 (S.D.N.Y. Jan. 3, 2010) (Stein, J.) (motion for reconsideration denied where defendants made new arguments that they failed to raise on the underlying motion).[3]

Moreover, while Defendants now, for the first time, include a lengthy chart identifying slight differences between the securities issued in each offering (Def. Mem. at 6-8), they do not even attempt to explain how these so-called "different features" – "some were senior notes, others were subordinated notes, and yet others were company guarantees" (*id.* at 5) – impact the standing analysis.  Nor could they, since Plaintiffs' Section 11 claims are grounded in the injury

---

[3] In direct violation of Local Rule 6.3, Defendants submit in support of this argument a declaration attaching 49 separate exhibits that were not submitted with Defendants' motions to dismiss.  *See* Local Rule 6.3 (on a motion for reconsideration "[n]o affidavits shall be filed by any party unless directed by the court").  Each of the 49 exhibits attached to the declaration consists of pages from the prospectus supplements to the offerings at issue in the case – thus each of these exhibits was available at the time motions to dismiss were filed, and they should have been submitted at that time.  Accordingly, Plaintiffs respectfully submit that they cannot be considered now.

caused by the misleading statements in the offering documents, not by any purported differences among the structure of the securities themselves.  *See* Opp. at 63.  Tellingly, Defendants do not cite a single case even suggesting that slight differences among the various securities at issue provide a basis for holding that Plaintiffs lack standing.  Certainly the terms of Section 11 do not distinguish between securities that have a "fixed" versus "floating" rate.  Precisely because these purported differences are irrelevant to the standing analysis, courts routinely hold that plaintiffs of one security are able to represent purchasers of a different security.  *See, e.g.*, *In re Dreyfus Aggressive Growth Mutual Fund Litig.*, 2000 WL 1357509, at \*3-5 (S.D.N.Y. Sept. 20, 2000) (named plaintiffs could represent investors in two different mutual funds even though they had only invested in one of the funds).[4]  Accordingly, even if the Court were to consider this argument, which was improperly raised for the first time on a motion for reconsideration, it provides no basis to reverse the Order.[5]

Finally, Defendants cite to a line of non-controlling district court cases that follow *In Global Crossing*, and apply a different rule of standing than that applied by the Court in its Order.  As an initial matter, the Court expressly cited *Global Crossing* in accurately characterizing Defendants' standing arguments.  *See Citigroup*, at \*13.  Thus, there is no

---

[4] *See also In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037, 1051-52 (N.D. Cal. 2008) (plaintiffs who purchased one class of securities had standing to represent the interests of purchasers of other types of securities); *In re Mobilemedia Sec. Litig.*, 28 F. Supp. 2d 901, 911 n.7, 915 (D.N.J. 1998) (where plaintiffs who bought stock were injured by misrepresentations made in a secondary offering, they also had standing to bring claims on behalf of purchasers of bonds).

[5] Defendants' argument that some offerings here were issued by different Citigroup trusts, like Citigroup Capital XIV and Citigroup Capital XV, is misplaced.  Def. Mem. at 5.  As the Court held in sustaining Plaintiffs' Section 15 claims, the Complaint adequately alleges that Citigroup controlled these trusts, the sole assets of the trust were comprised of securities issued by Citigroup, and Citigroup itself is liable for any Section 11 violations at issue.  *See* Complaint ¶¶ 31-38.

question that the Court was aware of this line of cases and perfectly understood Defendants' arguments on this point – indeed, it is the same argument Defendants raised on the motions to dismiss.  *See* UW MTD at 10-11.  As noted above, Defendants' continued disagreement with the Court's decision does not provide a basis for reconsideration.

