**PORTIONS REDACTED PURSUANT TO THE**
**SEPTEMBER 30, 2010 PROTECTIVE ORDER**

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: CITIGROUP INC. BOND LITIGATION | Master File No. 08 Civ. 9522 (SHS)<br><br>**ECF Case** |

**BOND PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD BY THE**
**CITIGROUP DEFENDANTS BASED ON THE**
**"BANK EXAMINATION" PRIVILEGE**

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Steven B. Singer
John C. Browne
John Rizio-Hamilton
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Bond Plaintiffs and*
*Court-Appointed Bond Counsel*

Additional counsel listed on signature
block

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................ 1

FACTUAL BACKGROUND ............................................................................... 4

I.     Procedural Background ......................................................................... 4

II.    Status Of Discovery ............................................................................. 5

III.   The Citigroup Defendants' Assertion Of The "Bank Examination" Privilege ........................ 6

ARGUMENT ................................................................................................. 8

I.     The Rigorous Legal Standard For Application Of The Bank Examination Privilege ............... 8

II.    The Bank Examination Privilege Does Not Apply To Any Of The Documents On The
       Citigroup Defendants' Privilege Log ..................................................... 10

       A.     The Bank Examination Privilege Does Not Shield ███████████ Of
              Factual Matters Between Citigroup Personnel ........................................ 10

       B.     The Bank Examination Privilege Does Not Shield Underlying Factual
              Information Regarding Citigroup's Financial Condition Merely Because
              ████████████████████████ ........................................................ 15

       C.     OCC Supervisory Letters And ████████████ Are Not Privileged .............. 18

III.   Even Assuming *Arguendo* That The Privilege Applies To The Documents At Issue,
       It Should Be Overridden ................................................................. 20

IV.    Bond Plaintiffs Are Not Required To Exhaust Administrative Procedures To Obtain
       Discovery Authorized By The Federal Rules Of Civil Procedure ......................... 23

CONCLUSION .............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Savings Bank v. PaineWebber Inc.,*
210 F.R.D. 721 (D. Haw. 2001) ........................................................................... 24

*In re Bankers Trust Co.,*
61 F.3d 465 (6th Cir. 1995) ......................................................................... *passim*

*Calvin Klein Trademark Trust v. Wachner,*
198 F.R.D. 53 (S.D.N.Y. 2000) ............................................................................. 8

*In re Citigroup, Inc. Bond Litig.,*
723 F. Supp. 2d 568 (S.D.N.Y. 2010) ........................................................ 1, 2, 4, 5

*Dimon Int'l, Inc. v. Arab Am. Bank,*
1995 U.S. Dist. LEXIS 18839 (E.D.N.C. Dec. 6, 1995) ....................................... 24

*Forstmann Leff Assocs. v. Am. Brands, Inc.,*
1991 WL 168002 (S.D.N.Y. Aug. 16, 1991) ................................................. *passim*

*In re Franklin Nat'l Bank Sec. Litig.,*
478 F. Supp. 577 (E.D.N.Y. 1979) ............................................................... *passim*

*In re Horowitz,*
482 F.2d 72 (2d Cir. 1973), *cert. denied*, 414. U.S. 867 (1973) .............................. 8

*In re Washington Mutual, Inc. Sec. & ERISA Litig.,*
No. 2:08-md-1919 MJP, slip op. (W.D. Wash. Feb. 2, 2010) .......................... *passim*

*Lundy v. Interfirst Corp.,*
105 F.R.D. 499, 502 (D.D.C. 1985) ....................................................................... 23

*In re Midlantic Corp. S'holder Litig.,*
1994 WL 750664 (D.D.C. Oct. 24, 1994) ....................................................... 3, 19

*Principe v. Crossland Savings,*
149 F.R.D. 444 (E.D.N.Y. 1993) .................................................................. 9, 21, 22

*RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.,*
2003 WL 41996 (S.D.N.Y. Jan. 6, 2003) .............................................................. 8

*Schreiber v. Society for Savings Bancorp,*
11 F.3d 217 (D.C. Cir. 1993) ....................................................................... *passim*

*Seafirst Corp. v. Jenkins,*
    644 F. Supp. 1160 (W.D. Wash. 1986) .................................................................................. *passim*

*In re Subpoena,*
    151 F.R.D. 1 (D.D.C. 1992) ................................................................................ 9, 20, 22, 23

*In re Subpoena Served upon the Comptroller of the Currency,*
    967 F.2d 630 (D.C. Cir. 1992) ........................................................................ 4, 10, 13, 20

*In re Vescio,*
    205 B.R. 37 (D. Vt. 1997) ................................................................................................ 23, 24

*Vescio v. Merchant's Bank,*
    208 B.R. 122 (Bankr. Vt. 1997) .................................................................................. 18

*Walsh v. Chittenden Corp.,*
    799 F. Supp. 405 (D. Vt. 1992) ........................................................................ 9, 20, 21, 23

## STATUTES

12 C.F.R. § 4.37(b)(3)(i) .......................................................................................................... 7

12 C.F.R. § 261.23(a)(1) .......................................................................................................... 7

12 C.F.R. § 309.7(b) .................................................................................................................. 7

## PRELIMINARY STATEMENT

By this motion, Bond Plaintiffs seek to compel the production of hundreds of critically important documents currently being withheld by the Citigroup Defendants on the grounds of the so-called "bank examination" privilege.  There is no dispute that the documents at issue relate directly to the core allegations in this case, including documents from the vital time period between September and December 2008, when Citigroup Inc. ("Citigroup") nearly collapsed into bankruptcy.  The extraordinary meltdown of Citigroup, caused by the bank's risky investments in toxic mortgage-related assets between 2006 and 2008, was averted only because taxpayers were forced to provide Citigroup with $326 billion in cash and asset guarantees – the largest Government bailout in United States history.  Without the unprecedented intervention of the Government, Citigroup would have been forced into liquidation in late 2008, with grave consequences for the country's banking system and economy as a whole.

