UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CITIGROUP INC. BOND LITIGATION | MASTER FILE 08 Civ. 9522 (SHS) |

## CITIGROUP'S MEMORANDUM OF LAW IN OPPOSITION TO THE BOND PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS WITHHELD BASED ON THE BANK EXAMINATION PRIVILEGE

PAUL, WEISS, RIFKIND, WHARTON &
  GARRISON LLP
Brad S. Karp
Richard A. Rosen
Charles E. Davidow
Susanna M. Buergel

1285 Avenue of the Americas
New York, New York  10019-6064
Tel.  (212) 373-3000

*Attorneys for Defendants Citigroup Inc.,
Citigroup Funding Inc., Citigroup Capital
XIV, Citigroup Capital XV, Citigroup
Capital XVI, Citigroup Capital XVII,
Citigroup Capital XVIII, Citigroup Capital
XIX, Citigroup Capital XX, Citigroup
Capital XXI, C. Michael Armstrong, Alain
J.P. Belda, Sir Winfried Bischoff, Michael
Conway, Gary Crittenden, George David,
Kenneth T. Derr, John M. Deutch, Scott
Freidenrich, James Garnett, John C.
Gerspach, Ann Dibble Jordan, Klaus
Kleinfeld, Sallie L. Krawcheck, Andrew N.
Liveris, Dudley C. Mecum, Anne Mulcahy,
Vikram Pandit, Richard D. Parsons, Charles
Prince, Roberto Hernández Ramirez, Judith
Rodin, Saul Rosen, Robert E. Rubin, Robert
L. Ryan, Franklin A. Thomas, Eric L.
Wentzel and David Winkler*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

RELEVANT BACKGROUND .............................................................................................4

ARGUMENT....................................................................................................................8

I.      BECAUSE THE BOND PLAINTIFFS HAVE REFUSED
TO EXHAUST THEIR ADMINISTRATIVE REMEDIES,
THE MOTION TO COMPEL SHOULD BE DENIED ....................................................8

II.     THE PROTECTED DOCUMENTS ARE COVERED
BY THE BANK EXAMINATION PRIVILEGE............................................................15

        A.     Documents That Reflect Analysis Are
Deliberative Material Protected by the Privilege....................................................16

        B.     Internal Communications That Reflect Confidential
Bank Examination Information Are Privileged .....................................................17

        C.     Citigroup's Responses to OCC Supervisory
Letters Are Privileged ...........................................................................................18

III.    THE BOND PLAINTIFFS HAVE FAILED TO MEET
THEIR BURDEN OF DEMONSTRATING WHY
THE PRIVILEGE SHOULD NOT BE RESPECTED HERE..........................................19

CONCLUSION................................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Am. Sav. Bank* v. *PaineWebber, Inc.*,
210 F.R.D. 721 (D. Haw. 2001) .......................................................................... 9

*In re Atl. Fin. Fed. Sec. Litig.*,
1992 WL 50074 (E.D. Pa. Mar. 3, 1992) ..................................................... 10, 19

*Bancorp* v. *F.D.I.C.*,
1999 WL 1332312 (D.N.J. Nov. 10, 1999) ........................................................ 9

*Bank of China* v. *St. Paul Mercury Ins. Co.*,
2004 WL 2624673 (S.D.N.Y. Nov. 18, 2004) .................................................... 5

*In re Bank One Sec. Litig., First Chicago S'holder Claims*,
209 F.R.D. 418 (N.D. Ill. 2002) ................................................................... 17, 22

*In re Bankers Trust Co.*,
61 F.3d 465 (6th Cir. 1995) ................................................... 10, 11, 13, 20

*Bay Bank* v. *f/v ORDER OF MAGNITUDE*,
2007 WL 737344 (W.D. Wash. Mar. 7, 2007) .................................................. 9

*Colonial Sav. & Loan Ass'n* v. *St. Paul Fire & Mar. Ins. Co.*,
89 F.R.D. 481 (D. Kan. 1980) .......................................................................... 10

*In re Countrywide Fin. Corp. Sec. Litig.*,
2009 WL 5125089 (C.D. Cal. Dec. 28, 2009) .................................................. 9

*Denny* v. *Carey*,
78 F.R.D. 370 (E.D. Pa. 1978) ......................................................................... 10

*Dimon Int'l, Inc.* v. *Arab Am. Bank*,
1995 U.S. Dist. LEXIS 18839 (E.D.N.C. Dec. 6, 1995) ................................. 12

*F.D.I.C.* v. *Flagship Auto Ctr., Inc.*,
2005 WL 1140678 (N.D. Ohio May 13, 2005) .................................................. 9

*Fairfield* v. *Houston Bus. Journal, Inc.*,
1993 WL 742740 (S.D. Tex. Sept. 8, 1993) .................................................... 16

*Feinberg* v. *Hibernia Corp.*,
1992 WL 54738 (E.D. La. Mar. 9, 1992) ........................................................ 19

*Feinberg* v. *Hibernia Corp.*,
1993 WL 8620 (E.D. La. Jan. 6, 1993) ........................................................... 18

*Forstmann Leff Assocs., Inc.* v. *Am. Brands, Inc.*,
    1991 WL 168002 (S.D.N.Y. Aug. 16, 1991)........................................................ 11, 15, 19

*Frick* v. *Austin Bank, N.A.*,
    1999 U.S. Dist. LEXIS 11493 (E.D. Tex. June 25, 1999)................................................. 9

*Hill* v. *Commerce Bancorp, Inc.*,
    2010 WL 1239568 (D.N.J. Mar. 23, 2010)......................................................... 9

*Interstate Prod. Credit Ass'n* v. *Fireman's Fund Ins. Co.*,
    128 F.R.D. 273 (D. Or. 1989)........................................................................ 10

*Lawrence E. Jaffe Pension Plan* v. *Household Int'l, Inc.*,
    239 F.R.D. 508 (N.D. Ill. 2006)...................................................................... 15

*Linde* v. *Arab Bank, PLC*,
    2009 WL 3055282 (E.D.N.Y. Sept. 21, 2009)......................................................... 18

*McKinley* v. *Bd. of Governors of the Fed. Reserve Sys.*,
    2011 WL 2162896 (D.C. Cir. June 3, 2011)....................................................... 2, 23

*Merchants Bank* v. *Vescio*,
    205 B.R. 37 (D. Vt. 1997)........................................................................... 16

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.* v. *Midland Bancor, Inc.*,
    159 F.R.D. 562 (D. Kan. 1994)....................................................................... 9

*In re One Bancorp Sec. Litig.*,
    134 F.R.D. 4 (D. Me. 1991)......................................................................... 10

*In re Providian Fin. Corp. Sec. Litig.*,
    222 F.R.D. 22 (D.D.C. 2004).................................................................... 16, 19

*Raffa* v. *Wachovia Corp.*,
    242 F. Supp. 2d 1223 (M.D. Fla. 2002)............................................................... 9

*Rayman* v. *Am. Charter Fed. Sav. & Loan Ass'n*,
    148 F.R.D. 647 (D. Neb. 1993)....................................................................... 9

*Schreiber* v. *Soc'y for Sav. Bancorp, Inc.*,
    11 F.3d 217 (D.C. Cir. 1993)....................................................................... 15

*Seafirst Corp.* v. *Jenkins*,
    644 F. Supp. 1160 (W.D. Wash. 1986)............................................................... 12

