UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN RE CITIGROUP INC. BOND
LITIGATION

Master File No. 08 Civ. 9522 (SHS)

ECF Case

**MEMORANDUM OF LAW OF *AMICUS CURIAE* THE CLEARING HOUSE
ASSOCIATION L.L.C. IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL
THE PRODUCTION OF DOCUMENTS WITHHELD PURSUANT TO
THE BANK EXAMINATION PRIVILEGE WITHOUT REVIEW OR EVALUATION
BY THE BANK REGULATORS WHO HOLD THE PRIVILEGE**

Paul Saltzman
Joseph R. Alexander
THE CLEARING HOUSE ASSOCIATION
L.L.C.
450 West 33rd Street
New York, NY 10001
(212) 613-0100
Joe.Alexander@theclearinghouse.org

H. Rodgin Cohen
Michael M. Wiseman
Sharon L. Nelles
Jessica M. Klein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000
NellesS@sullcrom.com

*Counsel for The Clearing House Association L.L.C.*

June 9, 2011

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....... 1

STATEMENT OF INTEREST OF *AMICUS CURIAE* ....... 2

BACKGROUND ....... 3

ARGUMENT ....... 7

I. THE REGULATORY FRAMEWORK REQUIRING EXHAUSTION OF ADMINISTRATIVE REMEDIES IS CRUCIAL TO THE SUPERVISORY RELATIONSHIP ....... 7

II. THE COURT SHOULD REJECT ANY PRESUMPTION THAT THE PRIVILEGE HAS BEEN WAIVED BY UNAUTHORIZED DISCLOSURE. ....... 10

CONCLUSION ....... 14

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Am. Sav. Bank* v. *UBS Painewebber, Inc.*,
210 F.R.D. 721 (D. Haw. 2001) ........ 5-6

*Bank of China* v. *St. Paul Mercury Ins. Co.*,
No. 03 Civ. 9797(RWS), 2004 WL 2624673 (S.D.N.Y. Nov. 18, 2004) ........ 3-4

*Dep't of Interior* v. *Klamath Water Users Protective Ass'n*,
532 U.S. 1 (2001) ........ 7

*Dipace* v. *Goord*,
218 F.R.D. 399 (S.D.N.Y. 2003) ........ 12

*Forstmann Leff Assocs., Inc.* v. *Am. Brands, Inc.*,
No. 88 Civ. 4485(JMC), 1991 WL 168002 (S.D.N.Y. Aug. 16, 1991) ........ 9

*Golden Pac. Bancorp* v. *FDIC*,
No. 99-3799, 1999 U.S. Dist. LEXIS 20303 (D.N.J. Nov. 9, 1999) ........ 10

*In re Bank One Sec. Litig.*,
209 F.R.D. 418 (N.D. Ill. 2002) ........ 8

*In re Bankers Trust Co.*,
61 F.3d 465 (6th Cir. 1995) ........ 5, 9

*In re Subpoena Served upon Comptroller of Currency*,
967 F.2d 630 (D.C. Cir. 1992) ........ 3, 4

*Linde* v. *Arab Bank, PLC*,
No. CV-04-2799 (NG)(VVP), 2009 WL 3055282 (E.D.N.Y. Sept. 21, 2009) ........ 3

*McKinley* v. *Bd. of Governors of the Fed. Reserve Sys.*,
No. 10-5353, slip. op. (D.C. Cir. June 3, 2011) ........ 4, 7-8

*Merchants Bank* v. *Vescio*,
205 B.R. 37 (D.Vt. 1997) ........ 4, 9

*Overby* v. *United States Fid. & Guar. Co.*,
224 F.2d 158 (5th Cir. 1955) ........ 5

*Sackman* v. *Liggett Group, Inc.*,
173 F.R.D. 358 (E.D.N.Y. 1997) ........ 12

**TABLE OF AUTHORITIES**
*(continued)*

**Page(s)**

*Seafirst Corp.* v. *Jenkins*,
644 F. Supp. 1160 (W.D. Wash. 1986) ....................9

*Shirk* v. *Fifth Third Bancorp*,
No. 1:05-cv-049, 2008 WL 2661955 (S.D. Ohio July 2, 2008) ....................8

*Smith* v. *Armour Pharm. Co.*,
838 F. Supp. 1573 (S.D. Fla. 1993) ....................12

