**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE CITIGROUP INC. BOND LITIGATION | Master File No. 08 Civ. 9522 (SHS) |
| | ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF**
**BOND PLAINTIFFS' MOTION FOR (I) PRELIMINARY APPROVAL OF**
**SETTLEMENT, (II) CERTIFICATION OF THE BOND CLASS FOR PURPOSES**
**OF SETTLEMENT AND (III) APPROVAL OF NOTICE TO THE BOND CLASS**

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
Max W. Berger
Steven B. Singer
John C. Browne
John Rizio-Hamilton
1285 Avenue of the Americas
New York, NY 10019
Tel: (212) 554-1400
Fax: (212) 554-1444

*Attorneys for Bond Plaintiffs and*
*Court-appointed Bond Counsel*

Additional counsel listed on signature block

Dated:  March 18, 2013

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................................... iii

I.      INTRODUCTION ............................................................................................ 1

II.     DESCRIPTION OF THE LITIGATION ......................................................... 5

III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ............... 11

        A.      The Settlement Is The Result Of Good Faith, Arm's-Length
                Negotiations By Well-Informed And Experienced Counsel ................. 12

        B.      The Substantial Benefits For The Bond Class, Weighed Against
                Litigation Risks, Strongly Support Preliminary Approval .................... 13

        C.      The Stage Of The Proceedings Supports Preliminary Approval .......... 15

IV.     THE BOND CLASS SHOULD BE CERTIFIED FOR SETTLEMENT PURPOSES ..... 16

        A.      The Bond Class Satisfies The Requirements Of Rule 23(a) ................. 17

                1.      The Bond Class Members Are Too Numerous To Be
                        Joined ................................................................................... 17

                2.      There Are Common Questions Of Law And Fact ................... 18

                3.      Bond Plaintiffs' Claims Are Typical Of The Bond Class......... 19

                4.      Bond Plaintiffs Will Fairly And Adequately Protect The
                        Interests Of The Bond Class ................................................. 20

        B.      The Bond Class Satisfies The Requirements Of Rule 23(b)(3)............. 21

                1.      Common Legal And Factual Questions Predominate............... 21

                2.      A Class Action Is Superior To Other Methods Of
                        Adjudication........................................................................... 22

V.      NOTICE TO THE BOND CLASS SHOULD BE APPROVED...................... 23

VI.     PROPOSED SCHEDULE ............................................................................. 24

VII.    CONCLUSION............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..............................................................................................17, 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
    222 F.3d 52 (2d Cir. 2000)........................................................................................20

*Banyai v. Mazur,*
    No. 00 Civ. 9806 (SHS), 2008 WL 4921351 (S.D.N.Y. Nov. 18, 2008) ................11

*In re Bear Stearns Cos., Inc. Sec. Litig.,*
    --- F. Supp. 2d ----, No. 08 MDL 1963, 2012 WL 5465381 (S.D.N.Y. Nov. 9, 2012) ...........12

*Central States Se. & Sw. Areas Health & Welfare Fund v.*
    *Merck-Medco Managed Care,*
    504 F.3d 229 (2d Cir. 2007)................................................................................18, 19

*In re Citigroup, Inc., Securities Litigation,*
    No. 07 Civ. 9901 (SHS) (S.D.N.Y Nov. 8, 2007) ......................................3, 5, 8, 10

*Consol. Rail Corp. v. Town of Hyde Park,*
    47 F.3d 473 (2d Cir. 1995)................................................................................17, 18

*Danieli v. Int'l Bus. Machines Corp.,*
    No. 08 CV 3688 (SHS), 2009 WL 6583144 (S.D.N.Y. Nov. 16, 2009) ................12

*In re Deutsche Telekom AG Sec. Litig.,*
    229 F. Supp. 2d 277 (S.D.N.Y. 2002) ........................................................19, 20, 22

*Dorn v. Eddington Sec., Inc.,*
    No 08 Civ. 10271 (LTS), 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011) ..................23

*Fait v. Regions Financial Corp.,*
    655 F.3d 105 (2d Cir. 2011).............................................................................. *passim*

*In re FLAG Telecom Holdings Ltd. Sec. Litig.,*
    No. 02-CV-3400, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010).............................12

*In re Giant Interactive Corp., Inc. Sec. Litig.,*
    279 F.R.D. 151 (S.D.N.Y. 2011) ............................................................................12

*In re Globalstar Sec. Litig.*,
   No. 01 Civ 1748 (PKC), 2004 WL 2754674 (S.D.N.Y. Dec. 1, 2004) ...................................18

*In re Initial Pub. Offering Sec. Litig.*,
   243 F.R.D. 79 (S.D.N.Y. 2007) ............................................................................................12

*In re Initial Public Offering Sec. Litig.*,
   226 F.R.D. 186 (S.D.N.Y. 2005) ..........................................................................................17

*In re Marsh & McLennan Cos. Sec. Litig.*,
   No. 04 Civ. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)......................... *passim*

*In re Monster Worldwide, Inc. Sec. Litig.*,
   251 F.R.D. 132 (S.D.N.Y. 2008) ..........................................................................................22

*In re NYSE Specialists Sec. Litig.*,
   260 F.R.D. 55 (S.D.N.Y. 2009) ............................................................................................18

*Pa. Ave. Funds v. Inyx Inc.*,
   No. 08 Civ. 6857 (PKC), 2011 WL 2732544 (S.D.N.Y. July 5, 2011) ...................................18

*In re PaineWebber Ltd. P'ships Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ....................................................................................13, 22

*In re Pfizer Inc. Sec. Litig.*,
   No. 04 Civ. 9866 (LTS)(HBP), 2012 WL 1059671 (S.D.N.Y. Mar. 29, 2012) .....................18

*In re Polaroid ERISA Litig.*,
   240 F.R.D. 65 (S.D.N.Y. 2006) ............................................................................................21

*In re Prudential Secs. Ltd. P'ships Litig.*,
   163 F.R.D. 200 (S.D.N.Y. 1995) ..........................................................................................17

*Robinson v. Metro-North Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001)..................................................................................................18

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) ....................................................................................19, 21

*In re Veeco Instruments, Inc. Sec. Litig.*,
   235 F.R.D. 220 (S.D.N.Y. 2006) ..........................................................................................22

