UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE CITIGROUP INC.<br>BOND LITIGATION | 08 Civ. 9522 (SHS)<br><br>ECF Case |

**RESPONSES OF THE CITIGROUP DEFENDANTS TO**
**OBJECTIONS TO THE PROPOSED SETTLEMENT**

Brad S. Karp
Richard A. Rosen
Susanna M. Buergel

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP

   1285 Avenue of the Americas
   New York, New York 10019-6064
   Tel.  (212) 373-3000

Charles E. Davidow
Jane B. O'Brien

PAUL, WEISS, RIFKIND,
   WHARTON & GARRISON LLP

   2001 K Street NW
   Washington, DC 20006-1047
   Tel.  (202) 223-7300

*Attorneys for Defendants*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT...................................................................................................................2

I.       THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE. ..................2

II.      THE LACK OF CONTRIBUTION BY INDIVIDUAL DEFENDANTS
         DOES NOT IMPACT THE FAIRNESS OF THE SETTLEMENT. ......................5

CONCLUSION...............................................................................................................11

# TABLE OF AUTHORITIES

Page(s)

CASES

*In re Citigroup Inc. Bond Litig.*,
    723 F. Supp. 2d 568 (S.D.N.Y. 2010) .................................................................6

*City of Detroit* v. *Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974) .............................................................................2

*Crittenden & Tildesley*,
    File No. 3-13985, 2010 WL 2992474 (SEC July 29, 2010)...................................9

*Duban* v. *Diversified Mtg. Investors*,
    87 F.R.D. 33 (S.D.N.Y. 1980).............................................................................6

*In re Executive Telecard, Ltd. Sec. Litig.*,
    979 F. Supp. 1021 (S.D.N.Y. 1997) ....................................................................3

*Fait* v. *Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011) ...........................................................................2, 3

*In re Jiffy Lube Sec. Litig.*,
    927 F.2d 155 (4th Cir. 1991) .............................................................................6

*Kaung* v. *Cole Nat'l Corp.*,
    884 A.2d 500 (Del. 2005) ..................................................................................7

*In re Lehman Bros. Sec. & ERISA Litig.*,
    No. 09 MD 2017 (LAK), 2012 WL 1920543 (S.D.N.Y. May 24, 2012)................8

*In re Refco, Inc. Sec. Litig.*,
    503 F. Supp. 2d 611 (S.D.N.Y. 2007) .................................................................9

*Wal-Mart Stores, Inc*. v. *Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................................2

*In re Warner Commc'ns Sec. Litig.*,
    798 F.2d 35 (2d Cir. 1986) ................................................................................6

STATUTES

15 U.S.C. § 77k.............................................................................................................3, 9

15 U.S.C. § 77o...............................................................................................................9

Del. Code Ann. tit. 8, § 145 ............................................................................................7

**OTHER AUTHORITIES**

Peter J. Wallison, *The WorldCom and Enron Settlements: Politics Rears Its Ugly Head,* Am. Enter. Inst. for Pub. Pol. Res. (March 2005), *available at* http://www.aei.org/files/2005/03/01/20050225_18033MarchFSOnewg.pdf ......................... 10

The Citigroup Defendants respectfully submit this memorandum in support of the Stipulation and Agreement of Settlement dated March 18, 2013 (the "Settlement") and in response to the objections to the Settlement received on or before June 27, 2013.  Because the Settlement is fair, reasonable and adequate, as described more fully below, this Court should approve its terms.[1]

## PRELIMINARY STATEMENT

In this case, the Bond Plaintiffs assert claims under Sections 11, 12(a)(2), and 15 of the Securities Act of 1933 (the "Securities Act"), principally alleging that Citigroup Inc. ("Citigroup") made material misrepresentations to investors in its financial statements regarding the extent of its exposure to collateralized debt obligations ("CDOs") and other mortgage-related assets, the value of those assets, and their impact on Citigroup's financial condition between May 2006 and November 2008 (the "Class Period").  Following four and a half years of litigation, extensive motion practice, including a motion for class certification, the production of approximately 40 million pages of documents, more than 70 depositions, and arm's-length mediation before the Hon. Layn Phillips (Ret.), the parties reached an agreement to settle this litigation. Pursuant to the Settlement, Citigroup has agreed to pay $730 million in exchange for the release of all the Settlement Class's claims.  The Citigroup Defendants respectfully submit that this is a fair, reasonable and adequate resolution of this litigation and should be approved.

---

[1]   Capitalized terms not otherwise defined herein shall have the meaning set forth in the Settlement.