Moreover, as discussed above, if these cases were truly significant, then presumably Defendants would have included them in the voluminous briefing and extensive post-motion letter briefs submitted by the parties.  Again, the fact that Defendants did not do so undermines any argument that these decisions mandate a different result.  Furthermore, all of the decisions that Defendants now cite are non-controlling district court cases that address fundamentally different circumstances than those present here.  Specifically, these decisions arise in the mortgage-backed securities ("MBS") context where the gravamen of the Section 11 claim is an attack on misstatements and omissions in the specific prospectus supplements that were unique to each individual offering.  For example, in the MBS setting, the false statements concern the mortgage underwriting standards that are specifically described in the prospectus supplements, not the shelf registration statements.  Here, in contrast, the alleged misstatements are contained in the documents incorporated by reference into each of the common shelf registration statements.  This key distinction was expressly recognized by the Court in its Order.  *See Citigroup*, at *14  (noting that plaintiffs have standing when allegedly misleading statements are contained "in the shelf registration statement or the documents incorporated therein – as opposed to an alleged untrue statement in a supplemental prospectus unique to a specific offering") (emphasis added)).  Because all of the district court cases belatedly submitted by Defendants arise in a context that the Court has already determined differs markedly from the facts presented here, these cases provide no basis for the Court to overturn the Order.

Specifically, *New Jersey Carpenters Vacation Fund v. The Royal Bank of Scotland Group, PLC*, 2010 WL 1172694 (S.D.N.Y. Mar. 26, 2010), cited by Defendants, involved MBS where "[m]ost of Plaintiffs' factual allegations focus on the underlying details <u>contained in the HVMLT prospectus supplements and are unique to each of the offerings</u>." *Id.* at *7 (emphasis added). Because the alleged misstatements were unique to each prospectus supplement, the court found that plaintiffs had no standing to pursue claims on all offerings. Indeed, the harm plaintiffs may have suffered based on misstatements in the offering documents for certificates they purchased had no bearing on the harm suffered by other investors in certificates purchased pursuant to separate prospectus supplements with distinct false statements. *Id.* Similarly, *In re Wells Fargo Mortgage-Backed Certificates Litig.*, 2010 WL 1661534 (N.D. Cal. Apr. 22, 2010), involved allegations by plaintiffs that the offering documents for MBS certificates contained false statements concerning the specific underlying mortgage pools, appraisal value of the underlying mortgages, and the investment quality of the certificates for each individual offering. *Id.* at *1-2. There, again, the detailed descriptions of the mortgage pools underlying the certificates varied between the prospectus supplements that were unique to each of the offerings. *Id.* at *1. Likewise, *In re Lehman Brothers Securities and ERISA Litig.*, 684 F. Supp. 2d 485 (S.D.N.Y. 2010), is another MBS case where the crux of plaintiffs' claims was that the prospectus supplement for each different offering provided misleading information about the particular mortgages underlying the MBS sold in that particular offering. *Id.* at *2, 4-5.[6]

---

[6] The other cases cited by Defendants suffer from the same deficiency. *See New Jersey Carpenters Health Fund v. Residential Capital, LLC*, 2010 WL 1257528, at *4 (S.D.N.Y. Mar. 31, 2010) ("Plaintiffs' allegations are largely related to the details contained in the distinct prospectus supplements for each of the [MBS] offerings," and thus the harm they claimed "ha[d] little bearing on [the] potential harm suffered by an unnamed party from misstatements in the Offering Documents from Certificates that they did not purchase"); *In re Indymac Mortgage-*

Here, by contrast, the alleged misstatements are contained in three shelf registration statements common to all offerings – and concern issues common to all offerings, such as Citigroup's GAAP compliance. *See, e.g.*, Complaint ¶ 320 (alleging that misrepresentation that Citigroup complied with GAAP was present in each shelf registration statement and, thus, was common to each and every offering). As the Court specifically noted in concluding that Plaintiffs had standing under Section 11, this distinction is dispositive of the standing question. *Citigroup*, at *14.