The documents being withheld by the Citigroup Defendants go to the heart of the claims that the Court sustained in its July 12, 2010 Opinion.  *See In re Citigroup, Inc. Bond Litig.*, 723 F. Supp. 2d 568 (S.D.N.Y. 2010) (cited as "*Citigroup*, at __"); *see also* Docket #82 (opinion denying Defendants' motion for reconsideration).  For instance, as discussed in more detail below, the withheld documents include ███████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ █████████████████████████████████████  These documents bear directly on a multitude of allegations that were expressly sustained by the Court, including those regarding Citigroup's misstatements about its supposed "well-capitalized" status (*Citigroup*, at 593-94), the adequacy of its reserves (*id.* at 592), its exposure to and overvaluation of CDOs (*id.* at 588-89), and

the quality of the assets the Government agreed to guarantee in the bailout (*id.* at 579-80, 593-94).

In an effort to avoid producing these crucial documents, on April 29, 2011, Citigroup provided Bond Plaintiffs with a privilege ███████████████████████████████████ ████████████████████████████████████ *See* Declaration of John C. Browne ("Browne Decl."), Ex. A.  Notably, the Citigroup Defendants have indicated that the April 29, 2011 privilege log does not "reflect[] *all* documents that are being withheld on the basis of the bank examination privilege," and that the log will be supplemented in the future.  Browne Decl., Ex. C at 1, 2 (emphasis in original).  As discussed below, the Citigroup Defendants' effort to shield from production the ████████████████████████████████████████████ ██████████ based on a "bank examination" privilege is meritless.

Courts have uniformly held that the bank examination privilege – which actually belongs to the federal banking authorities and not to Citigroup – is narrow and qualified, and must be strictly construed.  At most, the privilege applies <u>only</u> to "agency opinions and recommendations," and a bank's responses thereto.  *See In re Bankers Trust Co.*, 61 F.3d 465, 471 (6th Cir. 1995); *Schreiber v. Society for Savings Bancorp*, 11 F.3d 217, 220 (D.C. Cir. 1993); *In re Washington Mutual, Inc. Sec. & ERISA Litig. ("WaMu")*, Case No. 2:08-md-1919 MJP, slip op. at 2 (W.D. Wash. Feb. 2, 2010) (Browne Decl., Ex. B).  Here, the Citigroup Defendants are improperly withholding hundreds of documents that do not constitute agency opinions or responses to any agency opinion.

For example, the Citigroup Defendants are refusing to produce ███████████████████ ██████████████████████████████████████████████████████████████ ████████████████████████████████████ *See* Browne Decl., Ex. D (list of documents).  The bank examination privilege by its terms does not apply to ███████████ ██████████████████████████████████████████████ and therefore these documents must be produced.  Moreover, virtually all of the documents on the log contain purely

factual material.  *See id.*, Exs. D and E (lists of documents).  Courts universally hold that "factual"

information is outside the scope of the bank examination privilege.  *See Schreiber*, 11 F.3d at 220;

*see also Bankers Trust*, 61 F.3d at 472 ("All factual material … must be produced.").  This is

particularly true where, as here, the documents relate to the underlying financial condition of the

bank and the core issues in the litigation.  *See, e.g., In re Franklin Nat'l Bank Sec. Litig.*, 478 F.

Supp. 577, 579, 585 (E.D.N.Y. 1979) (Weinstein, J.) (ordering production of documents concerning

examination of "adequacy of [bank's] capital structure," "quality of the bank's assets," and its

"liquidity position").

Citigroup is also improperly withholding documents relating to ███████████████

███████████████████████████████████████████████  Specifically,

in January 2011, the Financial Crisis Inquiry Commission ("FCIC") posted on its website a

February 14, 2008 letter from the OCC to Citigroup.  The February 14, 2008 letter stated that the

OCC had concluded – almost ten months <u>before</u> Citigroup's near-collapse – that Citigroup was

taking "untenable risks for the sake of profitability" in its portfolio of CDOs, structured investment

vehicles ("SIVs"), and mortgage loans, and that there were material "deficiencies that need to be

addressed" with respect to Citigroup's valuation methodology for its CDOs.  *See* Browne Decl., Ex.

F at 2, 6.  The importance of this document is clear, as it corroborates many of the Bond Plaintiffs'

allegations in this litigation.  Tellingly, the Citigroup Defendants have asserted the bank

examination privilege over ████████████████████████  Moreover, it is clear

from the privilege log that ████████████████████████████████

████████████  As discussed below, it is well-established that supervisory letters and responses are

factual in nature and must be produced.  *See Schreiber*, 11 F.3d at 221 (collecting cases); *In re

Midlantic Corp. S'holder Litig.*, 1994 WL 750664, at *2-4 (D.D.C. Oct. 24, 1994) (finding that

OCC supervisory letters contain factual information and must be produced).