*Shirk* v. *Fifth Third Bancorp*,
    2008 WL 2661955 (S.D. Ohio July 2, 2008).......................................................... 22

*Sterling Nat'l Bank of Davie* v. *Camp,*
   307 F. Supp. 778 (D.D.C. 1970) ........................................................................ 9

*In re Subpoena Served Upon the Comptroller of the*
   *Currency, & the Sec'y of the Bd. of*
   *Governors of the Fed. Reserve Sys.,*
   967 F.2d 630 (D.C. Cir. 1992) ................................................................ passim

*Union Planters Bank, N.A.* v. *Cont'l Cas. Co.,*
   2003 WL 23142200 (W.D. Tenn. Nov. 26, 2003) ............................................ 9

*United States* v. *Amico,*
   2003 WL 1145426 (W.D.N.Y. Jan. 3, 2003) .................................................... 9

*In re Vescio,*
   205 B.R. 37 (D. Vt. 1997) .............................................................................. 12

*In re Wash. Mut., Inc.,*
   Case No. 2:08-md-1919 MJP, slip op. ............................................................ 11

## STATUTES

18 U.S.C. § 641 ........................................................................................................ 6

## OTHER AUTHORITIES

12 C.F.R. Part 309, *et seq.* ............................................................................ 5, 8, 18

12 C.F.R. Part 261, *et seq.* ............................................................................ 5, 8, 18

12 C.F.R. § 4, *et seq.* ................................................................................. 5, 6, 8, 18

Federal Rule of Civil Procedure 34 ....................................................................... 11

iv

Defendants Citigroup Inc. ("Citigroup"), Citigroup Funding Inc., Citigroup Capital XIV, Citigroup Capital XV, Citigroup Capital XVI, Citigroup Capital XVII, Citigroup Capital XVIII, Citigroup Capital XIX, Citigroup Capital XX, Citigroup Capital XXI, C. Michael Armstrong, Alain J.P. Belda, Sir Winfried Bischoff, Michael Conway, Gary Crittenden, George David, Kenneth T. Derr, John M. Deutch, Scott Freidenrich, James Garnett, John C. Gerspach, Ann Dibble Jordan, Klaus Kleinfeld, Sallie L. Krawcheck, Andrew N. Liveris, Dudley C. Mecum, Anne Mulcahy, Vikram Pandit, Richard D. Parsons, Charles Prince, Roberto Hernández Ramirez, Judith Rodin, Saul Rosen, Robert E. Rubin, Robert L. Ryan, Franklin A. Thomas, Eric L. Wentzel and David Winkler respectfully submit this memorandum of law in opposition to Bond Plaintiffs' Motion to Compel Production of Documents Withheld Based on the Bank Examination Privilege, dated May 13, 2011 (the "Motion" or "Pl. Br.").

## PRELIMINARY STATEMENT

The Bond Plaintiffs' Motion, seeking to compel Citigroup to produce hundreds of documents protected from disclosure by operation of the bank examination privilege without first allowing the bank regulators to be heard on the issue and without first exhausting their administrative remedies, should be denied as a premature and wasteful imposition on the Court's (and the parties') time and resources, consistent with an unbroken line of judicial authority.

Federal courts long have recognized the bank examination privilege as a critical means of encouraging open and frank communications between banks and their regulators. As the D.C. Circuit has observed, the success of the supervisory relationship—and the safety and soundness of the nation's banks—"depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency." *In re Subpoena Served Upon the Comptroller of the Currency, & the Sec'y of the Bd. of Governors of the Fed. Reserve Sys.*, 967 F.2d 630, 633 (D.C. Cir. 1992) ("*In re Subpoena*"). As recently as Friday, the D.C. Circuit

reaffirmed these principles, specifically in the context of the 2008 financial crisis, holding that

the Federal Reserve Board did not need to disclose information provided to it by Bear Stearns,

explaining:

> If supervised institutions no longer believe the Board could or
> would maintain the confidentiality of information it collects
> through the supervisory process, they would be less willing to
> provide the Board with the information it needs to assure a robust
> supervisory environment.  Disclosure of the type of information
> withheld here, therefore, would impair the Board's ability to obtain
> necessary information in the future and could chill the free flow of
> information between the supervised institutions and the Board and
> Reserve Banks.

*McKinley* v. *Bd. of Governors of the Fed. Reserve Sys.*, 2011 WL 2162896, at *8 (D.C. Cir. June

3, 2011) (citations and internal quotation marks and brackets omitted).

These policy considerations notwithstanding, the Bond Plaintiffs demand that this

Court compel Citigroup to produce 251 documents, all but one of which date to late 2008, which

reflect precisely the sort of communications the bank examination privilege is intended to shield

from discovery.  The purported basis for the Bond Plaintiffs' sweeping request is their claim that

they "need" access to the underlying factual information reflected in these privileged

communications to prosecute their case adequately.  This argument is not credible:  as the Bond

Plaintiffs well know, all of the underlying factual information they are seeking to obtain by this

Motion has been provided to them in the *over 25 million pages* of documents that already have

been produced by Citigroup in this litigation.  Stripped of its purple rhetoric and its misleading

rendition of controlling law, the Bond Plaintiffs' Motion should be seen for what it is:  an

inappropriate attempt (both procedurally and substantively) to gain access to the privileged

communications and discussions between Citigroup and its bank regulators during a time of

unprecedented financial crisis, when the nation's bank regulators were in near constant communication with all major financial institutions.

The Bond Plaintiffs' Motion should be denied for several independent reasons.

First, in express contravention of federal banking regulations, the rulings of virtually every federal court to have decided the issue, and the positions expressed by the bank examiners themselves in this litigation, the Bond Plaintiffs have failed to exhaust their administrative remedies by first requesting that the regulators in question—the Board of Governors of the Federal Reserve System, the Federal Deposit Insurance Corporation, and the Office of the Comptroller of the Currency—permit Citigroup to produce the documents that are the subject of the Motion to the bank regulators for their review and evaluation. Since the filing of the Motion, all three regulators have advised the Bond Plaintiffs that they must first exhaust their administrative remedies before seeking the intervention of this Court, and that, until that process is completed, Citigroup is prohibited from disclosing the documents in question. For this reason, Citigroup respectfully submits that this Court deny the Bond Plaintiffs' Motion as premature and permit the bank regulators to complete the process expressly contemplated by applicable federal regulations. No court in the country has ever accepted the approach advanced by the Bond Plaintiffs here.

Second, although the Bond Plaintiffs' failure to exhaust their administrative remedies by itself is sufficient to dispose of the Motion, the Bond Plaintiffs' Motion should be denied for the independent reason that it seeks the inappropriate, blanket waiver of a privilege that must be evaluated on a document-by-document basis, if at all. As every federal court to have considered the issue has held, this Court cannot rely on the Bond Plaintiffs' conclusory and transparently self-interested interpretations of cherry-picked privilege log entries to determine

3

whether the privilege was asserted appropriately in any particular instance. Again, no court in the country has ever accepted the approach advanced by the Bond Plaintiffs here.

Finally, there is no basis for overriding the bank examination privilege here because the Bond Plaintiffs have not met—indeed, they cannot meet—their burden of demonstrating a legitimate need for the information reflected in the 251 withheld documents. Citigroup has already produced over 25 million pages of documents, including over 30,000 documents from the precise period at issue (with an additional 11,000 documents to be produced shortly)—documents that contain detailed information about "Citigroup's CDO exposure, the value of its CDO securities, its loss reserves, and its capital adequacy and solvency." (Pl. Br. at 21). The Bond Plaintiffs already have access to the very information they are seeking to obtain through this Motion and, as such, have failed entirely to demonstrate any need—let alone a compelling need—for the privileged documents.