*United States* v. *Amico*,
No. 00-CR-6155, 2003 WL 1145426 (W.D.N.Y. Jan. 3, 2003) ....................8

*United States ex rel. Touhy* v. *Ragen*,
340 U.S. 462 (1951) ....................10

*Weil* v. *Long Island Sav. Bank*,
195 F. Supp. 2d 383 (E.D.N.Y. 2001) ....................7

**STATUTES, REGULATIONS AND RULES**

12 C.F.R. § 4.31-40....................5

12 C.F.R. § 4.32(b)(1)(i)....................4

12 C.F.R. § 4.35....................5

12 C.F.R. § 4.36(d) ....................13

12 C.F.R. § 4.37....................4

12 C.F.R. § 4.37(b)(1)(ii)....................5

12 C.F.R. § 261.14(a)(8)....................4

12 C.F.R. § 261.20(g). ....................13

12 C.F.R. § 261.20-23....................5

12 C.F.R. § 261.22. ....................5

12 C.F.R. § 261.23. ....................5

12 C.F.R. pt. 309....................5

**TABLE OF AUTHORITIES**
*(continued)*

12 C.F.R. § 309.5(g)(8)....................................................................................................4

12 C.F.R. § 309.6(a)....................................................................................................5, 13

12 C.F.R. § 309.6(b) ....................................................................................................5

H. Rep. 89-1407, reprinted in 2 1966 U.S.C.C.A.N. 2418 ........................................... 4-5

Pub. L. No. 111-21, 123 Stat. 1617 § 5(d)(4)(A).......................................................11, 12

## PRELIMINARY STATEMENT

The Clearing House Association L.L.C. ("The Clearing House") is an association of leading commercial banks which, through an affiliate, provides payment, clearing and settlement services to its member banks and other financial institutions.[1] The Clearing House is dedicated to protecting and promoting the interests of its members and the commercial banking industry, as well as the stability of the financial system. Accordingly, The Clearing House often presents the views of its members on important public policy issues affecting the commercial banking industry by, among other things, appearing as *amicus curiae* in federal and state courts in cases raising significant questions of banking law. The Clearing House respectfully requests that this Court consider this memorandum of law addressing significant legal issues that have been raised by plaintiffs' Motion To Compel Production of Documents Withheld by the Citigroup Defendants Based on the Bank Examination Privilege.

As courts have recognized time and again, the effective regulation of banks is highly dependent on open and frank channels of communication between banks and bank regulators throughout the supervision and examination process. The bank examination privilege gives protection to those communications, encouraging the candid flow of information that is crucial to maintaining the integrity of a supervisory process where examiners work intensively and iteratively with banks. The bank examination privilege belongs exclusively to the bank

---

1 Established in 1853, The Clearing House is the nation's oldest banking association and payments company. It is owned by the world's largest commercial banks, which collectively employ 1.4 million people in the United States and hold more than half of all U.S. deposits. The Clearing House is a nonpartisan advocacy organization representing—through regulatory comment letters, amicus briefs, and white papers—the interests of its owner banks on a variety of systemically important banking issues. Its affiliate, The Clearing House Payments Company L.L.C., provides payment, clearing, and settlement services to its member banks and other financial institutions, clearing almost $2 trillion daily and representing nearly half of the automated-clearing-house, funds-transfer, and check-image payments made in the United States. *See generally* www.theclearinghouse.org.

regulator, and only the regulator may assert or waive it.  Both the sanctity of the privilege and the protections accorded to all interested parties are embodied in detailed regulations that establish an administrative process for agency review and consideration where a request is made by outside parties for materials that may be subject to the privilege.

Nonetheless, in the instant litigation, plaintiffs ask this Court to compel defendant Citigroup to produce all documents that it has withheld pursuant to the bank examination privilege—without any administrative review whatsoever.  Plaintiffs make this motion even while acknowledging that the privilege "belongs to the federal banking authorities."  (Bond Plaintiffs' Memorandum of Law in Support of Their Motion to Compel Production of Documents Withheld by the Citigroup Defendants Based on the Bank Examination Privilege ("Pls. Mem.") at 2, 6.)  In so doing, plaintiffs ask this Court not only to disregard the privilege itself, but to eviscerate the regulatory process that has been crafted to ensure that the banking agencies—those most knowledgeable of the context and import of each supervisory communication—have the opportunity to assert the privilege that only they hold.