*In re Veeco Instruments Inc. Sec. Litig.*,
   No. 05 MDL 01695, 2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) .........................................13

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007)............................................................................................21

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)................................................................11, 12, 23

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982)................................................................17

*In re WorldCom, Inc. Sec. Litig.*,
    219 F.R.D. 267 (S.D.N.Y. 2003)................................................19, 20, 22

STATUTES

15 U.S.C. § 77k(e) ................................................................................4, 14

15 U.S.C. §§ 77z-1(a)(7)................................................................................23

OTHER AUTHORITIES

Fed. R. Civ. P. 12(c) ................................................................................9, 15

Fed. R. Civ. P. 23(a) ................................................................................16, 17

Fed. R. Civ. P. 23(a)(1) ................................................................................17

Fed. R. Civ. P. 23(a)(2) ................................................................................18

Fed. R. Civ. P. 23(a)(3) ................................................................................19

Fed. R. Civ. P. 23(a)(4) ................................................................................20, 21

Fed. R. Civ. P. 23(b)(3)................................................................................16, 17, 21, 22

Fed. R. Civ. P. 23(e) ................................................................................11

v

Bond Plaintiffs, Louisiana Sheriffs' Pension and Relief Fund, Arkansas Teacher Retirement System, City of Tallahassee Retirement System, City of Philadelphia Board of Pensions and Retirement, Miami Beach Employees' Retirement Plan, Southeastern Pennsylvania Transportation Authority, American European Insurance Company, Phillip G. Ruffin and James M. Brown (collectively, "Bond Plaintiffs"), on behalf of themselves and the Bond Class (defined below), have reached a proposed settlement of the above-captioned securities class action lawsuit (the "Action" or "Bond Action") for a total of $730,000,000 in cash (the "Settlement").[1] Bond Plaintiffs respectfully move the Court for an order preliminarily approving the Settlement, certifying the Bond Class, and appointing Bond Plaintiffs as class representatives and Bond Counsel as class counsel for purposes of the Settlement, approving the form and manner of providing notice of the Settlement to the Bond Class, and setting a hearing at which the Court will consider final approval of the Settlement, approval of the proposed Plan of Allocation, and Bond Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses.

## I.     INTRODUCTION

Bond Plaintiffs have reached an agreement with Defendants to settle this Action in exchange for a $730 million cash payment to be made by Citigroup Inc. ("Citigroup").  By any measure, the proposed Settlement represents an outstanding result.  If approved by the Court, the Settlement will be the second largest recovery in a securities class action brought on behalf of purchasers of debt securities, as well as one of the three largest recoveries in a case that does not involve a financial restatement.  The settlement also ranks among the fifteen largest recoveries in any securities class action.

---

[1] All capitalized terms used herein that are not otherwise defined herein shall have the meanings provided in the Stipulation and Agreement of Settlement dated as of March 18, 2013 (the "Stipulation"), which is being filed concurrently herewith.

The substantial Settlement that has been achieved in this Action is the direct result of the significant efforts undertaken by Bond Plaintiffs and Bond Counsel to identify, preserve and vigorously prosecute the claims of Bond Class Members.  As discussed in more detail below, in September 2008, Bond Counsel recognized that, although purchasers of Citigroup's bonds and preferred securities potentially could assert under claims arising under the Securities Act of 1933 (the "Securities Act"), these claims had not been asserted by any other plaintiff.  Accordingly, in September and October 2008, Bond Counsel and certain of the Bond Plaintiffs filed two separate complaints in New York State Supreme Court asserting claims on behalf of (i) purchasers of Citigroup's bonds; and (ii) purchasers of Citigroup's preferred securities.  Those cases were subsequently removed to federal court and consolidated into this Action.  In sum, absent the efforts of Bond Counsel to identify and preserve the Securities Act claims of Bond Class Members, the Bond Class here would not have received any recovery for the losses they suffered on their investments in Citigroup's Bond Class Securities.

Moreover, over the course of four and one-half years of litigation, Bond Plaintiffs, through Bond Counsel, have undertaken significant efforts to prosecute this action.  Among other things, Bond Plaintiffs successfully opposed Defendants' motions to dismiss, reviewed more than forty million pages of documents, briefed class certification, and took or defended more than seventy depositions – including the depositions of senior current and former officers of Citigroup, such as Citigroup's Former Chief Executive Officer, Chuck Prince.  Significantly, the Settlement was reached after fact discovery was nearly complete, and only after protracted, arm's-length settlement negotiations, including negotiations facilitated by Judge Layn Phillips, a former federal District Court Judge in the United States District Court for the Western District of Oklahoma and an experienced and highly respected mediator.  As the Court is aware, Judge Phillips is fully

familiar with the facts of this Action, as he also served as the mediator in *In re Citigroup, Inc., Securities Litigation,* No. 07 Civ. 9901 (SHS) (the "Stock Action"), which asserts claims on behalf of investors in Citigroup's common stock.

The extremely significant benefit the proposed Settlement will provide to the Bond Class is particularly noteworthy when considered against the risks that the Bond Class might recover less (or nothing) if the Action were litigated through dispositive motions, trial, and any appeals that would likely follow, a process that could last many months, or even years. Indeed, as discussed in more detail below, Bond Plaintiffs faced substantial risks to establishing liability and damages in this Action. For example, although Bond Plaintiffs allege that Citigroup made numerous material misrepresentations in its publicly-filed financial statements and other documents, all Defendants vigorously dispute that they made any material misrepresentations or omissions in any of the Registration Statements at issue.

Moreover, while discovery was proceeding, the Second Circuit issued its opinion in *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011), which held that a significantly heightened standard of liability applied to Securities Act claims premised on misstatements of "opinion." *Id.* at 108. Defendants would have argued at summary judgment and at trial that the majority of Bond Plaintiffs' claims were based on alleged misstatements of "opinion," including critical claims relating to the valuation of Citigroup's Collateralized Debt Obligations ("CDOs"), Special Investment Vehicles ("SIVs"), and understatements of loan loss reserves. Accordingly, for the majority of Bond Plaintiffs' claims, Defendants would have argued that *Fait* required Bond Plaintiffs to establish not only that Defendants' statements on these subjects were untrue, but that in making the statements Defendants "misstated their truly held belief" – a standard that essentially requires proof of intentional deception.