## ARGUMENT

## I.     THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE.

A district court should approve a class action settlement if it finds that the settlement is "fair, adequate, and reasonable, and not a product of collusion." *See Wal-Mart Stores, Inc*. v. *Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (quoting *Joel A.* v. *Giuliani*, 218 F.3d 132, 138 (2d Cir. 2000)).  This Court should assess the fairness of the Settlement by looking both at the substantive terms of the agreement and the negotiating process that led to it.  *Id.* at 116.  While a presumption of fairness attaches to a settlement reached through arm's-length negotiations of experienced counsel after meaningful discovery, such as this one, courts within the Second Circuit evaluate the substantive fairness of a class action settlement using the "*Grinnell* factors."  *Id*. at 117 (citing *City of Detroit* v. *Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974), *abrogated on other grounds by Goldberger* v. *Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)).

The Bond Plaintiffs previously have addressed the *Grinnell* factors in their motion for final approval of the Settlement (*see* Pls.' Br. 9–22), so we limit our discussion of *Grinnell* to just two of these factors:  the risk of establishing liability and the risk of establishing damages, which risks the Citigroup Defendants submit are particularly high in this case.  *See Grinnell Corp.*, 495 F.2d at 463.  In particular, the Bond Plaintiffs would have difficulty establishing (i) that the Citigroup Defendants did not believe their statements of opinion as required by *Fait* v. *Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011), and (ii) that the decline in the market price of the bonds was a result of the alleged misstatements, as opposed to general market declines.

First, "when a plaintiff asserts a claim under section 11 or 12 based upon a belief or opinion alleged to have been communicated by a defendant, liability lies only to

the extent that the statement was both objectively false and *disbelieved by the defendant at the time it was expressed*."  *Fait*, 655 F.3d at 110 (emphasis added).  Indeed, the Bond Plaintiffs acknowledge that *Fait* "greatly increased" and "dramatically heightened" the risk that they "would be unable to establish liability."  (Pls.' Br. at 5, 16.)  The Bond Plaintiffs concede that all but one of the alleged misstatements are statements of opinion; and, as for the remaining alleged misstatement, they concede that it would be associated with only "minimal damages."  (*Id*. at 17 n.11.)  In addition, it is notable that the Securities and Exchange Commission ("SEC") and another federal district court judge previously have reached the conclusion that the evidence does not support a claim for knowing misconduct in connection with Citigroup's subprime-related disclosures.  (Ex. 1 at 4; Ex. 2 at 11:3–6; Ex. 3 at 57:17.) [2]

Second, even if the Bond Plaintiffs were able to prove liability—which the Citigroup Defendants would vigorously dispute—the Citigroup Defendants have a strong likelihood of proving that the alleged misstatements or omissions did not cause at least some, if not all, of plaintiffs' damages in light of the significant, industry-wide economic downturn that coincided with decline in value of the Bond Class Securities.  *See* 15 U.S.C. § 77k(e) ("[I]f the defendant proves that any portion or all of such damages represents other than the depreciation in value of such security resulting from [the] part of the registration statement . . . [that contains the material misstatement or omission], such portion of or all such damages shall not be recoverable."); *see also, e.g.*, *In re Executive Telecard, Ltd. Sec. Litig.*, 979 F. Supp. 1021, 1025 (S.D.N.Y. 1997) (noting that negative

---

[2]     Citations in the form of Ex. __ refer to exhibits annexed to the Declaration of Richard A. Rosen in Support of the Responses of the Citigroup Defendants to Objections to the Proposed Settlement, dated July15, 2013.  Citations in the form of Preliminary Approval Order ¶ __ refer to the Order Preliminarily Approving Proposed Settlement and Providing for Notice, dated March 25, 2013.

causation defense can be established by "market wide variations generally"). For instance, the Bond Class Securities traded at or close to par for the vast majority of the class period, and only began to trend downward in the fall of 2008, which was a time of extraordinary volatility in the market. By September 2008, virtually all of the major U.S. financial institutions had experienced significant losses and had written down billions of dollars of subprime and other mortgage related exposures. In a three-week span, a series of events brought about the near-collapse of the U.S. banking system:

- On September 7, Fannie Mae and Freddie Mac were seized and placed into government conservatorship due to their mortgage exposure.

- On September 15, Lehman filed for bankruptcy—the largest bankruptcy in U.S. history—and Merrill Lynch was sold to Bank of America. That day, the Dow dropped 499 points.

- On September 16, the government announced an $85 billion bailout to save AIG, the country's largest insurance provider.

- On September 16, as a result of market shocks from the credit crisis, money market funds "broke the buck"—traded below par—for the first time since 1994.