Defendants also cite several cases that were available before they filed their motions to dismiss to support their argument that Plaintiffs cannot represent purchasers on other offerings. However, these pre-briefing cases are out-of-Circuit and do not involve offerings from a common shelf registration statement, as is the case here.[7] The lone case cited by Defendants involving a common shelf registration statement, *In re Friedman's Inc. Sec. Litig.*, 385 F. Supp. 2d 1345 (N.D. Ga. 2005), is actually contrary to Defendants' position. In *Friedman's*, the court dismissed plaintiffs' claims against an underwriter because the alleged false and misleading statements as to that underwriter were contained in the <u>prospectus supplement</u> for an offering

_____

*Backed Sec. Litig.*, 2010 WL 2473243, at *4 (S.D.N.Y. June 21, 2010) (involving MBS certificates); *City of Ann Arbor Employees' Retirement System v. Citigroup Mortgage Loan Trust Inc.*, 2010 WL 1371417, at *7 (E.D.N.Y. Apr. 6, 2010) (MBS case where the "Prospectus Supplements refer specifically to mortgages contained in the particular Trusts to which they refer" and the "statements contained therein go to the core of Plaintiffs' claims"); *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299 (D. Mass. 2009) (involving MBS certificates).

[7] *See* Def. Mem. at 10 n.6, citing *In re Salomon Smith Barney Mutual Fund Fees Litig.*, 441 F. Supp. 2d 579 (S.D.N.Y. July 26, 2006) (no common shelf registration statement); *Ong v. Sears, Roebuck & Co.*, 388 F. Supp. 2d 871, 891 (N.D. Ill. 2004) (no common shelf registration statement); and *In re Paracelsus Corp. Sec. Litig.*, 6 F. Supp. 2d 626, 631 (S.D. Tex. 1998) (no common shelf registration statement). The one case from this Circuit cited by Defendants, *In re Initial Pub. Offering Sec. Litig.*, 214 F.R.D. 117, 122 (S.D.N.Y. 2002), involved the lead plaintiff stage of the litigation – not a motion to dismiss – and, again, there was no common shelf registration statement.

that the plaintiff did not purchase. *Id.* at 1370. However, *Friedman's* held that plaintiffs who purchased shares from a September 2003 offering had standing to bring Section 11 claims against auditor defendant E&Y arising from a different offering because "both offerings originate[d] from the same materially false and misleading Registration statement." *Id.* at 1372 (emphasis added). As the Court has already determined, the same is true here.

## CONCLUSION

The legal and factual arguments underlying Defendants' motion for reconsideration were thoroughly considered by the Court and addressed in its Order. Because Defendants raise no legitimate basis for reconsideration, their motion for reconsideration must be denied.

Dated: August 9, 2010
     New York, New York

Respectfully submitted,

**BERNSTEIN  LITOWITZ  BERGER
 & GROSSMANN LLP**

By:  /s/ Steven B. Singer
Steven B. Singer
John C. Browne
Kurt Hunciker
John Rizio-Hamilton
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Bond Plaintiffs, and Court-Appointed Bond Counsel*

Ira M. Press
Peter S. Linden
**KIRBY McINERNEY LLP**
825 Third Avenue, 16th Floor
New York, NY 10022
Tel: (212) 371-6600
Fax: (212) 751-2540
*Interim Lead Counsel for Interim Lead Plaintiffs The ATD Group*

Robert D. Klausner
**KLAUSNER & KAUFFMAN, P.A.**
10059 Northwest 1st Court
Plantation, FL 33324
Tel: (954) 916-1202
Fax: (954) 916-1232

*Additional Counsel for Minneapolis Firefighters' Relief Association and Louisiana Sheriffs' Pension and Relief Fund*

-15-

Brian F. Rice
**RICE, MICHAELS & WALTHER LLP**
206 East Bridge – Riverplace
10 Second Street, Northwest
Minneapolis, MN 55413
Tel:  (612) 676-2303
Fax:  (612) 676-2319

*Additional Counsel for Minneapolis Firefighters' Relief Association*

David Kessler
Andrew L. Zivitz
Benjamin Sweet
Matthew Mustokoff
**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA  19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Additional Counsel for City of Tallahassee Retirement System, Miami Beach Employees' Retirement Plan, Southeastern Pennsylvania Transit Authority and City of Philadelphia Board of Pensions and Retirement*

Marc I. Gross
Joshua B. Silverman
**POMERANTZ HAUDEK BLOCK GROSSMAN & GROSS LLP**
100 Park Avenue
New York, NY 10017
Tel- 212-661-1100
Fax-212-661-8665

*Additional Counsel for American European Insurance, Company*