Finally, the Court should not, in any event, recognize the bank examination privilege in this case. Courts do not hesitate to override the privilege when the documents sought are highly relevant to the claims and it is in the "interest of ... justice" to have them disclosed. *In re Subpoena Served upon the Comptroller of the Currency*, 967 F.2d 630, 634 (D.C. Cir. 1992); *see also Forstmann Leff Assocs. v. Am. Brands, Inc.*, 1991 WL 168002, at *3-4 (S.D.N.Y. Aug. 16, 1991). Significantly, courts have held for decades that where, as here, a bank has engaged in conduct that posed systemic risk to the economy, the public interest in disclosure justifies overriding this privilege. *See Franklin Nat'l Bank*, 478 F. Supp. at 587 (where bank's collapse "threatened [] the economic health of the ... nation," the "public interest [] demands that the confidential sections [of bank examination reports] be disclosed"). The unprecedented taxpayer bailout of Citigroup in the fall of 2008 forestalled what may have been a complete collapse of the American banking system. Under these circumstances, the "public interest" strongly favors overriding the privilege.

## **FACTUAL BACKGROUND**

### I.   **Procedural Background**

On January 15, 2009, Bond Plaintiffs filed the Consolidated Amended Class Action Complaint ("Complaint"), which asserts claims under Sections 11, 12, and 15 of the Securities Act of 1933. The Complaint alleges that Citigroup misrepresented its exposure to hundreds of billions of dollars worth of toxic mortgage-related assets and their impact on Citigroup's financial condition in connection with over forty public offerings of debt and preferred securities conducted between May 2006 and August 2008. Complaint ¶¶1-17.

On July 12, 2010, the Court denied the bulk of Defendants' motions to dismiss and largely sustained the Complaint. *See Citigroup*, 723 F. Supp. 2d 568. In its July 12 Opinion, the Court held that Bond Plaintiffs had standing to assert Section 11 claims for each of the offerings, and expressly sustained the Complaint's allegations that Citigroup: (i) misrepresented its exposure to as

much as $66 billion of subprime CDOs (*see id.* at 589-90); (ii) misrepresented the value of those CDOs (*see id.* at 594-95); (iii) misrepresented the credit quality and value of its SIVs (*see id.* at 592, 594-95); (iv) understated its mortgage loan loss reserves by billions of dollars (*see id.* at 592-93); and (v) misrepresented its "well capitalized" status and failed to disclose that massive unreported losses had brought it to the brink of insolvency (*see id.* at 593-94).

On July 26, 2010, Defendants filed a motion for reconsideration (Dkt. No. 61) asking the Court to reverse its holding that Bond Plaintiffs had standing under Section 11 to assert claims in connection with each offering. Defendants' motion for reconsideration was denied in an opinion and order dated March 29, 2011. *See* Dkt. No. 82. Bond Plaintiffs filed their motion for class certification on March 11, 2011. Defendants' opposition is due on May 13, 2011.

## II.    Status Of Discovery

The Court's Scheduling Order (Dkt. No. 70) provides that fact discovery was to begin on August 27, 2010; document discovery was to be substantially complete by February 18, 2011; and fact discovery is to close by December 16, 2011. On August 30, 2010, Bond Plaintiffs served requests for production of documents on the Citigroup and the Individual Defendants. Consistent with the Court's July 12 Opinion sustaining claims related to Citigroup's solvency and capital adequacy, Bond Plaintiffs sought documents concerning, among other things: (i) Citigroup's receipt of $25 billion in taxpayer funds from the TARP in October 2008; and (ii) the $326 billion taxpayer bailout in November 2008. *See* Browne Decl., Ex. G.

Since serving their document requests, Bond Plaintiffs have engaged in numerous meet-and-confers with Defendants in an effort to obtain documents relating to Citigroup's receipt of TARP funds and the taxpayer bailout. While Defendants have produced documents relating to certain other issues, the first production of documents relating to TARP and the Government bailout was not made until April 26, 2011. In April 2011, Bond Plaintiffs issued eight deposition notices for

Citigroup witnesses for dates in late May, June and July, and expect to notice additional Defendant witnesses in the coming weeks.[1]

### III.    The Citigroup Defendants' Assertion Of The "Bank Examination" Privilege

On April 29, 2011, in connection with their initial production of TARP and bailout related documents, the Citigroup Defendants provided a privilege log identifying 275 documents being withheld from production, including 251 documents withheld solely on the basis of a "bank examination" privilege.  The privilege log was provided more than eight months after Bond Plaintiffs served their document requests, and over two months after the Court's February 18, 2011 deadline for the substantial completion of document production.[2]    Notably, the Citigroup Defendants have acknowledged that the April 29 privilege log is incomplete, and only reflects documents that were withheld from their initial production of TARP and bailout documents. Defendants have also admitted that they are withholding additional documents based on the bank examination privilege and will supplement their privilege log in the future.  *See* Browne Decl., Ex. C.  Nonetheless, the parties have agreed that the meet and confer process on this issue is exhausted. *See* Browne Decl., Ex. H.