For all of these reasons, set forth in detail below, the Bond Plaintiffs' Motion should be denied.

## RELEVANT BACKGROUND

As a federal bank holding company, Citigroup is subject to comprehensive regulation by multiple bank regulators, including the Board of Governors of the Federal Reserve System (the "Fed"), the Federal Deposit Insurance Corporation (the "FDIC"), and the Office of the Comptroller of the Currency (the "OCC", together with the Fed and the FDIC, the "Agencies"). The Agencies conduct regular examinations of all aspects of Citigroup's business in a process that involves the exchange of sensitive information and highly confidential communications between the Agencies and Citigroup. Indeed, many full-time employees of the Agencies are physically housed in Citigroup's offices—and also were in 2007 and 2008. The Agencies' examinations often result in periodic examination reports and other related

4

communications that reflect the Agencies' deliberative review of Citigroup's ongoing business activities. To encourage candid communication, the Agencies have promulgated detailed regulations prohibiting unauthorized disclosure of information exchanged in the examination process, and setting forth clear procedures under which private parties can seek access to this information.[1] Citigroup, as a regulated bank holding company, must observe and respect the Regulations.

For this same reason—to promote the candid exchange of communications between federal bank holding companies and their regulators—the federal courts long have recognized a "bank examination" privilege to protect such information from disclosure in private civil litigation. *See In re Subpoena*, 967 F.2d at 634 ("Bank management must be open and forthcoming in response to the inquiries of bank examiners, and the examiners must in turn be frank in expressing their concerns about the bank. These conditions simply could not be met as well if communications between the bank and its regulators were not privileged "); *Bank of China* v. *St. Paul Mercury Ins. Co.*, 2004 WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004) (Sweet, J.) ("[the bank examination privilege] arises out of the practical need for openness and honesty between bank examiners and the banks they regulate, and is intended to protect the integrity of the regulatory process by privileging such communications" (internal citations and quotation marks omitted))

---

[1] *See, e.g.*, 12 C.F.R. § 309.1, *et seq* (FDIC regulations prohibiting disclosure of "[r]ecords that are contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of the FDIC or any agency responsible for the regulation or supervision of financial institutions"), 12 C.F.R. § 261, *et seq* (Fed regulations exempting from disclosure, and prohibiting disclosure of, "[a]ny matter that is contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions, including a state financial institution supervisory agency"), and 12 C.F.R. § 4 31, *et seq* (OCC regulations prohibiting disclosure of "[n]on-public OCC information" including "[a] report of examination, supervisory correspondence . . whether the information is in the possession of the OCC or some other individual or entity") The applicable regulations are referred to collectively in this memorandum as the "Regulations "

Citigroup is not free to disclose information protected by the Agencies' Regulations: the penalties for non-compliance are severe. *See* 12 C.F.R. § 4.37(b)(1)(ii) (noting that "[a]ny person who discloses or uses non-public OCC information … may be subject to the penalties provided in 18 U.S.C. § 641").[2]   Accordingly, in responding to the Bond Plaintiffs' sweeping discovery requests in this litigation (as it must in all litigations and regulatory matters), Citigroup has sought to comply with the Regulations and has withheld from production those documents that contain deliberative material that reflects or responds to agency opinions or recommendations and thus is subject to the bank examination privilege. *See In re Subpoena*, 967 F.2d at 634 (bank examination privilege shields from disclosure "deliberative material," which reflects or responds to "agency opinions or recommendations" relating to the regulation of banks, as distinct from "purely factual material," which is not so protected).[3]

Through their Motion, the Bond Plaintiffs request that the Court order Citigroup to produce 251 documents that Citigroup has withheld pursuant to the bank examination privilege (the "Protected Documents").  With one exception, the Protected Documents were created in late 2008, a time of unprecedented crisis in the financial markets when Citigroup, like all financial institutions, was in nearly constant communication with its regulators, including the Agencies.  The Protected Documents constitute an infinitesimal fraction of the total number of documents Citigroup has produced to the Bond Plaintiffs.  Specifically, as of the filing of this opposition, Citigroup has produced more than 25 million pages of documents to the Bond Plaintiffs.  (*See* Declaration of Brad S. Karp, dated June 6, 2011 ("Karp Decl."), at ¶ 2.)  With

---

[2]   18 U.S.C. § 641 provides for civil *and* criminal penalties for its violation, stating that persons who violate it "[s]hall be fined under this title or imprisoned not more than ten years, or both."

[3]   *See* Pl. Br. at 9 (conceding that "the privilege applies to only 'agency opinions and recommendations,' and a bank's response thereto")

respect to the time period specifically at issue—late 2008—Citigroup has produced over 30,000

documents, and expects to produce shortly an additional 11,000 documents.[4]  (*Id.*)

In connection with filing the Motion, the Bond Plaintiffs provided notice to the

Agencies of their efforts to obtain the Protected Documents.  The Agencies each responded in

writing, reiterating Citigroup's obligations under the Regulations.  (*See* Karp Decl. Ex. 2

(May 20, 2001 email from K. Wheatley, Associate General Counsel, Fed, to S. Singer, cc  B.

Karp) ("Citigroup is not permitted to produce confidential supervisory information absent

authorization from the Board." (citing 12 C.F.R. §§ 261.20(g), 261.23)); Ex. 3 (May 20, 2011

letter from D. Stipano, Deputy Chief Counsel, OCC, to S. Singer & B. Karp) ("Citigroup is

prohibited by 12 C.F.R. § 4.37(b)(1) from producing any non-public OCC information."); and

Ex. 4 (May 27, 2011 letter from B. Sarshik, Senior Counsel, FDIC, to B. Karp, cc S. Singer)

("Please be advised that all documents sent to or created by the FDIC in connection with bank

examination and supervision are exempt from disclosure by a third party holding them in the

absence of authorization by the FDIC pursuant to 12 C.F.R. Part 309.").)  The Agencies further

advised the Bond Plaintiffs that, in accordance with the Regulations, any request for access to the

Protected Documents must *first* be made directly to the Agencies.  (*See, e.g., id.* Ex. 2 ("[A]

party in litigation may request authorization for [the release of bank examination materials] by

---

[4]   In an apparent effort to impress upon the Court their need for immediate production—and their purported
inability to seek the Protected Documents first from the Agencies—the Bond Plaintiffs complain that Citigroup
has been delinquent in completing document discovery  (Pl Br  at 5-6.)  The Bond Plaintiffs grossly
mischaracterize the record  As the Bond Plaintiffs know, the parties have been engaged in a good faith process
of meeting and conferring regarding the parties' respective discovery demands, and Citigroup has been making
a rolling production of responsive documents, as delineated by the meet-and-confer process, for months  As the
February 18, 2011 deadline for substantial completion of document discovery approached, and as Citigroup
anticipated that it would need additional time to complete document discovery, Citigroup advised the Bond
Plaintiffs in writing  (*See* Karp Decl. Ex  1.)  The Bond Plaintiffs did not complain at that time  Nor could they
have done so, because as of February 18, 2011, Citigroup had produced nearly 12 million pages of documents
By contrast, the Bond Plaintiffs had produced a mere 4,000 pages  The Bond Plaintiffs' complaints about
discovery delay have not been interposed in good faith

filing a written request with the Board's general counsel. . . . Such a request is required in order to exhaust a party's administrative remedies. . . .").)