What plaintiffs seek here is unprecedented.  No court has ever granted the relief that plaintiffs seek:  avoiding not only the administrative process, but depriving the regulators of a meaningful opportunity to be heard regarding the privilege they hold.  The clear weight of judicial precedent and the logic of an effective supervisory system for such a vital part of the economy counsel that private litigants seeking to discover bank examination material follow the agency regulations requiring them to exhaust their administrative remedies before turning to the courts for relief.  This Court should decline plaintiffs' request to end-run this process.

## STATEMENT OF INTEREST OF *AMICUS CURIAE*

The Clearing House members are subject to a comprehensive and rigorous supervisory program administered by multiple government banking regulators, including the

Office of the Comptroller of the Currency (the "OCC"), the Board of Governors of the Federal Reserve System (the "FRB"), and the Federal Deposit Insurance Corporation (the "FDIC"). Clearing House members continuously communicate with these bank regulators as part of the ongoing and deliberative dialogue that is a cornerstone of the regulatory system. That dialogue takes place with, and because of, the understanding that the communications are privileged. The Clearing House and its members have a substantial interest in ensuring that regulatory materials that are drafted and exchanged as part of this supervisory relationship are not released unless regulators first have a meaningful opportunity to assert their privilege.

## BACKGROUND

### 1. The Bank Examination Privilege

The bank examination privilege is "firmly rooted in practical necessity" because of the special, "extensive and informal" supervisory relationship between banks and their regulators. *In re Subpoena Served upon Comptroller of Currency* ("*In re Subpoena*"), 967 F.2d 630, 633-34 (D.C. Cir. 1992) ("It is extensive in that bank examiners concern themselves with all manner of a bank's affairs: Not only the classification of assets and the review of financial transactions, but . . . even the quality of managerial personnel are of concern to the examiners. . . . [It] is informal in the sense that it calls for adjustment, not adjudication."). The privilege "protects communications between banks and their examiners in order to preserve absolute candor essential to the effective supervision of banks." *Linde* v. *Arab Bank, PLC*, No. CV-04-2799 (NG)(VVP), 2009 WL 3055282, at *1 (E.D.N.Y. Sept. 21, 2009); *see also In re Subpoena*, 967 F.2d at 634. In this way, the privilege promotes "the integrity" of the bank regulatory process. *Bank of China* v. *St. Paul Mercury Ins. Co.*, No. 03 Civ. 9797(RWS), 2004 WL 2624673, at *4 (S.D.N.Y. Nov. 18, 2004) (bank examination privilege "arises out of the practical need for openness and honesty between bank examiners and the banks they regulate, and is

intended to protect the integrity of the regulatory process by privileging such communications" (quoting *Merchants Bank* v. *Vescio*, 205 B.R. 37, 42 (D.Vt. 1997))). As the D.C. Circuit has explained:

> Bank safety and soundness supervision is an iterative process of comment by the regulators and response by the bank. The success of the supervision therefore depends vitally upon the quality of communication between the regulated banking firm and the bank regulatory agency.

*In re Subpoena*, 967 F.2d at 633. The open and frank nature of regulatory communications would be sacrificed if these communications were not afforded protection. *Id.* at 634.

The bank examination privilege is not limited to the bank examination report itself but extends to deliberative materials, such as opinions, recommendations, and responses. *Id*. For example, OCC regulations shield from disclosure materials "concerning supervision, licensing, regulation, and examination of a national bank, a bank holding company, or an affiliate," 12 C.F.R. §§ 4.32(b)(1)(i), 4.37, and the regulations of the FRB bar from release "[a]ny matter that is contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions," 12 C.F.R. § 261.14(a)(8); *see also* 12 C.F.R. § 309.5(g)(8) (similar provision of the FDIC). Clearing House members routinely exchange such materials with their bank regulators with the expectation that they will be held under the strictest confidentiality. *See McKinley* v. *Bd. of Governors of the Fed. Reserve Sys.*, No. 10-5353, slip. op. at 16 (D.C. Cir. June 3, 2011) ("Supervised institutions rely on bank supervisors to protect the confidentiality obtained through the supervisory process and are willing to provide this information because they know that the supervisors will maintain its confidentiality.").[2]

---

[2] Congress too has recognized, in crafting exceptions to the Freedom of Information Act, the importance of "insur[ing] the security and integrity of financial institutions, for the sensitive details