3

Bond Plaintiffs also faced significant risks in establishing damages in this Action.  Under the Securities Act, if Defendants can demonstrate that the decline in the price of a security was caused by events unrelated to the alleged misrepresentations or omissions, then those declines cannot be recovered as damages.  15 U.S.C. § 77k(e).  Here, the largest declines in the prices of the Bond Class Securities occurred in late 2008 following the collapse of Lehman Brothers, Inc., American International Group, Inc., and several other large financial institutions.  Accordingly, Defendants argued that the securities of virtually every financial institution declined precipitously during this time period, and contended that the declines in Bond Class Securities were caused by these larger market-wide issues rather than any alleged misrepresentations or omissions in the Registration Statements.

The proposed Settlement, if approved, will enable the Bond Class to recover a very significant sum without incurring the risk that Defendants would prevail at summary judgment, trial, or in subsequent appeals.  At the final approval hearing (the "Settlement Hearing"), the Court will have before it more extensive motion papers submitted in support of the Settlement, and will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Action.  At this time, Bond Plaintiffs request only that the Court grant preliminary approval of the Settlement so that notice of the Settlement may be disseminated to the Class and the Settlement Hearing may be scheduled.

Bond Plaintiffs respectfully request that this Court enter the proposed Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order"), which has been agreed upon by the Parties, a copy of which is attached as Exhibit 1 to the accompanying Notice of Motion.  The Preliminary Approval Order will, among other things:  (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the Bond Class, appoint

Bond Plaintiffs as class representatives and Bond Counsel as class counsel, for purposes of the Settlement only;[2] (iii) approve the form and manner of giving notice to the Class; and (iv) set a date for the Settlement Hearing at which the Court will consider final approval of the Settlement, approval of the Plan of Allocation for distribution of the Net Settlement Fund and Bond Counsel's application for attorneys' fees and expenses.

## II.   DESCRIPTION OF THE LITIGATION

On August 19, 2008, the Court consolidated several securities class actions seeking recovery on behalf of investors in Citigroup common stock under the caption *In re Citigroup Inc. Securities Litigation,* No. 07 Civ. 9901 (SHS) (as defined above, the "Stock Action").  The Stock Action asserted claims arising solely under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934.  Notably, however, neither the Stock Action nor any other action asserted Securities Act or other claims on behalf of purchasers of Citigroup's bonds or preferred stock.

In order to preserve the Securities Act claims possessed by investors who purchased Citigroup bonds and preferred stock offered between May 2006 and August 2008, in September and October 2008, Bond Counsel, on behalf of certain of the Bond Plaintiffs, filed two separate complaints in New York State Supreme Court.  The Complaints asserted claims under Sections 11, 12(a)(2) and 15 of the Securities Act on behalf of investors in the Bond Class Securities.  In November 2008, these actions were removed to this Court and, pursuant to a Stipulation and Order entered on December 10, 2008 (the "Consolidation Order"), were consolidated and renamed *In re Citigroup Inc. Bond Litigation*, No. 08-cv-9522 (SHS).  The Order appointed Bernstein Litowitz

---

[2] For purposes of the Settlement, the Parties have stipulated to certification of the Action as a class action.

Berger & Grossmann LLP as Bond Counsel and the Court subsequently directed Bond Plaintiffs to file a consolidated complaint in the Bond Action.

On January 15, 2009, certain Bond Plaintiffs filed the Consolidated Amended Class Action Complaint (the "Complaint").   The Complaint alleges that Defendants made material misrepresentations and omissions in connection with 48 offerings of bonds and preferred securities conducted between May 2006 and August 2008 (the "Offerings").[3]  Specifically, the Complaint alleges that the Registration Statements for these Offerings contained misstatements or omissions of material facts relating to (a) Citigroup's exposure to approximately $66 billion of collateralized debt obligations ("CDOs") backed by subprime assets; (b) the value of Citigroup's CDO holdings; (c) Citigroup's exposure to, and valuation of, approximately $100 billion in structured investment vehicles ("SIVs"); (d) the loan loss reserves for Citigroup's portfolio of residential mortgage loans; (e) Citigroup's exposure to illiquid Auction Rate Securities; and (f) Citigroup's purportedly "well-capitalized" status.

The Complaint further alleges that investors in the Offerings did not learn the full truth about Citigroup's financial condition until November 2008, when the government extended $326

---

[3] "Defendants" are Citigroup; Citigroup Funding, Inc.; Citigroup Capital XIV, Citigroup Capital XV, Citigroup Capital XVI, Citigroup Capital XVII, Citigroup Capital XVIII, Citigroup Capital XIX, Citigroup Capital XX, and Citigroup Capital XXI; C. Michael Armstrong; Alan J.P. Belda; Sir Winfried Bischoff; Michael Conway; Gary Crittenden; George David; Kenneth T. Derr; John M. Deutch; Scott Freidenrich; James Garnett; John C. Gerspach; Ann Dibble Jordan; Klaus Kleinfeld; Sallie L. Krawcheck; Andrew N. Liveris; Dudley C. Mecum; Ann Mulcahy; Vikram Pandit; Richard D. Parsons; Charles Prince; Roberto Hernández Ramírez; Judith Rodin; Saul Rosen; Robert E. Rubin; Robert L. Ryan; Franklin A. Thomas; Eric L. Wentzel; and David Winkler (the "Individual Defendants"); and Banc of America Securities LLC; Barclays Capital Inc.; Citigroup Global Markets Inc.; Citigroup Global Markets Limited; Credit Suisse Securities (USA) LLC; Deutsche Bank Securities Inc.; Goldman, Sachs & Co.; Greenwich Capital Markets Inc. (n/k/a RBS Securities Inc.); JPMorgan Chase & Co.; Merrill Lynch, Pierce, Fenner & Smith Inc.; Morgan Stanley & Co. Inc.; UBS Securities LLC; and Wachovia Capital Securities, LLC (the "Underwriter Defendants").

billion in financial aid to Citigroup.   Based on these factual allegations, the Complaint asserts claims for violations of Section 11 of the Securities Act against the Citigroup Defendants, certain of the Individual Defendants, and the Underwriter Defendants; Section 12(a)(2) of the Securities Act against the Citigroup Defendants and the Underwriter Defendants; and Section 15 of the Securities Act against Citigroup and the Individual Defendants.