- On September 20, the Department of the Treasury unveiled its $700 billion Troubled Asset Relief Program ("TARP") to provide balance-sheet relief to banks for their now-illiquid holdings. As later enacted by Congress, TARP provided that each of the largest banking institutions in the U.S.—including JPM, Goldman Sachs, Morgan Stanley, Wells Fargo, Bank of America, State Street, BoNY Mellon and Citigroup—accept government funds to help allay the spreading market panic.

- On September 21, Goldman Sachs and Morgan Stanley became bank holding companies, making them eligible for TARP funds and providing them access to the Fed window.

- On September 24, Washington Mutual failed—the largest bank failure in U.S. history. The FDIC seized Washington Mutual's assets and sold them to JPM.

- On September 29, Wachovia nearly failed and the FDIC arranged for its sale to Citigroup for $2.2 billion. The same day, the Dow dropped 778 points, the largest one-day drop in history.

At the time, virtually every security issued by every financial institution was in precipitous decline.  This suggests that it was the overwhelming external market forces that caused the decline in value of the Bond Class Securities—*not* any alleged misstatements or omissions by Citigroup.

In light of the substantial risk that the Citigroup Defendants would be successful in a motion for summary judgment or to prevail at trial, the resolution of this matter for $730 million is plainly fair, reasonable and adequate, and the Settlement should be approved.

## II.   THE LACK OF CONTRIBUTION BY INDIVIDUAL DEFENDANTS DOES NOT IMPACT THE FAIRNESS OF THE SETTLEMENT.

Virtually no class members objected to the fairness of the Settlement. Only one purported class member, out of the 417,000 to whom notice was sent, has objected to any substantive term of the Settlement.[3]  Although Mr. Giffin does not contend that the overall dollar amount of the Settlement is unfair, he asserts that one or more of the Individual Defendants should have contributed to the Settlement and that the Settlement should have provided for injunctive relief.  (*See* Donald W. Giffin's Objections to Proposed Settlement, ECF No. 161, June 13, 2013.)[4]  Neither of these contentions has merit.

---

[3]   This figure excludes objections that address only the attorney-fee award sought by the Bond Plaintiffs and the objection of Peter A. Gemora, which purports to object "for the reasons stated in the attached Statement."  No such statement was attached.  The figure also excludes the conclusory objection of Bruce M. Smackey to the "lack of transparency" in determining the settlement amount, the "lengthy set of documents" on the settlement website, his broker's failure to prevent his investment losses, and the fact that the settlement does not offer "full restitution."  ECF No. 167 at 2–4.  The process by which the settlement amount was determined is adequately set forth in the notice distributed to class members, which was approved by the Court, and the overall settlement amount is fair, reasonable and adequate, as explained *infra* Part I.

[4]   Mr. Giffin's objection is not properly before the Court because he has not provided documents sufficient to prove membership in the Bond Class as required by Preliminary Approval Order ¶ 18.

The fact that the parties have agreed that Citigroup will pay the entire Settlement Amount, without contribution from any of the Individual Defendants,[5] does not render the Settlement unfair or unreasonable.  It is well established in this Circuit that a court's obligation in reviewing a class action settlement is limited to determining whether the aggregate settlement is fair to the class; it does not extend to apportioning liability among defendants.  *In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("If the total compensation to class members is fair, reasonable, and adequate, the court is not required to supervise how the defendants apportion liability for that compensation among themselves." (citing *Masterson* v. *Pergament*, 203 F.2d 315, 330 (6th Cir.), *cert. denied*, 346 U.S. 832 (1953))); *Duban* v. *Diversified Mortg. Investors*, 87 F.R.D. 33, 40 (S.D.N.Y. 1980) ("[T]he court cannot question the wisdom of the corporation in choosing to pay the cost of settlement in order to finally terminate the litigation.").[6]

In this case, it is fair, reasonable and appropriate for Citigroup to pay the entire settlement amount because the entire $71 billion in proceeds of the debt offerings at issue were received by Citigroup.  None of those proceeds went to any of the Individual Defendants.  If, as plaintiffs allege, the investors in these offerings paid an inflated price for their bonds, then it is Citigroup (and its current shareholders) that

---

[5]     The individual defendants in this action are: C. Michael Armstrong, Alan J.P. Belda, Sir Winfried Bischoff, Michael Conway, Gary Crittenden, George David, Kenneth T. Derr, John M. Deutch, Scott Freidenrich, James Garnett, John C. Gerspach, Ann Dibble Jordan, Klaus Kleinfeld, Sallie L. Krawcheck, Andrew N. Liveris, Dudley C. Mecum, Ann M. Mulcahy, Vikram Pandit, Richard D. Parsons, Charles Prince, Roberto Hernandez Ramirez, Judith Rodin, Saul Rosen, Robert E. Rubin, Robert L. Ryan, Franklin A. Thomas, Eric L. Wentzel and David Winkler.  *In re Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 573 (S.D.N.Y. 2010).