As referenced above, the bank examination privilege that the Citigroup Defendants are asserting actually belongs to the federal banking authorities, not to Citigroup.  *See Bankers Trust*, 61 F.3d at 472 ("The bank examination privilege belongs to the Federal Reserve…."); *WaMu*, Case

---

[1]  In addition to conducting merits-related document discovery, since January 2011, the parties have been engaged in extensive discovery relating to class certification.  For instance, in response to Defendants' document requests and deposition notices, which were first issued in mid-January 2011, Bond Plaintiffs have produced nearly 50,000 pages of documents to Defendants, and Defendants have scheduled or conducted 19 depositions of Plaintiffs and their investment advisers.

[2]  Bond Plaintiffs made repeated efforts to obtain the privilege log earlier, including writing multiple letters to Defendants and holding numerous meet-and-confers.  For instance, on February 7, 2011, Bond Plaintiffs noted that their requests for TARP and bailout documents had been outstanding for more than five months, and requested production of such documents along with a privilege log by March 4, 2011.  Browne Decl., Ex. I.  Following additional requests by Bond Plaintiffs and more meet-and-confers, Defendants eventually agreed to provide the initial privilege log by April 29, 2011.  *See* Browne Decl., Ex. H.

No. 2:08-md-1919 MJP, slip op. at 2 (the "bank examination privilege is a qualified privilege belonging solely to the agency asserting it").  Because the privilege is designed to protect information that federal banking authorities (as opposed to the banks they regulate) wish to keep confidential, federal regulations require Citigroup to immediately inform regulatory agencies if any party seeks information that is potentially protected by this privilege.  *See* 12 C.F.R. § 4.37(b)(3)(i) (requiring a "bank … served with a request … to provide non-public OCC information" to "[i]mmediately notify the Director of the OCC's Litigation Division … so that the OCC may intervene in the judicial or administrative action if appropriate"); 12 C.F.R. § 261.23(a)(1) (similarly requiring "prompt[]" notice to the Federal Reserve's General Counsel); 12 C.F.R. § 309.7(b) (same for FDIC).

Thus, Citigroup was obligated to provide its regulators with Bond Plaintiffs' document requests more than eight months ago.  The Citigroup Defendants, however, do not contend that any federal agency has come forward to assert the bank examination privilege with respect to any document on their privilege log.  Nevertheless, out of an abundance of caution, Bond Plaintiffs have provided this motion and copies of the Citigroup Defendants' privilege log to the Federal Reserve, the OCC, and the FDIC, and informed them that the opposition deadline is May 20, 2011.  *See* Browne Decl., Ex. J.

Bond Plaintiffs anticipate that the Citigroup Defendants may contend that the Court cannot order production of these documents unless Bond Plaintiffs exhaust all administrative procedures for requesting the documents from the banking agencies.  As discussed below in Section IV, even setting aside the fact that many of the documents that the Citigroup Defendants are withholding are ███████████████████████████████████████████████████████████████████ this "administrative exhaustion" argument has been repeatedly rejected by the courts.  *See, e.g.*, *WaMu*, Case No. 2:08-md-1919 MJP, slip op. at 4 ("administrative banking regulations do not trump the

Federal Rules of Civil Procedure").

<div align="center">**ARGUMENT**</div>

**I.**    **The Rigorous Legal Standard For Application Of The Bank Examination Privilege**

It is "well-established" that an assertion of "privilege stands in derogation of the public's right to every man's evidence ... and as an obstacle to the investigation of the truth," and thus, "ought to be strictly confined within the narrowest possible limits." *In re Horowitz*, 482 F.2d 72, 81 (2d Cir. 1973) (Friendly, J.), *cert. denied*, 414 U.S. 867 (1973); *see also RMED Int'l, Inc. v. Sloan's Supermarkets, Inc.*, 2003 WL 41996, at *2 (S.D.N.Y. Jan. 6, 2003) (same); *Calvin Klein Trademark Trust v. Wachner*, 198 F.R.D. 53, 55 (S.D.N.Y. 2000) (same). Moreover, as with all privileges, the party asserting the bank examination privilege bears the strict burden of establishing that it applies. *See Horowitz*, 482 F.2d at 82; *RMED Int'l*, 2003 WL 41996, at *2.

The Second Circuit has never recognized the existence of the bank examination privilege, and the District Courts routinely hold that the privilege has an especially narrow scope. For example, in a recent securities class action involving Washington Mutual – which, like Citigroup, was a large financial institution that received a Government bailout in late 2008 in an effort to prevent its collapse – plaintiffs sought documents concerning any formal or informal investigation of Washington Mutual by any bank regulator. *See WaMu*, Case No. 02:08-md-1919-MJP, slip op. at 1-2. The agencies asserted that these documents – ██████████████████████████ – represented the internal work product of the regulatory agencies – were confidential and exempt from disclosure. In flatly rejecting this argument, the court noted the narrow scope of the privilege and held that the agencies' "interpretation of the privilege is overbroad," "[n]o privilege attaches to these documents," and they all had to be produced. *Id.* at 3. This recent holding comports with a plethora of prior decisions holding that the privilege does not attach to documents that banks or regulatory agencies have attempted to withhold. Indeed, a review of the case law regarding the

<div align="center">8</div>

bank examination privilege demonstrates that, in nearly underline every instance, courts have found that the privilege does not apply.  *See, e.g., Schreiber,* 11 F.3d at 220 (noting that "every court that has examined the nature of bank examination reports" has ordered them produced); *Principe v. Crossland Savings,* 149 F.R.D. 444, 449 (E.D.N.Y. 1993); *Seafirst Corp. v. Jenkins,* 644 F. Supp. 1160, 1161-62 (W.D. Wash. 1986); *Franklin Nat'l Bank,* 478 F. Supp. at 583-87.