On May 24, 2011, eleven days after filing the Motion, the Bond Plaintiffs sent requests to the OCC and the Fed, pursuant to the Regulations, for access to the Protected Documents; they sent a similar request to the FDIC on May 27, 2011. (*See id.* Exs. 5-6 (together, the "May Requests").) In the May Requests, the Bond Plaintiffs demanded that, if the OCC, the Fed and the FDIC intended to oppose the Motion, they do so by June 6, 2011. (*Id.*) In response, on May 27, 2011, the OCC requested that Citigroup provide the OCC with copies of the Protected Documents and explained that it would not be able to complete its review by June 13, 2011, the date when the Motion will be fully submitted. (*See id.* Exs. 7-8.) Likewise, on June 2, 2011, the FDIC made a similar request of Citigroup, also noting that its review would not be complete by June 13, 2011. (*See id.* Exs. 9-10.) Citigroup sent each of the OCC, Fed and FDIC copies of the Protected Documents pertaining to that agency on June 2, 2011. (*See id.* Exs. 11-13.) The OCC also requested that Citigroup provide a written response to the Bond Plaintiffs' attempted showing of its purported need for the Protected Documents, which Citigroup will provide shortly. (*See id.* Ex. 8.)

## ARGUMENT

**I.**   **BECAUSE THE BOND PLAINTIFFS HAVE REFUSED TO EXHAUST THEIR ADMINISTRATIVE REMEDIES, THE MOTION TO COMPEL SHOULD BE DENIED**

The Regulations set forth specific procedures pursuant to which third parties, such as the Bond Plaintiffs, can petition for a waiver of the prohibition against disclosure of bank examination material. *See* 12 C.F.R. §§ 261.22, 309.6(b)(6), 4.32–34. The Bond Plaintiffs have flouted these regulations. Perhaps in an effort to mask their failure to comply with proper

procedure, the Bond Plaintiffs do not even address the "exhaustion" requirement until page 23 of their 25-page Motion, and then only by mentioning in a footnote that "some district courts outside the Southern District of New York have ordered parties seeking such information to first request it [the information] from regulators " (Pl Br at 24 n 5 )

The Bond Plaintiffs' reading of governing law is misleading  virtually every court to have considered the issue has expressly held that civil litigants seeking access to material protected from disclosure by the Regulations must first petition the Agencies and exhaust their administrative remedies [5]  The Bond Plaintiffs do not dispute that they have failed

---

[5]    *See  e g ,  Sterling Nat l Bank of Davie* v  *Camp*, 307 F  Supp  778, 781 (D D C  1970) ("'[T]he Court will be constrained to sign an order quashing subpoena No  114-69 unless prior thereto the plaintiff indicates by an affidavit filed herein that it has complied with the requirement set forth in 12 C F R  § 419 of filing with the Comptroller an affidavit setting forth the interest of the litigant and the testimony and documents desired"), *Hill* v  *Commerce Bancorp  Inc* , 2010 WL 1239568, at *1 (D N J  Mar  23, 2010) (ordering plaintiff to submit its request for OCC documents first to the OCC, in lieu of compelling production of document from defendant bank), *In re Countrywide Fin  Corp  Sec  Litig* , 2009 WL 5125089, at *2 (C D  Cal  Dec  28, 2009) ("The Court holds that Plaintiffs must first exhaust all administrative procedures and submit requests to use the documents in this litigation to the FRB and OCC, pursuant to federal regulations"), *Bay Bank* v  *f/v ORDER OF MAGNITUDE*, 2007 WL 737344, at *1 (W D  Wash  Mar  7, 2007) ("When the FDIC promulgates a regulation setting forth the procedure to be followed when a person seeks disclosure of the examination reports, the party seeking disclosure may obtain it, if at all, only after following the prescribed procedure"), *F D I C* v  *Flagship Auto Ctr  Inc* , 2005 WL 1140678, at *6 (N D  Ohio May 13, 2005) ("Defendants have failed to demonstrate that they made an administrative request to the Board for documents that are the subject of the subpoena"), *Union Planters Bank  N A* v  *Cont l Cas  Co* , 2003 WL 23142200, at *2 (W D  Tenn  Nov  26, 2003) ("This court    concludes that the parties must first submit a formal request to the OCC to use the information in the Pre-Exit Meeting document "), *United States* v  *Amico*, 2003 WL 1145426, at *1 (W D N Y  Jan  3, 2003) (ordering party seeking discovery to "exhaust his administrative remedies with the Office of the Currency of the Comptroller [sic] prior to the issuance of any further subpoena"), *Raffa* v  *Wachovia Corp* , 242 F  Supp  2d 1223, 1225 (M D  Fla  2002) ("A determination of discoverability is premature pending a determination by the OCC whether they will release the information through the established administrative process "), *Am  Sav  Bank* v  *PaineWebber  Inc* , 210 F R D  721, 723 (D  Haw  2001) (ordering the plaintiffs "to submit their requests for disclosure of unpublished OTS information to OTS pursuant to the procedure set forth in section 510 5(c)" and holding that only if the OTS "does not authorize disclosure of certain unpublished OTS information in the possession of the parties that are relevant to the litigation, then the parties can seek the appropriate relief from this Court regarding document production"), *Bancorp* v  *F D I C* , 1999 WL 1332312, at *4 (D N J  Nov  10, 1999) ("Requiring Bancorp to comply with OCC's administrative guidelines would not impose a significant burden on Bancorp  Accordingly, Bancorp should comply with OCC's *Touhy* regulations and submit an administrative request for the White deposition "), *Frick* v  *Austin Bank  N A* , 1999 U S  Dist LEXIS 11493, at *3 (E D  Tex  June 25, 1999) ("Plaintiffs are required to request non-public OCC documents through the administrative procedure outlined in 12 C F R  § 4 33(3) "), *Nat l Union Fire Ins  Co of Pittsburgh Pa* v  *Midland Bancor  Inc* , 159 F R D  562, 572 (D  Kan  1994) ("The court, therefore, overrules the present motion to compel to the extent it seeks information exempted from disclosure by 12 C F R  Parts 261 and 309 for the failure of plaintiff to complete procedures set forth therein for obtaining such information "), *Rayman* v  *Am  Charter Fed Sav  & Loan Ass n*, 148 F R D  647, 661-62 (D  Neb  1993) ("The regulation itself provides

to exhaust their administrative remedies.  As such, the Bond Plaintiffs' motion is premature and should be denied on this ground alone.

Notwithstanding the overwhelming weight of authority squarely rejecting their position, the Bond Plaintiffs misleadingly assert that the requirement that they exhaust administrative remedies before seeking relief from this Court "has been repeatedly rejected" (Pl Br. at 23), citing in support of this assertion six decisions—the Sixth Circuit's decision in *In re Bankers Trust Co.*, 61 F.3d 465 (6th Cir 1995), and five additional district court rulings that rely on *Bankers Trust*.  The Bond Plaintiffs grossly mischaracterize *Bankers Trust* and its progeny. Far from supporting the Bond Plaintiffs' position, these cases stand squarely for the opposite proposition—namely, that the Agencies in the first instance must be provided the opportunity to assert the privilege that belongs to them.