**2. Administrative Process for Disclosure of Privileged Materials**

The bank examination privilege belongs solely to the bank regulator, and only the regulator may assert or waive it. *See, e.g., In re Bankers Trust Co.*, 61 F.3d 465, 471-72 (6th Cir. 1995); *Overby* v. *United States Fid. & Guar. Co*., 224 F.2d 158, 163 (5th Cir. 1955). The privilege does not belong to banks. When Clearing House member banks receive demands for potentially privileged examination material from private litigants, the banks cannot produce such material. Instead, where materials that may be subject to the bank examination privilege are demanded, the banks must withhold the materials subject to the review of the relevant bank regulator. *See* 12 C.F.R. § 4.37(b)(1)(ii) (noting that "[a]ny person who discloses or uses non-public OCC information . . . may be subject to" criminal and civil penalties); 12 C.F.R. § 261.23 (FRB); 12 C.F.R. § 309.6(a) (FDIC).

Each of the federal banking agencies has promulgated detailed regulations that govern the availability of non-public bank examination information. 12 C.F.R. § 4.31-40 (OCC); 12 C.F.R. § 261.20-23 (FRB); 12 C.F.R. pt. 309 (FDIC). These regulations provide an administrative process whereby demands that such materials be made available are to be considered. The relevant regulator will evaluate any written request and determine whether the materials are subject to release or whether to assert the privilege. *See* 12 C.F.R. § 4.35 (OCC); 12 C.F.R. § 261.22 (FRB); 12 C.F.R. § 309.6(b) (FDIC).

In the event an agency denies a request for disclosure of privileged materials, the requesting party then may seek review from the courts. *See, e.g.*, *Am. Sav. Bank* v. *UBS Painewebber, Inc.*, 210 F.R.D. 721, 723 (D. Haw. 2001) (the courts are available to review an

---

collected by Government agencies which regulate these institutions could, if indiscriminately disclosed, cause great harm." H. Rep. 89-1407, at 11, reprinted in 2 1966 U.S.C.C.AN. 2418, 2428 (explaining purpose of 5 U.S.C. § 552(b)(8) exception for bank supervisory documents).

agency's refusal to disclose privileged banking material). In at least 18 cases, federal district courts have found that this regulatory review process is a prerequisite to any court order making available non-public bank examination materials. (*See* Citigroup's Memorandum of Law in Opposition to the Bond Plaintiffs' Motion To Compel Production of Documents Withheld Pursuant to the Bank Examination Privilege ("Citigroup Mem.") pp. 9-11 n.5 (citing cases requiring litigants first to petition the relevant agency and exhaust their administrative remedies).) Every court that has addressed this issue has either (1) required—as the vast majority of courts have—that the administrative process be exhausted, or (2) at the very least, granted the regulator, as sole holder of the privilege, a meaningful opportunity to be heard before determining whether to release privileged materials. (*See discussion infra* at pp. 8-9.)

**3. Plaintiffs' Motion To Compel**

Plaintiffs here move the Court to compel production—without any prior administrative review—of 251 documents withheld by Citigroup on the basis of the bank examination privilege. Plaintiffs' motion raises two critical issues for the banking community. *First*, it challenges the role of the bank regulators generally, as consistently upheld by the courts, in reviewing requests to abrogate their privilege by disclosing privileged supervisory communications. *Second*, it challenges the role of the bank regulators specifically in protecting certain confidential supervisory material that plaintiffs presume is available to them because that material was made "publicly available" by the Financial Crisis Inquiry Commission ("FCIC") (Pls. Mem. at 19), even though the disclosure took place in violation of a statutory requirement that the FCIC maintain confidential information "in a secure manner."

The Clearing House respectfully submits that it is the role and entitlement of regulators to review supervisory materials, and that exhaustion of the regulatory process,

combined with the courts' review of any agency determination, best protects the flow of communication that is essential to maintaining an effective bank supervisory regime.

## ARGUMENT

### I. THE REGULATORY FRAMEWORK REQUIRING EXHAUSTION OF ADMINISTRATIVE REMEDIES IS CRUCIAL TO THE SUPERVISORY RELATIONSHIP.