On March 13, 2009, all Defendants moved to dismiss the Complaint.   Defendants argued, among other things, that: (a) Bond Plaintiffs lacked standing to bring claims in connection with securities that they did not purchase; (b) Citigroup had no duty to disclose its CDO exposure; (c) Citigroup, in any event, had adequately disclosed its CDO exposure; and (d) none of Defendants' other alleged misstatements, including the Company's valuations of its CDOs, SIVs, and loan loss reserves, were inaccurate at the time they were made.   On April 24, 2009, Bond Plaintiffs filed their opposition papers and, on May 13, 2009, Defendants filed their reply papers.

On July 12, 2010, the Court issued a detailed Opinion and Order that granted in part, and denied in part, Defendants' motions to dismiss.   Specifically, the Court found that Bond Plaintiffs had standing to assert Section 11 and 15 claims on behalf of the class, and sustained those claims insofar as they alleged misstatements regarding (a) Citigroup's CDO holdings; (b) the credit quality and value of Citigroup's SIV holdings after those holdings were consolidated in December 2007; (c) Citigroup's loan loss reserves and; (d) Citigroup's purportedly "well capitalized" status. The Court granted Defendants' motions to dismiss with respect to Bond Plaintiffs' claims insofar as they involved misstatements regarding (a) Citigroup's exposure to its SIV holdings before the SIVs were consolidated in December 2007; and (b) Citigroup's exposure to Auction Rate Securities.

7

On July 26, 2010, Citigroup filed a motion seeking reconsideration of that portion of the Court's opinion holding that Bond Plaintiffs had standing to pursue Securities Act claims on behalf of all class members.  The motion for reconsideration was fully briefed on August 16, 2010.  On March 29, 2011, the Court issued an opinion and order denying the motion for reconsideration in its entirety.

Following the Court's opinion on Defendants' motions to dismiss, Bond Counsel immediately sought document discovery, obtaining and reviewing millions of pages of documents that had been produced to regulators, as well as millions of pages of documents that had not been previously produced to any other party.  As part of this effort, Bond Plaintiffs issued numerous document requests to Parties and non-parties, and engaged in multiple negotiations over the scope and adequacy of Defendants' discovery responses.  On November 9, 2010, the Court issued its opinion and order denying in part and granting in part Defendants' motion to dismiss the Complaint in the Citigroup Stock Action.  Bond Counsel promptly began to coordinate with Lead Plaintiffs in the Stock Action to ensure that discovery was conducted in the most efficient manner possible, to the benefit of the Court and all parties.

Beginning in 2010 and continuing through 2011, the Parties engaged in extensive discovery relating to class certification.  Defendants issued document requests and deposition notices to Bond Plaintiffs and more than 15 of their outside investment managers.  Between February 15, 2011 and May 2011, Bond Counsel produced tens of thousands of pages of documents on behalf of all Bond Plaintiffs and defended approximately 20 depositions of Bond Plaintiffs and their investment managers.  On March 11, 2011, Bond Plaintiffs filed a motion seeking certification of the class; appointment of Bond Plaintiffs as class representatives; and appointment of Bond Counsel as class counsel.  Defendants opposed the motion on May 13, 2011,

and Bond Plaintiffs filed reply papers in support of the motion on June 10, 2011.  The motion for class certification was pending at the time the Settlement was reached.

Throughout this time, Bond Plaintiffs were continuing to push forward with merits-related discovery.  As part of that effort, on May 13, 2011, Bond Plaintiffs moved to compel production of documents being withheld by Citigroup on the basis of a purported "bank examination" privilege.  On June 6, 2011, Citigroup filed an opposition to the motion to compel, and purported *amicus curiae* The Clearing House Association, L.L.C. also filed an opposition.  The Board of Governors of the Federal Reserve and the Federal Deposit Insurance Corporation were subsequently granted leave to intervene and ultimately filed oppositions to Bond Plaintiffs' motion to compel as well.  Bond Plaintiffs responded to each of these filings, and the motion to compel was fully briefed on August 26, 2011.  On December 5, 2011, the Court, after reviewing the subject documents *in camera*, issued an order granting in part and denying in part Bond Plaintiffs' motion to compel.

On August 26, 2011, Citigroup sent a letter to the Court seeking permission to file a motion for judgment on the pleadings under Rule 12(c), contending that certain allegations in Bond Plaintiffs' Complaint should be dismissed pursuant to the Second Circuit's decision in *Fait v. Regions Financial Corp.,* 655 F.3d 105 (2d Cir. 2011).  Bond Plaintiffs responded by letter dated September 7, 2011, which argued, among other things, that any Rule 12(c) motion was premature because discovery was ongoing, and if any such motion was allowed it should be converted into a summary judgment motion and made at the close of discovery.  On October 27, 2011, Citigroup filed a motion for judgment as a matter of law under Rule 12(c), and Bond Plaintiffs promptly wrote to the Court reiterating their argument that the motion was premature.  On November 23, 2011, the Court issued an order holding that Defendants' Rule 12(c) motion was

premature, converting it to a summary judgment motion, and dismissing it with leave to renew following the close of discovery.

Between July 2011 and September 2012, Bond Plaintiffs took or participated in the depositions of more than fifty of Defendants' witnesses. These included senior current and former officers of Citigroup. For instance, on July 15, 2012, after the Citigroup Stock Action had reached a proposed settlement and litigation in that case was stayed, Bond Plaintiffs deposed the former Chief Underwriter of the Correspondent Channel of Citigroup, Richard Bowen. In July and August 2012, Bond Plaintiffs also took the depositions of, among others, (i) Citigroup's Treasurer, (ii) the Former Co-Head of Citigroup's Global Credit Markets, (iii) the Head of Global Consumer Capital & Reserves, and (iv) Citigroup's former Chief Executive Officer, Chuck Prince.

Meanwhile, beginning in early 2012, the parties started discussing a potential resolution of the Bond Action. The parties engaged in numerous discussions and exchanged information regarding damages and liability, including arranging for a discussion between the parties' damage experts, and retaining Judge Layn Phillips to act as the mediator in facilitating settlement discussions. At the time the settlement was reached, only weeks remained in the fact discovery period, document discovery was essentially complete, and only a handful of depositions remained to be taken. Moreover, under the pre-trial schedule in place at that time, expert reports were due to be filed imminently. Accordingly, Bond Plaintiffs had completed a substantial amount of work on their opening expert reports and were well informed as to the opinions that their experts were likely to offer on complex issues such as CDO valuation, SIV credit quality, understatements of loan loss reserves, and capital adequacy.