[6]     *See also In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 159 (4th Cir. 1991) ("[F]or Rule 23(e) to be satisfied, the court must determine only that sufficient compensation is being paid to the class, without necessarily speculating as to the appropriateness of the contributions of the various settling defendants.").

received the benefit.  Moreover, because Citigroup as the issuer of the securities would be liable for any judgment under the Securities Act if the Bond Plaintiffs were to prevail at trial, Citigroup's board of directors acted well within its discretion under the business judgment rule in approving a settlement that eliminates the corporation's risk of liability for the billions of dollars in damages sought by the class.

Nor can there be a concern here that the absence of payments from the Individual Defendants makes the Settlement unfair to class members who still hold the Citigroup bonds or preferred securities they purchased during the class period.  That is because the class members purchased Citigroup debt securities, not common stock.  They are thus creditors of the company, not investors in its equity.

In addition, pursuant to Citigroup's by-laws, the Individual Defendants are indemnified to the fullest extent permitted under Delaware law.  *See* Del. Code Ann. tit. 8, § 145.  It is a matter of fundamental public policy in Delaware, where Citigroup is incorporated, that directors and officers have the benefit of such an indemnity.  *See, e.g.*, *Kaung* v. *Cole Nat'l Corp.*, 884 A.2d 500, 509 (Del. 2005) (noting that the right of indemnification is "deeply rooted in the public policy of Delaware corporate law" and "viewed less as an individual benefit arising from a person's employment and more as a desirable mechanism to manage risk in return for greater corporate benefits").  As a result, Citigroup had no power to insist that the Individual Defendants contribute to the Settlement because they had a contractual right to be free from any such obligation, in the absence of proof of intentional misconduct of a kind not remotely alleged here.

Citigroup is not willing to settle the action without obtaining releases for each of the Individual Defendants.  The alternative to approving the Settlement,

therefore, would be for the parties to complete discovery, proceed to motions for summary judgment and, if necessary, trial.  In light of the strength of the Citigroup Defendants' defenses, *see supra* Part I, and the inherent risks of continued litigation, there is a serious risk that in such a scenario the Settlement Class could receive no compensation for their claims.  Such an outcome plainly is not in the best interests of the class.  As Judge Kaplan recently observed, "[w]hile some may be concerned at the lack of any contribution by the former director and officer defendants to the settlement, Lead Counsel's judgment that the [settlement amount] bird in the hand is worth at least as much as whatever is in the bush, discounted for the risk of an unsuccessful outcome of the case, is reasonable."  *In re Lehman Bros. Sec. & ERISA Litig.*, No. 09 MD 2017 (LAK), 2012 WL 1920543, at *2 (S.D.N.Y. May 24, 2012).

Nor would a contribution by the Individual Defendants of some portion of the total amount enhance recovery by the Settlement Class.  Either way, the Settlement Class will receive $730 million—an amount that no class member has coherently suggested is unfair or inadequate.

Moreover, the claims against the Individual Defendants in this case are extremely weak—a point that underscores the reasonableness of the parties' determination that only Citigroup should pay to resolve this action.  As discussed above, the record is devoid of any evidence that the Individual Defendants did not believe their statements of opinion.  The SEC investigated the same disclosures and ultimately concluded that the "evidence did not . . . clearly demonstrate an intent to deceive by Citigroup executives."  (Ex. 1 at 4.)  As a result, the SEC filed only negligence-based charges against Citigroup and administrative charges against only one of the Individual

Defendants, former CFO Gary Crittenden.  (*See* Ex. 4.)[7]  Indeed, both the Bond Plaintiffs

here and the Lead Plaintiffs in *In re Citigroup Inc. Securities Litigation*, 07 Civ. 9901

(SHS) (S.D.N.Y.), concurred in the assessment that it was not in the interests of class

members to insist upon contribution from the individual defendants.  (*See* Apr. 8, 2013

*Securities* Fairness Hearing Tr. 30–34.)

Moreover, under Section 11, the Individual Defendants are entitled to

assert a "due diligence" defense that is not available to the issuer.  *See* 15 U.S.C.