As these cases make clear, the bank examination privilege is strictly limited.  At most, the privilege applies to only "agency opinions and recommendations," and a bank's response thereto. *See Bankers Trust,* 61 F.3d at 471; *Schreiber,* 11 F.3d at 220; *WaMu,* Case No. 02:08-md-1919-MJP, slip op. at 3 (privilege protects only "agency opinions, policy recommendations, or proposed courses of action").   Therefore, by its own terms, the privilege does not apply to ███████  ███████████████████  Moreover, it is well-established that the privilege does not protect material that is "primarily factual" in nature.  *See, e.g., Bankers Trust,* 61 F.3d at 472; *Schreiber,* 11 F.3d at 220 (documents that are "primarily factual in nature" are not privileged).

Further, in those limited instances where courts have found that the privilege could apply to discrete portions of documents, courts do not hesitate to override the privilege in the interest of justice or if the documents relate to matters of intense "public interest."  *See, e.g., Franklin Nat'l Bank,* 478 F. Supp. at 587 (where bank's collapse "threatened ... the economic health ... of the nation," the privilege is overridden); *Principe,* 149 F.R.D. at 449 (overriding privilege where bank's collapse "threatens the health of the nation and the international economic community"); *Forstmann,* 1991 WL 168002, at *1; *In re Subpoena,* 151 F.R.D. 1, 2-3 (D.D.C. 1992); *Walsh v. Chittenden Corp.,* 799 F. Supp. 405, 408-09 (D. Vt. 1992) (Parker, C.J.).

For the reasons set forth below, the rigorous standard for application of the bank examination privilege is not met in this case.  Moreover, even if the bank examination privilege applies to a few of the documents the Citigroup Defendants seek to withhold, the privilege should

be overridden in the context of this litigation – which centers on the historic and unprecedented Government bailout of one of the nation's largest banks.

## II.   The Bank Examination Privilege Does Not Apply To Any Of The Documents On The Citigroup Defendants' Privilege Log

The Citigroup Defendants fail to meet the rigorous standard for application of the bank examination privilege for <u>any</u> of the documents on their privilege log for at least three reasons: (1) the privilege does not apply to ███████████████████████████████████ (2) the privilege does not apply to documents that reflect underlying factual matters relating to Citigroup's financial condition; and (3) the privilege does not apply to █████████████████ ██████████████████████████████

### A.   The Bank Examination Privilege Does Not Shield █████████████ ██████████████ Of Factual Matters Between Citigroup Personnel

The bank examination privilege has the limited purpose of protecting "the flow of [candid] communication between the bank and the regulatory agency." *In re Subpoena*, 967 F.2d at 634; *see also Bankers Trust*, 61 F.3d at 471 ("purpose of the privilege is to preserve candor in <u>communications between</u> bankers and examiners") (emphasis added). Nonetheless, the Citigroup Defendants are refusing to disclose ████████████████████████████████████████ ████████████████████████████████████████████████████████

*See* Browne Decl., Ex. D.

These ███████ documents, ████████████████████████████████ are not covered by the bank examination privilege. Moreover, these documents reflect ████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████ Thus, they contain critical factual information that goes directly to the heart of Bond Plaintiffs' allegations.

For example, numerous documents set forth on the Citigroup Defendants' privilege log

relate ███████████████████████████████████████████████████████████ and

are plainly not covered by the bank examination privilege.  These include:



███████████████████████████████████████████████████

███ *See e.g., id.*, Exs. A and D, ███████████████████████

██████████████████████████████

Citigroup is also improperly withholding dozens of other documents that reflect ██████

██████████████████████████████████████████████████████

██████████ Again, there is no basis for the Citigroup Defendants to withhold documents

that relate to ████████████████████████████████ particularly given how

those ██████ relate directly to allegations in this case and have been publicly criticized by the

11

OCC in the supervisory letter already released to the public. *See* Browne Decl., Ex. F.  Examples of

these documents include:



    As final examples of the types of ▮▮▮▮▮▮▮▮ the Citigroup Defendants are

improperly withholding, the privilege log contains numerous documents that relate solely to ▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮ Many of these ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮ These

include:





In sum, the approximately ███████████████ that the Citigroup Defendants are attempting to shield from production based solely on the bank examination privilege occurred ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ the bank examination privilege, in the limited instances where it applies, is designed to protect. *In re Subpoena*, 967 F.2d at 634; *Bankers Trust*, 61 F.3d at 471. Moreover, these documents do <u>not</u> constitute "agency opinions or recommendations" or the bank's responses thereto. To the contrary, ████████████████████████████████████████████████████████████ ████████████████ If a bank can shield such ███████████ from production merely because

they may have been undertaken in connection with obtaining a massive taxpayer bailout, the privilege will be used to shield critical information that it was never meant to protect.

In addition, even if the Citigroup Defendants contend that the approximately ███████████ ██████ listed on Citigroup's privilege log somehow form part of a "response" by Citigroup to an agency opinion or recommendation (which they do not), these documents would still not be privileged because they relate purely to underlying factual matters. As noted above, it is well-established that the bank examination privilege does not apply to underlying factual material. *See, e.g., Bankers Trust*, 61 F.3d at 472 ("All factual material, if relevant, must be produced[.]"); *Schreiber*, 11 F.3d at 220.