Specifically, in *Bankers Trust*, the Sixth Circuit addressed whether regulations promulgated by the Fed that provide an absolute bar against disclosure of bank examination material prohibit federal district courts from ordering the production of such materials pursuant to Federal Rule of Civil Procedure 34 and related discovery rules.  After determining that the federal regulations at issue conflict with Rule 34, the Sixth Circuit held that federal courts have

---

plaintiffs recourse in this matter  12 C.F.R §§ 505 and 510 allow individuals to request these documents directly from OTS.  Obviously, that route, rather than an order of this court, is the proper path for plaintiffs to follow in gaining access to the documents they seek "); *In re Atl Fin Sec Litig* , 1992 WL 50074, at *4 (E.D Pa. Mar. 3, 1992) ("While the plaintiff may not compel Atlantic to produce protected materials, plaintiffs may seek access to these documents from OTS "), *In re One Bancorp Sec Litig* , 134 F.R.D  4, 9 & n 4 (D Me 1991) (denying motion to compel FDIC documents from defendant bank and noting that "[p]laintiffs sought unsuccessfully to obtain those documents from the FDIC directly  Plaintiffs are free to pursue those documents, in an appropriate forum, from the FDIC"), *Interstate Prod Credit Ass'n v  Fireman's Fund Ins  Co* , 128 F.R.D 273, 276 (D  Or. 1989) ("if the [Farm Credit Administration] refuses to produce the information after completion of this [request] process, [then] the litigant may move to compel production by the [Farm Credit Administration]"), *Colonial Sav  & Loan Ass'n v  St Paul Fire & Mar Ins  Co* , 89 F.R.D  481, 484 (D  Kan 1980) ("The Court finds the procedure prescribed by the Board has not been followed by St  Paul and it is unnecessary for the Court to pursue a balancing test to determine if the information sought is confidential or privileged and whether or not such information should be disclosed  Such determination will be made when production is sought from the [Federal Home Loan Bank Board] "); *Denny v  Carey*, 78 F R.D  370, 372 (E D

the power to order production of bank examination materials, *but only in the event certain conditions have been met* See Bankers Trust, 61 F 3d at 469-71   The Sixth Circuit expressly recognized that the Federal Rules of Civil Procedure do not permit discovery of *privileged* materials, *see id* at 471, and expressly affirmed the existence of the bank examination privilege, which the Sixth Circuit held exists "to preserve candor in communications between bankers and examiners, which those parties consider essential to the effective supervision of banking institutions " *Id* at 472   The Sixth Circuit described the privilege as "grounded in practical necessity" and "designed to promote the effective functioning of an agency by allowing the agency and the regulated banks the opportunity to be forthright in all communications " *Id*   The Sixth Circuit set forth general factors that courts should consider in balancing the "competing interests of the party seeking the documents and those of the government " *Id* at 472

Disappointingly, the Bond Plaintiffs cropped the Sixth Circuit's ruling in *Bankers Trust*   in granting the bank's mandamus petition and remanding the matter to the district court for further proceedings, the Sixth Circuit expressly ordered that the district court "provide the Federal Reserve with notice and allow the Federal Reserve the opportunity to intervene" so that it could be heard in the first instance   *Id* at 472   In fact, in four of the additional five cases cited by the Bond Plaintiffs in support of their position that they are free to bypass the Agencies, the relevant Agency in fact had appeared before the district court to be heard in the first instance in connection with the discovery application at issue   *See Forstmann Leff Assocs , Inc* v *Am Brands, Inc* , 1991 WL 168002 (S D N Y Aug 16, 1991) (considering petition filed by the Office of Thrift Supervision ("OTS")—the agency asserting the privilege—for a protective order regarding the production of bank examination material), *In re Wash Mut , Inc* , Case No 2 08-

---

Pa 1978) (holding that "[w]hen a party seeking discovery from [federal agencies] has not complied with the regulations [for requesting documents], a motion for discovery of such material must be denied")

md-1919 MJP, slip op., February 2, 2010 (considering application filed by the OTS and the OCC

for a protective order precluding production of bank examination materials); *In re Vescio*, 205

B.R. 37 (D. Vt. 1997) (remanding matter to bankruptcy court to permit the Federal Reserve the

opportunity to assert the bank examination privilege); *Seafirst Corp.* v. *Jenkins*, 644 F. Supp.

1160 (W.D. Wash. 1986) (considering opposition of OCC to a motion to compel bank

examination materials).

   In the last decision cited by the Bond Plaintiffs, *Dimon Int'l, Inc.* v. *Arab Am.*

*Bank*, 1995 U.S. Dist. LEXIS 18839 (E.D.N.C. Dec. 6, 1995), the district court expressly *denied*

plaintiff's motion to compel precisely *because* the Fed was not first provided notice of the

motion and an opportunity to be heard before plaintiff sought relief—a holding the Bond

Plaintiffs attempt to obscure by citing *Dimon* solely for the proposition that the Federal Rules of

Civil Procedure, under certain circumstances, may trump federal regulations that establish an

absolute bar to the production of certain bank examination materials. (*See* Pl. Br. at 24.)

   Accordingly, in each of these cases, contrary to the Bond Plaintiffs'

representations to this Court, the relevant federal agency was first permitted an opportunity to be

heard with respect to the discovery dispute at issue, thereby reaffirming the exhaustion

requirement. And for good reason: the bank examination privilege belongs to the Agencies, not

to banks like Citigroup and certainly not to plaintiffs' lawyers.

   The Bond Plaintiffs conspicuously have failed to cite a single decision from any

court in the country in which a federal district judge ordered the production of bank examination

material where, as here, the relevant federal agency has not first been afforded the opportunity to

be heard. In fact, the Sixth Circuit in *Bankers Trust* actually granted the bank's mandamus

petition to remedy the egregious circumstance where a federal district judge directed that the

bank produce materials protected by the bank examination privilege without first permitting the bank regulator to be heard on the issue. *Bankers Trust*, 61 F.3d at 472.

Not only have the Bond Plaintiffs failed to point to a single precedent supporting their position, but they also have failed to identify any reason why this Court should be the first to establish such a precedent. In fact, the Bond Plaintiffs have failed to advance any explanation for their failure, prior to filing the instant motion, first to seek relief from the Agencies and to allow the regulatory process to be completed. Nor is there any explanation: fact discovery is ongoing in this matter, and is not scheduled to close until the end of 2011. The Bond Plaintiffs have yet to take a single deposition. Moreover, once depositions begin, the Bond Plaintiffs can notice depositions from dozens of witnesses who did not receive the Protected Documents so as to avoid encroaching on the issue until after the Bond Plaintiffs have exhausted their administrative remedies. There is no reason why the Bond Plaintiffs cannot comply with the Regulations and the unbroken line of judicial authority within and outside this District and first seek relief from the Agencies.

The fact that the Bond Plaintiffs purported to reach out to the Agencies and seek such relief *after* filing the Motion only underscores their procedural error. Specifically, as described above, the Bond Plaintiffs (apparently recognizing the impropriety of their Motion) requested access to the bank examination materials at issue directly from the OCC, FDIC and the Fed pursuant to their May Requests. (*See* Karp Decl. Exs. 5 and 6.) The Bond Plaintiffs sent the May Requests only after the Agencies, in response to being provided notice of the pending Motion, expressly requested the opportunity to review the documents withheld by Citigroup prior to making a determination whether to permit disclosure. (*See id.* Exs. 2-3 (May 20, 2011 email from Fed and May 20, 2011 letter from OCC).) Indeed, upon receiving notice of the Bond

13

Plaintiffs' Motion, the Fed, the OCC and the FDIC each specifically noted that the Bond

Plaintiffs are required, under the Regulations, first to seek relief from the Agencies:

> "Courts routinely refuse to consider motions to compel disclosure
> of confidential supervisory information prior to such exhaustion."
> (Karp Decl. Ex. 2 at 2 (May 20, 2011 email from K. Wheatley,
> Associate General Counsel, Fed, to S. Singer, cc B. Karp).)