Bank regulators' review of requests for bank examination materials is critical to the effective regulation of the nation's financial system. Indeed, this administrative process "embodies the bank examination privilege." *Weil* v. *Long Island Sav. Bank*, 195 F. Supp. 2d 383, 387 (E.D.N.Y. 2001). Administrative review ensures that the agency most knowledgeable about the communications at issue, and with the greatest expertise on the consequences of disclosure, makes the initial determination concerning each specific communication. The ebb and flow of supervisory communications between a bank and its regulator, involving often daily communications—some written, some verbal—about issues that develop over months or years, provide a necessary context for these determinations. Absent this context, it is difficult if not impossible to evaluate whether the privilege should attach to any individual document.

The administrative review process ensures that even the most delicate information is fully shared in bank-regulator communications. This necessary level of candor could not exist if frankness were likely to serve as fodder for civil litigation. *Cf. Dep't of Interior* v. *Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8-9 (2001) ("[O]fficials will not communicate candidly among themselves if each remark is a potential item of discovery and front page news."). The subversion of the administrative process governing disclosure would remove this element of trust from the supervisory relationship in ways that could alter the soundness of the banking system. *See McKinley*, No. 10-5353, slip. op. at 16-17 (regulators rely "on the willingness of supervised institutions to provide full information in order to assume a robust

supervisory environment. If supervised institutions no longer believe the [regulator] could or would maintain the confidentiality of information it collects through the supervisory process, they would be less willing to provide the [regulator] with the information it needs to assure a robust supervisory environment.”). Divesting regulators of their ability to evaluate and vigorously assert their privilege risks undermining the supervisory relationship and creating the type of “chilling effect” on bank-regulator communications which the bank examination privilege has long sought to prevent. *See, e.g.*, *Shirk* v. *Fifth Third Bancorp*, No. 1:05-cv-049, 2008 WL 2661955, at *3 (S.D. Ohio July 2, 2008) (addressing the real possibility of a “chilling effect” and refusing to override valid assertion of privilege); *In re Bank One Sec. Litig.*, 209 F.R.D. 418, 427-428 (N.D. Ill. 2002) (forcing government employees to disclose confidential opinions will have the probable result of making them unwilling to record the “full breadth of their opinions”).

The vast majority of courts that have considered whether private litigants seeking potentially privileged bank examination materials must exhaust these administrative remedies have found that they must do so. Federal district courts in many jurisdictions, including this Circuit, have denied attempts to obtain information exempted from disclosure by agency regulations where plaintiffs have failed to exhaust their administrative remedies. *See*, *e.g.*, *United States* v. *Amico*, No. 00-CR-6155, 2003 WL 1145426, at *1 (W.D.N.Y. Jan. 3, 2003); *see also cases cited in* Citigroup Mem. pp. 9-11 n.5 (citing 18 cases requiring litigants to first petition the relevant agency and exhaust their administrative remedies). In so requiring, these courts have uniformly recognized the important role of the administrative process in maintaining the bank examination privilege.

Plaintiffs point to the minority of courts that do not require exhaustion of administrative remedies before resort to judicial process, in particular the Sixth Circuit's decision in *In re Bankers Trust Company*, 61 F.3d 465 (6th Cir. 1995). (Pls. Mem. pp. 23-24.) In *Bankers Trust*, the Sixth Circuit held that agency regulations, including the exhaustion requirement, could not provide an *absolut*e bar to disclosure of bank examination materials. 61 F.3d at 470. In remanding to the district court to consider the assertion of the privilege, however, the Sixth Circuit expressly recognized the regulator's fundamental role as sole holder of the privilege, ordering that the regulator be given notice and the opportunity to intervene: "The bank examination privilege belongs to the Federal Reserve, and therefore, where a claim of the privilege is appropriate, the Federal Reserve must be allowed the opportunity to assert the privilege and the opportunity to defend its assertion." *Id*. at 472. Indeed, each of the few courts that has permitted litigants to proceed without exhausting their administrative remedies likewise has considered a request for privileged materials only after the relevant regulator has first been given a meaningful opportunity to assert its privilege.[3]

Plaintiffs ask this Court to do what no court has ever done: compel a supervised institution to turn over potentially privileged bank examination materials without any input from the regulator that holds the privilege. This Court should decline to do so.