The parties ultimately agreed to engage the Honorable Layn R. Phillips to facilitate further settlement negotiations. The parties made multiple submissions to Judge Phillips concerning

liability and damages, and provided Judge Phillips with, among other things, their motion to

dismiss briefs, the Court's motion to dismiss opinion, the class certification briefs, the submissions

regarding *Fait*, certain of the evidence uncovered in discovery, and preliminary damage analyses.

Judge Phillips ultimately made a mediator's recommendation that the case be settled for a payment

of $730 million by Citigroup, which the parties accepted.

As explained further below, based on Bond Plaintiffs' oversight of the prosecution of this

matter and with the advice of Bond Counsel, Bond Plaintiffs have agreed to settle the claims

raised in the Action after considering (a) the substantial financial benefit that the Bond Class will

receive under the proposed Settlement, (b) the significant risks of continued litigation and trial,

and (c) the desirability of permitting the Settlement as provided by the terms of the Stipulation.

## III.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

The settlement of complex class action litigation is favored by public policy and strongly

encouraged by the courts.  *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d

Cir. 2005) ( there is a "strong judicial policy in favor of settlements, particularly in the class action

context.  The compromise of complex litigation is encouraged by the courts and favored by public

policy"); *see also Banyai v. Mazur*, No. 00 Civ. 9806 (SHS), 2008 WL 4921351, *3 (S.D.N.Y.

Nov. 18, 2008) (Stein, J.) (recognizing "the general judicial policy favoring settlement").

Under Rule 23(e) of the Federal Rules of Civil Procedure, judicial review of a proposed

class action settlement consists of a two-step process:  preliminary approval and a subsequent

settlement fairness hearing.   In the context of preliminary approval, "[w]here the proposed

settlement appears to be the product of serious, informed, non-collusive negotiations, has no

obvious deficiencies, does not improperly grant preferential treatment to class representatives or

segments of the class and falls within the range of possible approval, preliminary approval is

granted." *In re Initial Pub. Offering Sec. Litig.*, 243 F.R.D. 79, 87 (S.D.N.Y. 2007) (quoting *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)); *see also Danieli v. Int'l Bus. Machines Corp.*, No. 08 CV 3688 (SHS), 2009 WL 6583144, *4 (S.D.N.Y. Nov. 16, 2009) (Stein, J.) (preliminary approval granted when "Settlement has no obvious defects and is within the range of possible Settlement approval").  Bond Plaintiffs request that the Court take the first step in the settlement approval process and grant preliminary approval of the Settlement.  As summarized below, and as will be detailed further in the motion for final approval, the Settlement is well "within the range of possible approval."  *Initial Pub. Offering*, 243 F.R.D. at 87.

### A.    The Settlement Is The Result Of Good Faith, Arm's-Length Negotiations By Well-Informed And Experienced Counsel

Courts presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations between well-informed counsel.  *See Wal-Mart*, 396 F.3d at 116 (strong "presumption of fairness" where settlement is product of arm's-length negotiations conducted by experienced, capable counsel after meaningful discovery); *In re FLAG Telecom Holdings Ltd. Sec. Litig.*, No. 02-CV-3400, 2010 WL 4537550, at *13 (S.D.N.Y. Nov. 8, 2010) (same).  The use of an experienced mediator in settlement negotiations further supports this presumption of fairness and the conclusion that the Settlement was free of collusion.  *See In re Bear Stearns Cos., Inc. Sec. Litig.*, --- F. Supp. 2d ----, No. 08 MDL 1963, 2012 WL 5465381, at *3 (S.D.N.Y. Nov. 9, 2012) (parties "engaged in extensive arm's length negotiations, which included multiple sessions mediated by retired federal judge Layn R. Phillips, an experienced and well-regarded mediator of complex securities cases"); *In re Giant Interactive Corp., Inc. Sec. Litig.*, 279 F.R.D. 151, 160 (S.D.N.Y. 2011) (finding settlement was entitled to a presumption of fairness where it was "the product of prolonged, arms-length negotiation" facilitated by Judge Phillips, "a respected mediator").

Here, the Settlement was achieved only after protracted arm's-length negotiations – including negotiations conducted under the auspices of a highly respected and experienced mediator.  Moreover, given that the Parties litigated the Action for over four years and have engaged in extensive discovery, the Parties and their counsel were well-informed about the strengths and weaknesses of the claims and defenses in the Action.  Indeed, at the time the Settlement was reached, the Parties had nearly completed fact discovery, document discovery was complete, and Bond Plaintiffs had completed a significant amount of work towards preparing opening expert reports.

Finally, the judgment of Bond Plaintiffs, a number of whom are sophisticated institutional investors, and Bond Counsel, which is highly experienced in securities class action litigation, that the Settlement is an excellent recovery and is in the best interests of the Bond Class should be given considerable weight.  *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695, 2007 WL 4115809, at *12 (S.D.N.Y. Nov. 7, 2007) (courts should "consider the opinion of experienced counsel with respect to the value of the settlement"); *In re PaineWebber Ltd. P'ships Litig.,* 171 F.R.D. 104, 125 (S.D.N.Y. 1997) ("'great weight' is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation").

### B.   The Substantial Benefits For The Bond Class, Weighed Against Litigation Risks, Strongly Support Preliminary Approval

The $730 million cash recovery achieved by the proposed Settlement provides an extremely substantial benefit to the Bond Class.  This is particularly true when compared to the risk that no recovery or a lesser recovery might be achieved after summary judgment, trial and likely appeals, which could take many additional months or years.

The claims alleged by the Bond Class involve many complex legal and factual issues.  If the Action were to proceed through dispositive motions and trial, Bond Plaintiffs would have to

overcome numerous defenses asserted by Defendants as to both liability and damages. Among other things, the Parties disagree on whether the Registration Statements contained any material misrepresentations or omissions. Defendants argued that Bond Plaintiffs were attempting to prove falsity in hindsight, and that Citigroup was accurately valuing its CDO and SIV assets, and setting appropriate loan loss reserves, despite the challenges presented by a historically unprecedented collapse in the real estate and financial markets. Defendants also argued that by early January 2008, at the latest, Citigroup had fully disclosed its exposure to subprime-related CDOs, taken tens of billions of dollars in write-downs on its CDO and SIV assets, and increased its loan loss reserves by billions of dollars. Thus, Defendants contended that, at a minimum, there were no material misrepresentations in the offering documents for any Offering conducted after that time.