§ 77k(b)(3)(A) ("[N]o person, other than the issuer, shall be liable . . . who shall sustain

the burden of proof . . .  that . . . he had, after reasonable investigation, reasonable ground

to believe and did believe, at the time such part of the registration statement became

effective, that the statements therein were true and that there was no omission to state a

material fact required to be stated therein or necessary to make the statements therein not

misleading . . . .").  The Individual Defendants had a strong factual basis for believing

that they would prevail on this defense.  Similarly, although the Individual Defendants

also were sued as "control persons" under Section 15, a control person is not liable if "the

controlling person had no knowledge of or reasonable ground to believe in the existence

of the facts by reason of which the liability of the controlled person is alleged to exist."

15 U.S.C. § 77o(a).  Here, plaintiffs faced a high degree of risk that the Individual

Defendants would prevail on this defense.[8]

---

[7]   Arthur H. Tildesley, Jr., also named as a respondent in the SEC proceeding, is not an Individual
Defendant here.  *Crittenden & Tildesley*, File No. 3-13985, 2010 WL 2992474 (SEC July 29, 2010).

[8]   In addition, under Section 15, the Bond Plaintiffs would have been required to prove the unique
element of actual control against the Individual Defendants.  *In re Refco, Inc. Sec. Litig.*, 503 F. Supp.
2d 611, 637 (S.D.N.Y. 2007) ("To prevail on a § 15 claim, a plaintiff is required to prove actual
control, not merely control person status." (alteration and internal quotation marks omitted)).

Contributions to the Settlement from the Individual Defendants also would be contrary to common practice.  Recent major class action settlements of financial crisis-related litigations have not involved any contribution from individual defendants.  *See, e.g.*, Am. Stip. and Agreement of Settlement ¶ 2, *In re Countrywide Fin. Corp. Sec. Litig.*, CV 07-05295 MRP (MANx) (C.D. Cal. 2011), Dkt No. 841; Stip. and Agreement of Settlement ¶ 5, *Pub. Emps. Ret. Sys. of Miss.* v. *Merrill Lynch & Co. Inc.*, No. 08-cv-10841-JSR-JLC (S.D.N.Y. 2012), Dkt No. 174-1; Stip. and Agreement of Settlement with the Bear Stearns Defs. ¶ 6, *In re Bear Stearns Cos. Inc. Sec., Deriv. & ERISA Litig.*, 08 MDL No. 1963(RWS) (S.D.N.Y. 2012), Dkt No. 279; Stip. and Agreement of Settlement ¶ 10, *In re Bank of America Corp. Sec., Derivative & ERISA Litig.*, 09 MDL 2058 (PKC) (S.D.N.Y. 2012), Dkt. No. 767-1.  Notably, the matters in which individual defendants have contributed to the settlement amount typically involve notorious frauds and criminal conduct, including WorldCom, Enron and Tyco.  And unlike plaintiffs here, the plaintiffs in Enron and WorldCom insisted on payments from individual defendants. *See* Peter J. Wallison, *The WorldCom and Enron Settlements:  Politics Rears Its Ugly Head,* Am. Enter. Inst. for Pub. Pol. Res. 1 (March 2005), *available at* http://www.aei.org/files/2005/03/01/20050225_18033MarchFSOnewg.pdf.

Mr. Giffin also objects to the lack of injunctive relief.  But, there is no basis for such extraordinary relief here.  The Bond Plaintiffs did not seek injunctive relief in their consolidated complaint.  Further, such relief would have been unavailable in any event because the alleged injury to the class members could be completely satisfied with money damages.

In sum, the Settlement is fair, reasonable and adequate.

## CONCLUSION

For the foregoing reasons, the Citigroup Defendants respectfully request that the Court approve the Stipulation and Agreement of Settlement, dated March 25, 2013.

Dated:  New York, New York
        July 15, 2013

Respectfully submitted,

PAUL, WEISS, RIFKIND,
        WHARTON & GARRISON LLP

By:  _____/s/ Richard A. Rosen_____

   Brad S. Karp (bkarp@paulweiss.com)
   Richard A. Rosen (rrosen@paulweiss.com)
   Susanna M. Buergel (sbuergel@paulweiss.com)
      1285 Avenue of the Americas
      New York, New York 10019-6064
      Tel.  (212) 373-3000
      Fax  (212) 757-3980

   Charles E. Davidow (cdavidow@paulweiss.com)
   Jane B. O'Brien (jobrien@paulweiss.com)
      2001 K Street NW
      Washington, DC 20006-1047
      Tel.  (202) 223-7300

   *Attorneys for Defendants*