Here, every one of the ██████ documents being withheld reflects underlying factual information regarding Citigroup's ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████ These issues lie at the heart of the factual disputes between the parties, and are not subject to the bank examination privilege. Indeed, courts routinely find that the bank examination privilege does not apply to underlying factual information relating to ████████████████████████████████████████████ *See Schreiber*, 11 F.3d at 221 (collecting cases); *Forstmann*, 1991 WL 168002, at *1 (ordering production of "communications between federal and state regulators and … savings and loan associations concerning the associations' junk bond portfolios"); *Bankers Trust*, 61 F.3d at 472 ("courts cannot fairly decide cases if they cannot have access to the information needed for a fair, objective decision") (Merritt, C.J., concurring); *Seafirst*, 644 F. Supp. at 1161-62 (reports "that contain information about the financial condition of the bank and evaluations of bank management"); *Franklin Nat'l Bank Sec. Litig.*, 478 F. Supp. at 579 (documents concerning "the quality of the bank's assets, the sufficiency of internal controls, the adequacy of capital structure

14

and the soundness of management's policies'").

**B.     The Bank Examination Privilege Does Not Shield Underlying
Factual Information Regarding Citigroup's Financial Condition
Merely Because** ███████████████████████████████████████

Although the Citigroup Defendants have also asserted the bank examination privilege over

more than ████████████████████████████████████████████████████████████████████

████████████ *see* Browne Decl., Ex. E (list of documents), ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████ Rather, these documents concern ████████████████████████████████████

████████████████████████████████████████████████████████████████████████████████

████████████████████████ There is no basis for the Citigroup Defendants' attempt to

cloak this underlying factual information in the bank examination privilege merely because ████████

██████████████████████████ It is black letter law that factual documents do not become

privileged ████████████████████████████████████████

There are numerous examples of documents on the Citigroup Defendants' privilege log

concerning ████████████████████████████████████████████████████████████

████████████████████████████ For instance, the Citigroup Defendants are withholding

████████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ – key issues in this

case.  These include:

████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████████████

15



In addition, numerous documents regarding  being improperly withheld, including:



The Citigroup Defendants are also improperly withholding dozens of documents that

For example:





In sum, the Citigroup Defendants are attempting to shield from production hundreds of documents that are factual in nature (and highly relevant), merely because ████████████ ████████████████████ It is well-established, however, that factual analysis performed by a bank, particularly analysis relating to its financial condition, is not privileged, and does not become so merely because ████████████████ Indeed, these are precisely the types of documents that courts in this Circuit and across the country universally hold to be factual in nature, outside the scope of the bank examination privilege, and required to be produced. *See WaMu*, Case No. 2:08-md-1919 MJP, slip op. at 1, 3 (documents concerning regulatory investigations of bank's financial condition "contain factual information outside the scope of the bank examination privilege"); *Vescio v. Merchant's Bank*, 208 B.R. 122, 128 (Bankr. Vt. 1997) ("The existence of MOU and the status of the Bank's compliance with it are clearly not matters of opinion."); *Seafirst*, 644 F. Supp. at 1162, 1163 (reports containing "information about the financial condition of the bank" were factual in nature); *Franklin Nat'l Bank*, 478 F. Supp. at 579, 585 (documents concerning "adequacy of [bank's] capital structure," "quality of the bank's assets," bank's "liquidity position," and "soundness of management" were factual).

C.   **OCC Supervisory Letters And** ████████████████ **Are Not Privileged**

The final category of materials that Citigroup is withholding consists of two documents ████████████████████████████████ The OCC is charged with supervising national banks and was Citigroup's principal regulator. As such, the OCC periodically reviewed Citigroup's financial condition, risk management, and compliance with a variety of federal regulations and

standards applicable to its business operations.  "Supervisory letters" are documents that describe the OCC's examination of a bank's financial condition and risk management.  As described above, in January 2011, the FCIC – the Government body charged with investigating the causes of the financial crisis – publicly released an OCC supervisory letter sent to Citigroup on or about February 14, 2008 (*see* Browne Decl., Ex. F).  This supervisory letter found, among other things, that as early as January 2008 – months before Citigroup nearly collapsed – Citigroup had material "deficiencies" in its CDO valuation methodology and had accumulated "untenable risk" in its portfolio of CDOs and mortgage loans.  *Id.* at 2, 6.

Notably, while the February 14, 2008 supervisory letter is publicly available, the Citigroup Defendants have withheld from production █████████████████████████████████ ████████  *See*  Browne Decl., Ex. A., Document 1.   The Citigroup Defendants are also withholding ████████████████████████████████████████████ ████████  *See id.*, Document 103.  Moreover, while the privilege log reflects ███████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████ These documents must be produced.

There can be no dispute that documents describing the findings of an agency's examination of a bank's financial condition and risk management, ██████████████████████████ are factual and outside the scope of the privilege.  As the District of Columbia Circuit observed, "every court that has examined the nature of bank examination reports thus far has found them to be at least partly factual" and ordered them produced.  *Schreiber*, 11 F.3d at 221 (collecting cases); *see also In re Midlantic Corp. S'holder Litig.*, 1994 WL 750664, at *2-4 (D.D.C. Oct. 24, 1994) (finding that OCC supervisory letters contain factual information, and ordering them produced).