> "The OCC's regulation requires exhaustion prior to federal court
> review." (Karp Decl. Ex. 3 at 2 (May 20, 2011 letter from D.
> Stipano, Deputy Chief Counsel, OCC, to S. Singer & B. Karp).)

> "Parties, such as the bondholders, who seek disclosure of FDIC
> records must first follow procedures set forth in Part 309. Once
> the FDIC receives an appropriate request under Part 309 for the
> records sought, the FDIC can process it as expeditiously as
> possible." (Karp Decl. Ex. 4 at 2 (May 27, 2011 letter from B.
> Sarshik, Senior Counsel, FDIC, to B. Karp.)

The Agencies responded immediately upon receipt of the Bond Plaintiffs' May

Requests. Specifically, the OCC and the FDIC acknowledged receipt of the May Requests on

May 27 and June 2, 2011, respectively, and promptly requested copies of Citigroup's privilege

log and the documents at issue. (Karp Decl. Exs. 8 & 10.) In response, Citigroup sent copies of

the Protected Documents to the Agencies on June 2, 2011. (*Id.* Exs. 11-13.) There is no reason

to expect that complying with the Regulations and permitting the Agencies adequate time to

review the Protected Documents and respond to the Bond Plaintiffs' demands will pose any

appreciable delay in the progress of this litigation, and certainly not delay sufficient to justify

dispensing with the rule of law.

For all these reasons, the Bond Plaintiffs' Motion is premature, because the Bond

Plaintiffs' have failed to exhaust their administrative remedies. Citigroup respectfully requests

that this Court allow the Agencies to complete their review of the Protected Documents and

respond to the Bond Plaintiffs' application prior to ruling on the pending Motion.

## II.   THE PROTECTED DOCUMENTS ARE COVERED
##        BY THE BANK EXAMINATION PRIVILEGE

The Bond Plaintiffs demand that this Court order Citigroup immediately to produce the Protected Documents based on the Bond Plaintiffs' transparently self-interested assurance to this Court that the Protected Documents are not covered by the bank examination privilege. The Bond Plaintiffs' assurance concededly is not based on their (or the Agencies' or this Court's) actual review of the Protected Documents, but instead is based on their purported interpretation of the descriptions of the Protected Documents provided on Citigroup's privilege log. The Bond Plaintiffs cite no case law in support of such an unprincipled approach and, disappointingly, ignore the ample case law that squarely rejects their suggested approach.

As the D.C. Circuit observed in *Schreiber* v. *Soc'y for Sav. Bancorp, Inc.*, 11 F.3d 217 (D.C. Cir. 1993), a case upon which the Bond Plaintiffs heavily rely for other propositions (*see* Pl. Br. at 2, 3, 9, 14, 19, 23):

> With regard, however, to the remaining documents—bank examination reports and Bancorp's responses both to those reports and to other agency inquiries during the relevant period—we cannot evaluate the district court's adoption of the banking agencies' claims of privilege in absence of factual findings. *Unless we are to examine those documents* in camera *ourselves, we cannot say anything about their factual content. Indeed, we find it difficult to understand how the district court thought it could do so.*

*Id.* at 221 (emphasis added). The Court further deemed that "courts commonly do examine such documents *in camera* before determining whether they fall within the claimed privilege." *Id.* In fact, district courts around the country routinely review *in camera* any documents withheld as protected by the bank examination privilege prior to ordering production.[6]

---

[6] *See, e.g., Forstmann Leff*, 1991 WL 168002, at *1 ("To determine whether the privilege was properly asserted, the Court ordered [the party asserting the privilege] to submit the requested documents to the Court for an *in camera* inspection "), *see also In re Subpoena*, 967 F.2d at 634 (court's determination of bank examination privilege "will frequently require it to examine the disputed documents *in camera*"), *Lawrence E. Jaffe Pension*

Consistent with this unbroken line of authority, Citigroup respectfully requests that, following the conclusion of the Agencies' review of the Protected Documents, this Court evaluate the Bond Plaintiffs' demand for the production of any documents over which the Agencies continue to assert the privilege *only after* it conducts an *in camera* inspection of each putatively privileged document at issue.  At the appropriate time, and as requested by the Court, Citigroup will provide a detailed explication of the reasons why each of the Protected Documents was appropriately withheld.

At this time, in response to the Bond Plaintiffs' broad-brush assertions, Citigroup offers the following general observations:

### A.      Documents That Reflect Analysis Are Deliberative Material Protected by the Privilege

The Bond Plaintiffs argue that a number of the documents withheld by Citigroup contain only factual material and therefore are not privileged.  In reaching this conclusion, the Bond Plaintiffs purport to rely on their highly selective and transparently self-interested reading of Citigroup's privilege log.  (Pl. Br. at 15-18.)  For example, the Bond Plaintiffs represent that Documents 151 and 152 on the log reflect "factual information that cannot be shielded from disclosure by the bank examination privilege."  (*Id.* at 16.)  Citigroup's privilege log, however, clearly states that Document 151 relates to a "follow-up discussion" with the OCC regarding TARP, while Document 152 is described as providing "analysis" in response to a Fed request. As Citigroup's privilege log makes clear, Citigroup provided the requested data and analysis

---

*Plan* v. *Household Int'l, Inc.*, 239 F.R.D. 508, 515 (N.D. Ill  2006) (to determine applicability of bank examination privilege, court "conducted an *in camera* review of each [party's] documents"); *In re Providian Fin  Corp  Sec  Litig* , 222 F.R.D. 22, 26 (D.D.C. 2004) (court's determination of privilege made after "*in camera* review" of the documents); *Merchants Bank* v. *Vescio*, 205 B.R  37, 42-43 (D  Vt. 1997) (ordering bankruptcy court to conduct an *in camera* review of documents to determine if bank examination privilege applies); *Fairfield* v  *Houston Bus  Journal, Inc* , 1993 WL 742740, at *1 (S.D. Tex. Sept. 8, 1993) (application of bank examination privilege determined after "careful consideration of the applicable case law … and an *in camera* review of the documents").

16

reflected in Documents 151 and 152 to the Agencies as part of the Agencies' deliberative review of Citigroup's business activity.  Accordingly, these and all similar documents are privileged. *See In re Subpoena*, 967 F.2d at 634.[7]

The Bond Plaintiffs also argue that Citigroup is attempting improperly to "cloak" many of the withheld documents in the bank examination privilege even though the documents at issue were merely forwarded to the Agencies.  (Pl. Br. at 15-17.)  Again, the Bond Plaintiffs reach this conclusion based solely on their transparently self-interested reading of Citigroup's privilege log.  For example, while the Bond Plaintiffs describe Documents 133 through 140 as mere responses to "requests for information from the Federal Reserve regarding Citigroup's '3Q08 CDO exposure'" (Pl. Br. at 15), Citigroup's privilege log makes clear that these documents reflect the Fed's "[r]equest for *analysis*" and Citigroup's "provi[sion of] *analysis*" to the Fed regarding its CDO exposure.  (Pl. Br., Browne Decl. Ex. A at 7 (emphases added)).  Again, these descriptions, fairly read, confirm that these documents do not merely transmit facts, but reflect critical consideration of agency views, *i.e.*, deliberation.  These and all similar documents were properly withheld as privileged.