The better course is that followed by the great majority of courts: plaintiffs should be required to first exhaust their administrative remedies. Such approach is consistent with the vast majority of judicial authority, including the United States Supreme Court, which has upheld the use of administrative agency regulations to prevent disclosure of confidential

---

3 *See Forstmann Leff Assocs., Inc.* v. *Am. Brands, Inc.*, No. 88 Civ. 4485(JMC), 1991 WL 168002 (S.D.N.Y. Aug. 16, 1991) (considering request for protective order filed by the OTS); *Vescio*, 205 B.R. at 43 (remanding to permit regulator the opportunity to assert its privilege); *Seafirst Corp.* v. *Jenkins*, 644 F. Supp. 1160 (W.D. Wash. 1986) (considering the OCC's opposition to subpoena served on the OCC).

information. *U.S. ex rel. Touhy* v. *Ragen*, 340 U.S. 462 (1951) (holding that FBI agent could not be held in contempt for refusing to obey subpoena duces tecum when the Attorney General, acting pursuant to federal regulations governing the release of official documents, ordered him not to comply).[4]

## II. THE COURT SHOULD REJECT ANY PRESUMPTION THAT THE PRIVILEGE HAS BEEN WAIVED BY UNAUTHORIZED DISCLOSURE.

Plaintiffs' Motion to Compel makes plain that plaintiffs presume that one bank examination document released by the FCIC, a commission established by Congress in 2009 to undertake an inquiry into the causes of the financial crisis, is *per se* available to them to use in this litigation because the FCIC made the document "publicly available." (Pls. Mem. at 19.) That document, a February 14, 2008 supervisory letter issued by the OCC to Citigroup (the "Supervisory Letter"), was provided to the FCIC by the OCC on a confidential basis. (*See* Browne Decl., Docket No. 88, Ex. F (Supervisory Letter marked on its face as "Confidential & Non-public OCC Information").) Plaintiffs seek both to utilize the Supervisory Letter and to compel production of Citigroup's responses to the Supervisory Letter. (Pls. Mem. at 3, 19-20.) The FCIC's improper release of supervisory material, however, should not create an end-run around the critical regulatory process that protects bank examination material, nor should it waive the OCC's privilege over supervisory documents responding to, or concerning the same subject as, those released by the FCIC.[5]

---

[4] The administrative process is further justified because plaintiffs suffer little or no harm by following it. *See*, *e.g.*, *Golden Pac. Bancorp* v. *FDIC*, No. 99-3799, 1999 U.S. Dist. LEXIS 20303, at *11 (D.N.J. Nov. 9, 1999) ("Requiring Bancorp to comply with OCC's administrative guidelines would not impose a significant burden.").

[5] The concern about the release by the FCIC is aggravated because an FCIC commissioner and a prominent member of the Commission staff were, both prior to and immediately after the FCIC's existence, associated with one of the major law firms suing banks and seeking to rely on these documents. Paul Sperry, *House Investigates Trial Lawyers Who Ran Crisis Probe*, Investor's Business Daily, April

Over the course of the FCIC's inquiry, it reviewed millions of pages of documents collected from banking institutions and federal agencies. (Financial Crisis Inquiry Commission Releases Additional Material and Concludes Work, Feb. 10, 2011 ("FCIC press release") at 2.) Some of these documents included bank examination materials, which were provided to the FCIC bearing confidentiality legends and subject to the federal regulatory restrictions on their release. The banking agencies and individual banks had every reason to anticipate that these agreements and regulations would be honored because under the FCIC's authorizing statute, the FCIC was required to "maintain in a secure manner" confidential information obtained from government agencies. Fraud Enforcement and Recovery Act of 2009, Pub. L. No. 111-21, 123 Stat. 1617 § 5(d)(4)(A). As the time came for the FCIC to issue its report and terminate its activities, majority members announced their intent to release on a searchable website "an unprecedented amount of information" compiled by the Commission. (FCIC press release at 1.) As review of that website makes clear, the materials released by the FCIC include hundreds of pages of core supervisory documents, including bank examination reports, supervisory letters and memoranda authored by the OCC, the FRB, and the FDIC. There are also dozens of e-mails containing supervisory information, including the ratings—and rationale for rating downgrades—that regulators gave to many banks.