Defendants also contended that the Second Circuit's decision in *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011) imposed a more rigorous legal standard on many of Bond Plaintiffs' claims, including core allegations concerning Citigroup's loan loss reserves and the valuations of its CDOs and SIVs. Defendants argued that, under *Fait,* Citigroup's alleged misstatements concerning these items were "opinions" that were not actionable unless Bond Plaintiffs proved that Defendants had "misstated their truly held belief" on these subjects – a standard that, Defendants asserted, essentially requires a plaintiff to prove a state of mind approximating scienter.

Finally, Bond Plaintiffs faced additional risks in proving damages. Under the Securities Act, if Defendants establish that the decline in price of a security was caused by events unrelated to the alleged misrepresentations, then those declines cannot be recovered as damages. 15 U.S.C. § 77k(e). Here, the largest declines in the prices of the Bond Class Securities occurred in late 2008 following the collapse of Lehman Brothers, Inc. and several other large financial institutions.

Defendants contended that the securities of virtually every financial institution in the world dropped precipitously during this time period.  Thus, Defendants argued strenuously that the declines in the Bond Class Securities were caused by larger market-wide issues, rather than any alleged misrepresentations or omissions, and were not recoverable as damages under the Securities Act.

In sum, the Parties disagreed on numerous complex issues of law and fact, and the Settlement enables the Bond Class to recover a very substantial sum without incurring the risk that Defendants would prevail on these issues at summary judgment, trial, or in subsequent appeals.

### C.      The Stage Of The Proceedings Supports Preliminary Approval

As will be set forth in further detail prior to the Settlement Hearing, Bond Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of their claims against Defendants following more than four years of intense litigation effort, which included: (i) conducting a thorough investigation into the Bond Class's claims; (ii) drafting a detailed amended consolidated complaint; (iii) successfully opposing the majority of Defendants' motions to dismiss and defeating Defendants' related motion for reconsideration; (iv) conducting extensive class certification discovery and fully briefing a motion for class certification; (v) engaging in substantial merits discovery, including taking or defending more than seventy depositions and reviewing over forty million pages of documents; (vi) filing a motion to compel the production of documents being withheld by Defendants on the basis of a purported "bank examination" privilege; (vii) successfully opposing Defendants' attempts to bring an early Rule 12(c) motion for judgment as a matter of law based on *Fait*; and (viii) engaging in extensive and hard-fought settlement negotiations, including negotiations overseen by Judge Phillips.

Accordingly, at the time the Settlement was reached, Bond Plaintiffs and Bond Counsel had a clear view of the strengths and weaknesses of the claims and defenses in the Action. Additionally, Bond Plaintiffs directly participated in this case and approve of the Settlement. Thus, the Settlement is the product of serious, informed, non-collusive negotiations, is well within the range of possible approval, and does not have any obvious deficiencies. For these and all of the foregoing reasons, the Court should grant preliminary approval of the Settlement and direct that notice of the Settlement be given to members of the Class.

## IV.    THE BOND CLASS SHOULD BE CERTIFIED
   FOR SETTLEMENT PURPOSES

In granting preliminary settlement approval, the Court should also certify the Bond Class for purposes of the Settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure. The proposed Bond Class, which has been stipulated to by the Parties, consists of:

> all persons and entities who purchased or otherwise acquired, from May 11, 2006 through and including November 28, 2008 (the "Settlement Class Period"), the debt securities (including certain medium term notes), series of preferred stock and certain series of depository shares representing interests in preferred stock, in or traceable to the offerings of the Bond Class Securities, and were damaged thereby. Excluded from the Bond Class are Defendants, the Tolled Underwriter Defendants, the respective affiliates of the Defendants and the Tolled Underwriter Defendants, persons who served as Officers or Directors of any of the Defendants or the Tolled Underwriter Defendants at any time during the Settlement Class Period, members of their Immediate Families and their legal representatives, heirs, successors or assigns, trustees of the Citigroup Trusts, and any entity in which any Defendant or Tolled Underwriter Defendant has or had a controlling interest, provided, however, that any Investment Vehicle (as defined [in the Stipulation]) shall not be excluded from the Bond Class. Also excluded from the Bond Class are any Persons who submit an Exclusion Request.

Stipulation ¶ 1(c).[4]

---

[4] When Bond Plaintiffs moved for class certification in March 2011, they did not seek class certification for five securities issued pursuant to Citigroup's March 10, 2006 Registration Statement because no proposed class representative had purchased any security issued pursuant to that Registration Statement. For settlement purposes, however, the Parties jointly seek

*(continued ... )*

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982); *In re Marsh & McLennan Cos. Sec. Litig.*, No. 04 Civ. 8144 (CM), 2009 WL 5178546, at *8 (S.D.N.Y. Dec. 23, 2009). Indeed, certification of a settlement class "has been recognized throughout the country as the best, most practical way to effectuate settlements involving large numbers of claims by relatively small claimants." *In re Prudential Secs. Ltd. P'ships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995). While a settlement class, like other certified classes, must satisfy Rules 23(a) and (b), the manageability concerns of Rule 23(b)(3) are not at issue in certification of a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

### A.     The Bond Class Satisfies The Requirements Of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

### 1.     The Bond Class Members Are Too Numerous To Be Joined

Class certification under Rule 23(a)(1) is appropriate where a class contains so many members that joinder of all would be "impracticable." Fed. R. Civ. P. 23(a). Numerosity is presumed when a class consists of forty members or more. *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "In securities class actions 'relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a

---

*( ... continued)*
certification of a class that includes these five securities, which have the following CUSIP numbers: 1730T0CR8, 1730T0EK1, 1730T0FV6, 1730T0EP0, and 1730T0GB9. It is well-established that "a court may approve a settlement class broader than a litigation class," *In re Initial Public Offering Sec. Litig.* ("IPO"), 226 F.R.D. 186, 190 (S.D.N.Y. 2005) (citing cases), and thus, purchasers of these five securities are properly included in the settlement-only class here.

showing that a large number of shares were outstanding and traded during the relevant period.'" *In re NYSE Specialists Sec. Litig.*, 260 F.R.D. 55, 70 (S.D.N.Y. 2009) (citation omitted).