Because the OCC's supervisory letters are factual and outside the scope of the privilege, ██████████ ██████████████████ are necessarily not privileged either. *See Forstmann*, 1991 WL 168002, at *1 (requiring production of "correspondence from the [bank] to the OTS in response to issues raised in the examination reports").

Moreover, the February 14, 2008 supervisory letter makes clear that Citigroup's purportedly privileged response to this document also contains information that can only be characterized as factual. Specifically, the supervisory letter states that Citigroup's response was required to "detail[] [the] actions being taken to address the ... issues noted" by the OCC. *See* Browne Decl., Ex. F, at 6. This information – *i.e.*, a description of the actions Citigroup took with respect to its accounting and risk management practices as a consequence of the OCC's findings – is inherently factual and required to be produced.

### III.  Even Assuming *Arguendo* That The Privilege Applies To The Documents At Issue, It Should Be Overridden

Even assuming that the Citigroup Defendants' privilege log provided the "precise and certain reasons" necessary to establish that the documents at issue were agency opinions or recommendations, which it does not, this Court should nonetheless override the bank examination privilege. *Walsh*, 799 F. Supp. at 408. As noted above, courts routinely override the privilege "to promote the paramount interest of the Government in having justice done between litigants," or "in other circumstances when the public's interest in effective government would be furthered by disclosure." *In re Subpoena*, 967 F.2d at 634; *see also Forstmann*, 1991 WL 168002, at *4 (overriding privilege); *In re Subpoena*, 151 F.R.D at 3 (same); *Walsh*, 799 F. Supp. at 409 (same); *Seafirst*, 644 F. Supp. at 1164 (same).

As Judge Weinstein explained more than 30 years ago in a case involving the collapse of a large bank, under circumstances virtually identical to those present here, the public interest strongly favors disclosure:

Aside from the importance of the material in the confidential sections of the Examination Reports to a just and accurate adjudication of the facts, an additional consideration of the public interest reduces the force of the claim for nondisclosure. Nine months before its collapse, the Franklin National Bank stood as the nation's twentieth largest bank. Its fall far surpasses the significance of the failure of more provincial banks; it threatened not only the economic health of the locality, but of the nation, and even of the international economic community. ... A strong public interest thus demands that the confidential sections be disclosed to fully air the story behind the bank's collapse and to help evaluate the adequacy of existing bank examination procedures. Unlike the usual case, where the application of the official information privilege would help provide more effective government, here it would only frustrate that goal.

*Franklin*, 487 F. Supp. at 587; *see also Principe*, 149 F.R.D. at 449 (relying on *Franklin* to override privilege where, as here, bank's collapse would "threaten[] the health of the nation and the international economic community," and noting that "[t]his reasoning is even more persuasive today than it was in 1979 in light of the banking crises of the late 1980's"). This reasoning applies with particular force to Citigroup, whose problems not only threatened the national economy, but also forced taxpayers to provide it with unprecedented sums of public money in order to stave off the systemic harm that its demise would have caused.

In addition, each of the other factors that courts consider when determining whether to override the privilege weighs heavily in favor of disclosure. First, there can be no serious question that the discovery sought is highly relevant. As detailed above, the Complaint alleges that Defendants made material misstatements and omissions concerning Citigroup's CDO exposure, the value of its CDO securities, its loss reserves, and its capital adequacy and solvency, among other things. There is no dispute that documents identified on the privilege log ██████████████ ██████████████████████████ are highly likely to contain facts that relate directly to whether Defendants' statements on these subjects were untrue, and are therefore critical to the core issues in this case. *See, e.g., Principe*, 149 F.R.D. at 449 (supervisory reports relevant to "alleged misrepresentations"); *Walsh*, 799 F. Supp. at 408-09; *Franklin*, 478 F. Supp. at 586-87 (documents relevant to "numerous issues," including negligence of directors).

21

Second, the discovery sought is uniquely important, and there are no available substitutes. The documents being withheld include ████████████████████████ concerning the central issues in this case. These documents were ████████████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████ These documents thus "provide a unique and objective contemporaneous chronicle" of Citigroup's near-collapse and, as such, constitute extraordinary evidence that is highly relevant to Plaintiffs' claims. *Franklin*, 478 F. Supp. at 586; *Principe*, 149 F.R.D. at 449 (same).

Third, this litigation is undoubtedly serious. This case concerns a series of misstatements and omissions made in violation of the federal securities laws by one of the world's largest banks in connection with its efforts to raise more than $70 billion from the investing public. The Complaint alleges that these misrepresentations and omissions concealed the fact that massive unreported impairments in Citigroup's toxic assets had brought it to the brink of bankruptcy, and forced the U.S. Government to extend the Bank the largest taxpayer bailout in history. In short, the seriousness of this case is beyond question. *See, e.g.*, *In re Subpoena*, 151 F.R.D at 2 ("such allegations are undoubtedly serious, and raise fundamental issues regarding public confidence in the fairness of the financial markets").

Fourth, while the Government is not directly involved in this litigation, the Government is deeply involved in the events giving rise to Bond Plaintiffs' claims, and the manner of its involvement weighs heavily in favor of disclosure. These facts should be aired, not shrouded in secrecy.