### B.  Internal Communications That Reflect Confidential Bank Examination Information Are Privileged

The Bond Plaintiffs next argue that documents reflecting "internal discussions" regarding Citigroup's communications with the Agencies are exempt from the privilege, even if those communications reflect the Agencies' deliberative review of Citigroup's business activities.  (Pl. Br. at 10-15.)  The Bond Plaintiffs are wrong:  the Regulations do not distinguish

---

With respect to all of these documents, the Bond Plaintiffs set up and knock down a straw man, arguing that if these documents are in any way factual, then they must not be privileged.  (Pl. Br. at 10-20.)  But, not surprisingly, even documents with a significant factual component routinely have been held by federal courts to be privileged where the factual component and deliberative component were so "demonstrably intertwined" as to be inseparable.  *In re Bank One Sec. Litig.*, *First Chicago S'holder Claims*, 209 F.R.D. 418, 427 (N.D. Ill. 2002).

between communications *with* regulators and documents *about* such communications.  For

example, the OCC regulations define "non-public OCC information"—which Citigroup is

prohibited from disclosing—to include "[c]onfidential OCC information obtained by a third

party *or otherwise incorporated in the records of a third party*[.]"  12 C.F.R.

§ 4.32(b)(1)(iv) (emphasis added).  *See also* 12 C.F.R. § 261.14(a)(8) (bank examination

material prohibited from disclosure includes "[a]ny matter that is contained in *or related to*

examination, operating, or condition reports prepared by, on behalf of, or for the use of an

agency responsible for the regulation or supervision of financial institutions, including a state

financial institution supervisory agency" (emphasis added)); 12 C.F.R. § 309.5(g)(8) ("Records

that are contained in *or related to* examination, operating, or condition reports prepared by, on

behalf of, or for the use of the FDIC or any agency responsible for the regulation or supervision

of financial institutions." (emphasis added)).  Thus, where, as here, Citigroup's internal

communications reflect or contain deliberative agency opinions or other information, the bank

examination privilege protects those communications from disclosure, regardless of whether the

underlying communication actually is shared with the Agencies.[8]

### C.    Citigroup's Responses to OCC Supervisory Letters Are Privileged

Finally, the Bond Plaintiffs argue that Citigroup's responses to two OCC

supervisory letters, dated February 14 and November 4, 2008, are not protected by the privilege

because "[t]here can be no dispute that documents describing the findings of an agency's

examination of a bank's financial condition and risk management, as the OCC's supervisory

---

[8]    *See, e.g., Linde* v  *Arab Bank, PLC*, 2009 WL 3055282, at *2 (E D N Y  Sept  21, 2009) (denying request to compel a witness to answer certain questions because "[t]he plaintiffs are not entitled to know . . the content of any of the requests—written or oral—made by the OCC in the course of their review of the defendant's operations")  In this regard, it is noteworthy that the one court to have held that internal communications regarding agency opinions were not protected by the bank examination privilege did so two years *before* the OCC amended its regulations in 1995 to use the language quoted above in defining non-public OCC information  *Feinberg* v. *Hibernia Corp* , 1993 WL 8620, at *6 (E D  La  Jan  6, 1993)

letters do, are factual and outside the scope of the privilege." (Pl. Br. at 19.) The Bond Plaintiffs again are just wrong. In fact, numerous courts have expressly held that agency supervisory letters and examination reports *are* subject to the bank examination privilege because they reflect agency opinions and deliberative processes. *See Forstmann Leff*, 1991 WL 168002, at *2 ("Federal regulations establish that all bank examination reports and internal agency memoranda are the exclusive property of the OTS. Thus, insured savings and loan associations in possession of regulatory documents are prohibited from disclosing such information unless authorized by the OTS" (citation omitted)); *see also In re Providian*, 222 F.R.D. at 26 n.2 (bank examination privilege "extends both to bank examination reports and opinions and to an examinee's responses thereto"); *Feinberg* v. *Hibernia Corp.*, 1992 WL 54738, at *6 (E.D. La. Mar. 9, 1992) (same); *In re Atl. Fin. Fed. Sec. Litig.*, 1992 WL 50074, at *7 n.7 ("It is plain that the *Forstmann Leff* court considered the Report of Examination as well as supervisory correspondence and internal memoranda prepared by the savings and loan association to be within the boundaries of those documents protected against disclosure"). The supervisory letters and Citigroup's responses to those letters are core bank examination materials and are protected from disclosure.[9]

## III.   THE BOND PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN OF DEMONSTRATING WHY THE PRIVILEGE SHOULD NOT BE RESPECTED HERE

The bank examination privilege may be overcome only if the party seeking access to the protected materials can meet its burden of establishing that its interest in production

---

[9]  In support of their effort to obtain Citigroup's response to the OCC's February 14, 2008 supervisory letter, the Bond Plaintiffs note that the Financial Crisis Inquiry Commission ("FCIC") publicly released the OCC's letter in connection with publication of its report (*See* Pl Br at 19.) This fact does not support the Bond Plaintiffs' cause First, the FCIC's publication of that letter, without the express permission of the OCC, itself constitutes an unlawful violation of 12 C.F.R. § 4.37 Moreover, Citigroup's response to the OCC reflects deliberative material that is entitled to protection even if the original communication prompting the response is publicly available. Notably, the Bond Plaintiffs cite no authority to suggest that the public release of one communication operates as a waiver of the bank examination privilege with respect to other related communications

outweighs the Agencies' interest in nondisclosure. *See Bankers Trust*, 61 F.3d at 471-72 ("In this inquiry, the court must balance the "competing interests" of the party seeking the documents and those of the government."). Courts making this inquiry weigh the competing interests by applying the following five factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." *Id.* at 472 (*citing Schreiber*, 11 F.3d at 220). Because the Bond Plaintiffs have failed to demonstrate that their need for the Protected Documents outweighs the Agencies' strong interest against disclosure, their Motion should be denied.

   As an initial matter, the Bond Plaintiffs' Motion must be considered in context: as noted, Citigroup already has produced over *25 million pages* of documents to the Bond Plaintiffs. (See Karp Decl. ¶ 2.) Specifically regarding the events of late 2008—the time period covered by all but one of the Protected Documents—Citigroup already has produced over 30,000 documents and shortly will produce an additional 11,000. (*Id.*) Against this mammoth production, at issue are only 251 documents Citigroup has withheld as protected by the bank examination privilege. Citigroup thus has provided the Bond Plaintiffs with the underlying factual information they have requested that is relevant to their claims, a factor that weighs heavily against ordering production of the privileged materials.