There is no evidence that any regulator authorized the FCIC to release its protected supervisory materials. Indeed, in the instant action, the OCC has taken the position expressly that "even the materials made available to the [FCIC] for its use may contain the opinions and recommendations of examiners . . . for which the OCC has not waived any

---

11, 2011. The House Committee on Oversight and Government Reform is currently investigating the FCIC's relationship to the plaintiffs' bar. *Id*; Sewell Chan and Eric Dash, *Internal Dissent and Staff Losses May Hurt Financial Crisis Panel*, NY Times, Sept. 1, 2010.

applicable privilege or its right to control, or impose limitations on, the subsequent use and dissemination of the information." (Karp Decl., Docket No. 90, Ex. 3 at 2.) Actions taken without assent from the agencies cannot and do not eviscerate the bank examination privilege, which remains with the agency that holds it: The bank examination privilege cannot be waived "unless that disclosure was authorized by the government [regulator] and voluntary." *Dipace* v. *Goord*, 218 F.R.D. 399, 406 (S.D.N.Y. 2003) (upholding invocation of deliberative process privilege); *cf. Sackman* v. *Liggett Group, Inc.*, 173 F.R.D. 358, 365 (E.D.N.Y. 1997) (attorney-client privilege "is not waived through public disclosure of a stolen privileged document."). "To hold that public circulation eliminates the privilege would, in effect, give *any* individual who secured a privileged document the power to waive the . . . privilege by simply having the contents widely recounted in newspaper reports." *Smith* v. *Armour Pharm. Co.*, 838 F. Supp. 1573, 1577 (S.D. Fla. 1993) (upholding attorney-client privilege) (emphasis in original).

Because the privilege may only be waived by the bank regulator, the regulatory process for seeking utilization must be followed for the Supervisory Letter and any other materials released by the FCIC without regulator consent. Moreover, there is plainly no waiver as to the unreleased responses of Citigroup to the Supervisory Letter. Plaintiffs must submit to the regulatory process for seeking these materials, and the improper release of a related document does not provide a waiver as to these documents or their subject matter.

Nor does it matter that the material released by the FCIC was originally obtained in a legal manner or that the release was effectuated by a Congressional commission, because the FCIC acted outside the scope of its authority when it chose to disseminate privileged bank examination communications instead of maintaining them "in a secure manner." *See* 123 Stat. 1617 § 5(d)(4)(A). When the FCIC released bank examination materials plainly identified as

confidential and proprietary, without regard for the required administrative process, it exceeded its defined powers and violated agency regulations. Each of the agencies prohibits, by its regulations, the unauthorized disclosure of non-public information belonging to the banking agency by *anyone*, even Congressional commissions.[6] Because the FCIC's public dissemination of privileged documents without the consent of regulators cannot be construed as waiving regulators' supervisory privilege, consequently, it cannot be a vehicle for private litigants to override regulators' valid invocation of the supervisory privilege.

In short, it cannot be the case that a public disclosure by the FCIC that is unauthorized by the bank regulators and in violation of the FCIC's statutory mandate to maintain such documents securely, alters a fundamental supervisory rule. If a non-party who obtains access to confidential communications could cause their protections to vanish by unilaterally deciding to publish those communications, then a non-party could effectively overrule bank regulators and bypass banking regulations at will. There should be little doubt such a result would create a "chilling effect" on the open flow of information that characterizes bank-regulator communications and would risk destabilizing that critical relationship.

[6] *See* 12 C.F.R. §§ 4.36(d) (OCC); 261.20(g) (FRB); 309.6(a) (FDIC). (*E.g.*, OCC regulations state that "[n]o supervised entity, government agency, person, or other party to whom the information is made available . . . may disclose non-public OCC information without the prior written permission of the OCC . . . .")

## CONCLUSION

For the reasons stated, The Clearing House respectfully urges the Court to require plaintiffs to exhaust their administrative remedies with the appropriate agencies, pursuant to those agencies' statutory regulations, with respect to discovery of bank examination materials, including any bank examination materials released by the FCIC, before seeking intervention from the Court.

Dated: June 9, 2011
New York, New York

Respectfully submitted,

/s/ Sharon L. Nelles
H. Rodgin Cohen
Michael M. Wiseman
Sharon L. Nelles
Jessica M. Klein
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004-2498
(212) 558-4000
NellesS@sullcrom.com

*Counsel for The Clearing House Association L.L.C.*

Paul Saltzman
Joseph R. Alexander
THE CLEARING HOUSE ASSOCIATION L.L.C.
450 West 33rd Street
New York, NY 10001
(212) 613-0100
Joe.Alexander@theclearinghouse.org