Here, the Bond Class easily satisfies the numerosity requirement. The Bond Class is comprised of purchasers of 39 securities issued in 48 separate Offerings and the total value of the Bond Class Securities issued in the Offerings was over $71 billion. Although the precise number of Bond Class Members cannot be identified with specificity, given the number of Offerings at issue, it cannot be seriously disputed that there are substantially more than 40 Bond Class Members – indeed, there are nine Bond Plaintiffs alone. *See Consol. Rail Corp.*, 47 F.3d at 483; *Pa. Ave. Funds v. Inyx Inc.*, No. 08 Civ. 6857 (PKC), 2011 WL 2732544, at *3 (S.D.N.Y. July 5, 2011).

## 2.    There Are Common Questions Of Law And Fact

Rule 23(a)(2) requires the existence of at least one question of law or fact common to the class. *See Central States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, 504 F.3d 229, 245 (2d Cir. 2007); *Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001). Securities cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, No. 04 Civ. 9866 (LTS)(HBP), 2012 WL 1059671, at *3 (S.D.N.Y. Mar. 29, 2012); *see In re Globalstar Sec. Litig.*, No. 01 Civ 1748 (PKC), 2004 WL 2754674, at *4 (S.D.N.Y. Dec. 1, 2004) ("Common questions of law and fact in this action include whether certain statements were false and misleading, whether those statements violated the federal securities laws, . . . and ensuing causation issues").

This Action raises numerous common issues of law and fact. With respect to Bond Plaintiffs' Section 11 claims, Bond Plaintiffs allege that Defendants made a series of materially misleading

statements and omissions in the Registration Statements for the Offerings concerning, *inter alia*, Citigroup's exposure to, and the value of, its CDOs; the value and credit quality of its SIVs; the adequacy of its loss reserves; its well-capitalized status; its net income; and its compliance with GAAP. Common questions of fact include whether these statements and omissions were misleading, whether any such misstatements or omissions were material, and whether the various Defendants may be held liable for these alleged misstatements and omissions. Similarly, Bond Plaintiffs' Section 15 claims rest on the common legal and factual questions of whether there has been an underlying violation of Section 11, and whether certain Defendants exercised "control" over the violators. In sum, Bond Plaintiffs' Securities Act claims raise numerous prototypical common issues of law and fact. *See In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 281 (S.D.N.Y. 2002) (common questions included existence of "material misrepresentations and omissions … [in] the registration statement"); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280, 288, 293 n.30 (S.D.N.Y. 2003) (finding that "nature and extent of misrepresentations" are common question of fact; the liability of defendants under Section 11 for such statements is a common question of law; and most defenses to liability also present issues of law and fact that are common to the class).

### 3.    Bond Plaintiffs' Claims Are Typical Of The Bond Class

Rule 23(a)(3) requires that the claims of the class representatives be "typical" of the claims of the class. Fed. R. Civ. P. 23(a)(3). Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Central States*, 504 F.3d at 245; *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304-05 (S.D.N.Y. 2010). "Typical" does not mean "identical." *See Marsh & McLennan*, 2009 WL 5178546, at *10. It is well-established that "factual differences involving the date of acquisition, type of securities purchased and manner by which the investor acquired the

securities will not destroy typicality if each class member was the victim of the same material misstatements . . ."  *Marsh & McLennan*, 2009 WL 5178546, at *10; *see also WorldCom*, 219 F.R.D. at 280.   Accordingly, courts have frequently found that the typicality requirement is satisfied in securities cases involving multiple offerings, notwithstanding certain factual differences involving the date, type and manner by which the investor acquired his securities.  *See, e.g., Deutsche Telekom*, 229 F. Supp. 2d at 281 (typicality established where plaintiffs purchased securities pursuant to misleading registration statement); *WorldCom*, 219 F.R.D. at 281 (typicality requirement was satisfied notwithstanding certain differences between the kinds of securities that the various class members purchased, because "the Registration Statements incorporated WorldCom's SEC filings, and the misrepresentations of WorldCom's financial condition in the Registration Statements are alleged to be a part of a course of conduct that concealed WorldCom's true financial condition from all investors in WorldCom securities").

Here, the claims of Bond Plaintiffs and absent Bond Class Members are based on the same alleged misleading misrepresentations and omissions incorporated into the Registration Statements.  Thus, Bond Plaintiffs' claims arise from the same course of events as the claims of all Bond Class Members.  Bond Plaintiffs' claims and the claims of absent Bond Class Members are based on the same legal theories and would be proven by the same evidence.

### 4.    Bond Plaintiffs Will Fairly And Adequately Protect The Interests Of The Bond Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  To determine whether a plaintiff is an adequate class representative, courts look to whether: "1) plaintiff's interests are antagonistic to the interests of other members of the class and 2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation."  *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000);

20

*Sadia*, 269 F.R.D. at 305; *Marsh & McLennan*, 2009 WL 5178546, at *10. "[M]any courts have observed [that] the issues of typicality and adequacy tend to merge because they 'serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence.'" *In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 85 (S.D.N.Y. 2007).

There is no antagonism or conflict of interest between Bond Plaintiffs and the proposed Bond Class. Bond Plaintiffs and the other members of the Bond Class share the common objective of maximizing their recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members."). Bond Plaintiffs have further demonstrated their adequacy by vigorously pursuing the claims in this Action. In addition, Bond Counsel has extensive experience and expertise in complex securities litigation and class action proceedings throughout the United States. Therefore, Rule 23(a)(4) is satisfied.

## B.      The Bond Class Satisfies The Requirements Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### 1.      Common Legal And Factual Questions Predominate

As the Supreme Court has noted, predominance is a test "readily met" in cases alleging violations of the securities laws. *Amchem*, 521 U.S. at 625. Common issues will predominate where each class member is alleged to have suffered the same kind of harm pursuant to the same

legal theory arising out of the same alleged course of conduct, and the only individualized questions concern the amount of damages. *See Marsh & McLennan*, 2009 WL 5178546, at *11; *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 240 (S.D.N.Y. 2006) ("In determining whether common questions predominate, a court's inquiry is directed primarily toward whether the issue of liability is common to members of the class.").