Fifth, disclosure in this case will not have any "chilling" impact on communications between banks and their regulators. As courts in this District and elsewhere have repeatedly held, no such impact will occur because "bank officials are legally obligated to cooperate with bank

examiners." *Forstmann*, 1991 WL 168002, at *4; *In re Subpoena*, 151 F.R.D at 3 ("The chilling effect … should not be exaggerated."); *Seafirst*, 644 F. Supp. at 1164.  Moreover, the protective order in this litigation provides more than adequate safeguards for any information designated as confidential by Citigroup or any third party.  Courts have consistently held that this fact also negates any potential impact on bank-agency communications.  *See, e.g., Schreiber*, 11 F.3d at 222 (potential impact on the bank examination process "would largely be alleviated" by a protective order); *Walsh*, 799 F. Supp. at 409; *Lundy v. Interfirst Corp.*, 105 F.R.D. 499, 502 (D.D.C. 1985).

IV.     **Bond Plaintiffs Are Not Required To Exhaust Administrative Procedures To Obtain Discovery Authorized By The Federal Rules Of Civil Procedure**

During the meet-and-confer process, the Citigroup Defendants asserted that Bond Plaintiffs are required to exhaust administrative procedures for requesting documents from the banking agencies before this Court can order Citigroup to produce the documents pursuant to the Federal Rules of Civil Procedure.  This argument has been repeatedly rejected.

In *Bankers Trust*, the Sixth Circuit confronted the similar argument that a plaintiff was required to follow Federal Reserve regulations mandating that the plaintiff subpoena the documents from the agency, rather than moving to compel them from the bank.  The Sixth Circuit concluded that Congress had not empowered the agency to promulgate regulations that are inconsistent with the Federal Rules of Civil Procedure or a court's ability to control discovery.  *Bankers Trust*, 61 F.3d at 470-71 (there is "no compelling reason to discard the relatively straightforward discovery methods outlined in the Federal Rules of Civil Procedure simply because the Federal Reserve has attempted to mandate a different procedure").

Consistent with this decision, courts in this Circuit have repeatedly held that litigants are not required to seek agency permission to obtain documents as a pre-condition to moving to compel production directly from the bank.  For example, relying on *Bankers Trust*, the court in *In re Vescio* rejected the bank's argument that the plaintiffs were required to first "file applications with the

banking agencies" to obtain the information they sought, holding that exhaustion was not required because "no privilege or exemption from discovery arises out of the federal regulations in question." *In re Vescio*, 205 B.R. 37, 41 (D. Vt. 1997). Similarly, the court in *Forstmann* rejected the argument that the requesting party was required to "assert their request [for documents] in accordance with [agency] regulations," holding that such procedures were unnecessary where – just as here – the agency "has had full opportunity to review [the] discovery request and assert its objections to disclosure." *Forstmann*, 1991 WL 168002, at *1-2; *see also WaMu*, Case No. 2:08-md-1919 MJP, slip op. at 4 (relying on *Bankers Trust* to hold that the OCC's "administrative banking regulations do not trump the Federal Rules of Civil Procedure," and a court's order to compel production "supplants the regulations"); *Seafirst*, 644 F. Supp. at 1165 (rejecting argument that exhaustion of OCC regulations was required because there was "no authority to the effect that exhaustion of this request procedure is a jurisdictional requirement"); *Dimon Int'l, Inc. v. Arab Am. Bank*, 1995 U.S. Dist. LEXIS 18839, at *6-7 (E.D.N.C. Dec. 6, 1995) (exhaustion was not required because the Federal Reserve "lack[s] legal authority" to promulgate regulations that conflict with the Federal Rules of Civil Procedure, and concluding that "plaintiff has proceeded appropriately by moving to compel").[5]

---

[5] Bond Plaintiffs note that some district courts outside the Southern District of New York have ordered parties seeking such information to first request it from regulators. *See, e.g.*, *Am. Savings Bank v. PaineWebber Inc.*, 210 F.R.D. 721 (D. Haw. 2001). However, as the cases cited above make clear, there is no legal requirement that a party do so. In the circumstances of this case, given the importance of the information sought, the Court's discovery schedule, and the fact that Citigroup was required to give the regulators notice of the document requests many months ago (and that the regulators have been provided with this motion), no purpose would be served by requiring Bond Plaintiffs to make a duplicative request to the regulators for this information.

## CONCLUSION

For the reasons set forth above, Bond Plaintiffs' motion to compel the documents that Citigroup is withholding solely on the basis of the bank examination privilege should be granted.

Dated: May 13, 2011

<div style="margin-left:40%">

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**


By: /s/ *Steven B. Singer*
Steven B. Singer
John C. Browne
Jeremy P. Robinson
John Rizio-Hamilton
Kristin Ann Meister
1285 Avenue of the Americas
New York, New York 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Bond Plaintiffs, and
Court-Appointed Bond Counsel*

David Kessler
Darren J. Check
John A. Kehoe
Matthew L. Mustokoff
Richard A. Russo, Jr.
**BARROWAY TOPAZ KESSLER
MELTZER & CHECK, LLP**
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Additional Counsel for City of Tallahassee
Retirement System, Miami Beach
Employees' Retirement Plan, Southeastern
Pennsylvania Transit Authority, City of
Philadelphia Board of Pensions and
Retirement, and James M. Brown*

</div>

Marc I. Gross
Joshua B. Silverman
**POMERANTZ HAUDEK BLOCK
GROSSMAN & GROSS LLP**
100 Park Avenue
New York, NY 10017
Tel- 212-661-1100
Fax-212-661-8665

*Additional Counsel for American European
Insurance Company*