   Nonetheless, the Bond Plaintiffs demand immediate production of the Protected Documents on the ground that the "discovery sought is highly relevant" and "uniquely important" because "there are no available substitutes." (Pl. Br. at 21-22.) Their conclusory assurances notwithstanding, the Bond Plaintiffs are wrong. As the Court is aware, the Bond

Plaintiffs' claims relate to whether, over an extended time period, Citigroup accurately disclosed its exposure to subprime-related assets, its loan-loss reserves and its capital adequacy.[10]  The accuracy of Citigroup's public disclosures related to each of these areas is best evaluated through discovery of underlying factual information regarding Citigroup's subprime exposures, loan-loss reserves and capital status during the relevant period.  To this end, Citigroup has produced literally millions of pages of documents related to these subjects—documents that more than adequately provide the Bond Plaintiffs with the information they need to pursue their claims exhaustively.  For example, Citigroup has produced, among other data:

- Thousands of emails sent and received by Citigroup's structured credit desk professionals, the group responsible for structuring and managing Citigroup's CDO exposures.  (Karp Decl. ¶ 2.)

- Spreadsheets reflecting detailed information on troubled assets held by Citigroup, including descriptions of specific assets to be included in the TARP ring-fence.  (Karp Decl. Exs. 14-16 (IN_RE_CITI 21075987, 21076090, 21082402).)

- Daily Liquidity Summaries reflecting detailed assessments of Citigroup's capital adequacy and available cash, all of which were provided to Citigroup's regulators.  (Karp Decl. Exs. 17-18 (IN_RE_CITI 21137486, 10190365).)

- Asset and Liability Committee presentations concerning various Citigroup business units, reflecting detailed charts and analyses of Citigroup's and the business units' assets and liabilities, funding, liquidity and outlook.  (Karp Decl. Exs. 19-20 (IN_RE_CITI 21085559, 21085607).)

- Board of Directors presentations reflecting capital forecasts, liquidity ratios, funding projections and deposit trends.  (Karp Decl. Exs. 21-24 (IN_RE_CITI 21139876, 21140079, 21148918, 21070600).)

- Ratings agency presentations reflecting discussions of financial performance, asset quality and credit risk, balance and liquidity management.  (Karp Decl. Ex. 25 (IN_RE_CITI 21131086).)

---

[10]   The Bond Plaintiffs themselves assert that they are entitled to discovery of the Protected Documents because they relate to "Citigroup's CDO exposure, the value of its CDO securities, its loss reserves, and its capital adequacy and solvency[.]"  (Pl. Br. at 21.)

- A Stress Test Report presentation containing detailed results of market factor, subprime scenario, global and regional stress tests. (Karp Decl. Ex. 26 (IN_RE_CITI 21139117).)

And there are thousands of additional such examples.

These documents, along with the other 30,000-plus documents from the late-2008 time period, and the more than 25 million pages of documents produced by Citigroup concerning the Bond Plaintiffs' claims in this litigation, contain detailed information about Citigroup's assessment of its CDO assets and exposure, Citigroup's income and cost projections, and Citigroup's capitalization. In other words, the Bond Plaintiffs already have exhaustive access to the very information they are seeking to obtain through this Motion. Because the Bond Plaintiffs cannot demonstrate any actual (non-cumulative) need for any of these documents, this Court should not override the bank examination privilege. *See In re Bank One Sec. Litig.*, 209 F.R.D. at 427 (refusing to override bank examination privilege and order production of documents withheld under the bank examination privilege where facts underlying the documents were available from other sources to party seeking production); *Shirk* v. *Fifth Third Bancorp*, 2008 WL 2661955, at *3 (S.D. Ohio July 2, 2008) (same).

In fact, the Bond Plaintiffs cannot articulate any reason why they need access to the Agencies' deliberative processes or the Agencies' opinions related to the factual information already in their possession because those deliberations and opinions lend no support to the Bond Plaintiffs' claims. Simply stated, the Agencies' opinions regarding Citigroup's CDO exposure, loan-loss reserves and capital adequacy do not constitute *evidence* regarding whether Citigroup's public disclosures concerning those matters were accurate during the class period.

Indeed, the Bond Plaintiffs' assertion that they need access to the Protected Documents because they "'provide a unique and objective contemporaneous chronicle' of Citigroup's near-collapse" (Pl. Br. at 22), is telling: the Bond Plaintiffs ostensibly want access to

22

the Protected Documents precisely because they want access to the Agencies' *opinions* regarding

Citigroup's financial condition during the recent financial crisis, not the underlying facts (to

which they already have access).  But this is precisely the sort of information that lies at the heart

of what the bank examination privilege is designed to protect.  And the need to protect this

information—to facilitate open and frank communications between banks and their regulators—

could not be more evident than during the period covered by the Protected Documents.  As

noted, all but one of the Protected Documents dates to late 2008, a time of unprecedented crisis

for the financial industry and the economy as a whole.  Just last week, in upholding the Fed's

refusal to produce confidential bank examination material provided to it by Bear Stearns in

connection with the 2008 financial crisis, the D.C. Circuit observed:

> [I]nformation collected by the Board and Reserve Banks from
> supervised institutions could harm those institutions if disclosed to
> the public.  For that reason, supervised institutions rely on bank
> supervisors to protect the confidentiality of information obtained
> through the supervisory process and are willing to provide this
> information because they know that the supervisors will maintain
> its confidentiality. ... If supervised institutions no longer believe
> the Board could or would maintain the confidentiality of
> information it collected through the supervisory process, they
> would be less willing to provide the Board with the information it
> needs to assure a robust supervisory process.

*McKinley*, 2011 WL 2162896, at *8 (citations and internal quotation marks omitted); *see also In*

*re Subpoena*, 967 F.2d at 633.

      The *McKinley* decision makes clear that the principles underpinning the bank

examination privilege—encouraging open and frank communication between banks and their

regulators—apply with the greatest force during a time of crisis.  *McKinley*, 2011 WL 2162896,

at *6 (noting that the Fed was "reacting to what it believed to be an emergency" in its

supervision of Bear Stearns in March 2008).  This Court, we respectfully submit, should deny the

Bond Plaintiffs' Motion to ensure that, during the next financial crisis, banks and their regulators will maintain an open and frank dialogue, confident that their communications will be protected from discovery in the inevitable wave of litigation that follows every such crisis.

## CONCLUSION

For the foregoing reasons, Citigroup respectfully requests that the Bond Plaintiffs' motion to compel be denied.

Date:   New York, New York
        June 6, 2011

Respectfully submitted,

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By: /s Brad S. Karp_____

Brad S. Karp (bkarp@paulweiss.com)
Richard A. Rosen (rrosen@paulweiss.com)
Charles E. Davidow (cdavidow@paulweiss.com)
Susanna M. Buergel (sbuergel@paulweiss.com)

1285 Avenue of the Americas
New York, New York 10019-6064
Tel. (212) 373-3000

*Attorneys for Defendants Citigroup Inc., Citigroup Funding Inc., Citigroup Capital XIV, Citigroup Capital XV, Citigroup Capital XVI, Citigroup Capital XVII, Citigroup Capital XVIII, Citigroup Capital XIX, Citigroup Capital XX, Citigroup Capital XXI, C. Michael Armstrong, Alain J.P. Belda, Sir Winfried Bischoff, Michael Conway, Gary Crittenden, George David, Kenneth T. Derr, John M. Deutch, Scott Freidenrich, James Garnett, John C. Gerspach, Ann Dibble Jordan, Klaus Kleinfeld, Sallie L. Krawcheck, Andrew N. Liveris, Dudley C. Mecum, Anne Mulcahy, Vikram Pandit, Richard D. Parsons, Charles Prince, Roberto Hernández Ramirez, Judith Rodin, Saul Rosen, Robert E. Rubin, Robert L. Ryan, Franklin A. Thomas, Eric L. Wentzel and David Winkler*