Here, the same alleged course of conduct by Defendants forms the basis of all Bond Class Members' claims. There are numerous common issues relating to Defendants' liability, including the existence of material misrepresentations or omissions, which predominate over any individualized issues. *See PaineWebber*, 171 F.R.D. at 123 (in case involving Section 11 claims, common questions of law and fact "overwhelmingly predominate"); *Deutsche Telekom*, 229 F. Supp. 2d at 282; *WorldCom*, 219 F.R.D. at 293.

### 2.    A Class Action Is Superior To Other Methods Of Adjudication

This consolidated class action is clearly "superior to other available methods for fairly and efficiently adjudicating" the Securities Act claims of the large number of purchasers or acquirors of Bond Class Securities. *See* Fed. R. Civ. P. 23(b)(3). Indeed, courts have concluded that the class action device in securities cases is usually the superior method by which to redress injuries to a large number of individual plaintiffs in light of the large and geographically dispersed nature of shareholder classes, the inefficiency of multiple lawsuits and the size of individual recoveries in comparison to the costs of litigations. *See, e.g.*, *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) ("as a general rule," securities cases "easily satisfy the superiority requirement [as] [m]ost violations of the federal securities laws . . . inflict economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible") (citation omitted).

## V.     NOTICE TO THE BOND CLASS SHOULD BE APPROVED

As outlined in the Preliminary Approval Order, Bond Counsel will notify Bond Class Members of the pendency of the Action and the proposed Settlement by mailing the Notice and Claim Form to all Bond Class Members who can be identified with reasonable effort.  The Notice will advise Bond Class Members of (i) the pendency of the Action as a class action; (ii) the essential terms of the Settlement; (iii) the proposed Plan of Allocation; and (iv) information regarding Bond Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses. The Notice will also provide specifics on the date, time and place of the Settlement Fairness Hearing and set forth the procedures, as well as deadlines, for opting out of the Bond Class, for objecting to the Settlement, the proposed Plan of Allocation and/or the motion for attorneys' fees and reimbursement of Litigation Expenses, and for submitting a Claim Form.  The proposed Preliminary Approval Order also requires Bond Counsel to cause the Summary Notice to be published once in the national edition of *The Wall Street Journal* and to be transmitted once over the *PR Newswire* within ten (10) calendar days of the mailing of the Notice.  Bond Counsel will also cause a copy of the Notice and Claim Form to be available on the settlement website established by the Claims Administrator.

The form and manner of providing notice to the Bond Class satisfy the requirements of due process, Rule 23, and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 77z-1(a)(7).  The Notice and Summary Notice "fairly apprise the prospective members of the class of the terms of the proposed settlement[s] and of the options that are open to them in connection with the proceedings."  *Wal-Mart*, 396 F.3d at 114; *see Dorn v. Eddington Sec., Inc.*, No 08 Civ. 10271 (LTS), 2011 WL 382200, at *4 (S.D.N.Y. Jan. 21, 2011).

## VI.    PROPOSED SCHEDULE

As outlined in the proposed Preliminary Approval Order submitted herewith, no later than twenty (20) business days after entry of the Preliminary Approval Order (the "Notice Date"), The Garden City Group, Inc. ("GCG"), the Claims Administrator, will notify Bond Class Members of the Settlement by mailing a copy of the Notice and the Proof of Claim Form, substantially in the forms attached as Exhibits A-1 and A-2 to the Stipulation, respectively (the "Notice Packet"), to each Bond Class Member who may be identified through reasonable effort.

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the Settlement.[5]   The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice and Claim Form to the Bond Class ("Notice Date") | 20 business days after entry of the Preliminary Approval Order |
| Deadline for publishing Summary Notice | 10 calendar days after the Notice Date |
| Filing of papers in support of final approval of Settlement, Plan of Allocation, and Bond Counsel's fee and expense request | 45 calendar days before the Settlement Hearing |
| Receipt deadline for objections and requests for exclusion from the Bond Class | 30 calendar days before the Settlement Hearing |
| Filing of reply papers in support of final approval of Settlement, Plan of Allocation, and Bond Counsel's fee and expense request | 7 calendar days before the Settlement Hearing |
| Settlement Fairness Hearing | The week of July 22, 2013, or at the Court's earliest convenience thereafter |

[5] The blanks for certain deadlines currently contained in the agreed-upon form of Notice will be filled in once the Court sets those dates and prior to mailing to Bond Class Members.

| Deadline for submitting Claim Forms | 120 calendar days after the Notice Date |
|---|---|

## VII.   CONCLUSION

For all the foregoing reasons, Bond Plaintiffs respectfully request that the Court grant preliminary approval of the proposed Settlement; certify the Bond Class and appoint Bond Plaintiffs as class representatives and Bond Counsel as class counsel, for purposes of the Settlement; approve the form and manner of providing notice of the Settlement to the Bond Class; and enter the accompanying proposed Preliminary Approval Order.

Dated:  March 18, 2013
        New York, New York

BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP

By:   */s/ Steven B. Singer*
       Max W. Berger
       Steven B. Singer
       John C. Browne
       John Rizio-Hamilton
       1285 Avenue of the Americas
       New York, NY  10019
       Tel:  (212) 554-1400
       Fax:  (212) 554-1444

       *Attorneys for Bond Plaintiffs and*
       *Court-appointed Bond Counsel*

25

**KESSLER TOPAZ MELTZER &
CHECK, LLP**
David Kessler
Darren J. Check
Matthew L. Mustokoff

280 King of Prussia Road
Radnor, PA  19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Additional Counsel for City of Tallahassee
Retirement System, Miami Beach Employees'
Retirement Plan, Southeastern Pennsylvania
Transit Authority, City of Philadelphia Board
of Pensions and Retirement, and James M.
Brown*

**POMERANTZ GROSSMAN HUFFORD
DAHLSTROM & GROSS LLP**
Marc I. Gross
Jeremy Lieberman

600 Third Avenue
New York, NY 10016
Tel- 212-661-1100
Fax-212-661-8665

*Additional Counsel for American European
Insurance Company*

#704010