```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 20, 2013
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

IN RE CITIGROUP INC. BOND
LITIGATION

---

08 Civ. 9522 (SHS)

OPINION & ORDER

SIDNEY H. STEIN, U.S. District Judge.

Plaintiffs bring this action on behalf of a class of purchasers of bonds issued by or on behalf of Citigroup, Inc., raising claims pursuant to the Securities Act of 1933. They allege that Citigroup made material misstatements or omissions—primarily concerning the extent and impact of its exposure to subprime mortgage assets—in public offerings associated with forty-eight bond issuances that occurred between May 2006 and November 2008. Plaintiffs have now agreed to settle all claims asserted in this action in exchange for a payment of $730 million, and they seek the Court's approval. Defendants do not oppose that motion. Having reviewed the proposed class action settlement and plan of allocation, the Court has determined that both are fair, reasonable, and adequate and hereby approves the settlement and plan of allocation pursuant to Federal Rule of Civil Procedure 23.

## I. BACKGROUND

### A. The Alleged Fraud Summarized

The allegations in this case concern the same basic Citigroup conduct involved in the other litigations in this multidistrict litigation—notably *In re Citigroup Inc. Securities Litigation*, No. 07 Civ. 9901 (SHS) (the "Securities Action"). The Court recently approved a proposed securities class action settlement and attorneys' fee award in the Securities Action. *See generally In re Citigroup Inc. Sec. Litig.*, 09 MD 2070 (SHS), 2013 WL 3942951 (S.D.N.Y. Aug. 1, 2013). As in that consolidated class action, plaintiffs' injuries here allegedly stem from "Citigroup's investment in, and exposure to, risks associated with a now-infamous species of complex financial instruments: collateralized debt obligations ('CDOs') that have as some or all of their collateral residential mortgage backed securities ('RMBS')." *Id.* at *2.

The specific allegations here are that "Citigroup made materially untrue or misleading statements or omissions in public offering materials associated with forty-eight different bond issuances between May 2006 and August

2008." *In re Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 572 (S.D.N.Y. 2010). These misstatements or omissions allegedly concerned Citigroup's exposure to $66 billion of CDOs backed by subprime mortgage assets, its exposure to $100 billion in structured investment vehicles ("SIVs") backed by similar assets, the extent of reserve capital Citigroup held to offset potential losses from residential mortgage loans, its acquisition of $11 billion in auction-rate securities ("ARS") whose market evaporated during the financial crisis, its misstatement of its capital ratio, and the compliance of its Securities and Exchange Commission filings with Generally Accepted Accounting Principles ("GAAP"). *Id.* at 574-75. Plaintiffs allege that the price of Citigroup bonds "plummeted in value" when the truth about Citigroup's extensive exposure to subprime mortgage assets was disclosed and these misstatements or omissions became apparent. *Id.* at 574. As explained below, the Court found that certain of these allegations stated plausible grounds for relief. *See id.* at 595-96.

### B. Pre-Settlement Procedural History

Two putative class actions raising Securities Act claims based on this alleged fraud were filed in New York State Supreme Court, New York County on September 30 and October 28, 2008. *In re Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d at 581. In addition to Citigroup, the defendants are a number of statutory trusts whose sole assets are securities issued by Citigroup, a number of individuals who are or were either members of the Citigroup Board of Directors or officers of Citigroup, and a plethora of underwriter defendants.[1] (Stipulation and Agreement of Settlement dated March 18, 2013 ("Stipulation"), Ex. 1 to Notice of Motion for Preliminary Approval of Settlement ("Preliminary Approval Motion"), Dkt. No. 153.)

Defendants timely removed both actions, and they were consolidated and accepted by this Court as part of the Citigroup multidistrict litigation in December 2008. *In re Citigroup Bond Litig.*, 723 F. Supp. 2d at 581. The law firm of Bernstein Litowitz Berger & Grossman LLP was appointed to represent plaintiffs in the consolidated action and directed to coordinate with lead plaintiffs and their counsel in the Securities Action. (Order dated Dec. 10, 2008, Dkt. No. 10.) Lead plaintiffs here are a number of pension plans, an insurance company, and two individuals, all of which purchased debt

---

[1] Plaintiffs' claims against the majority of the underwriter defendants were dismissed without prejudice in 2009 pursuant to a stipulation. *In re Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d at 574 n.1.

2

securities issued by Citigroup during the relevant period.[2] Plaintiffs filed a consolidated amended class action complaint on January 15, 2009, raising seven different causes of action pursuant to Sections 11, 12, and 15 of the Securities Act, 15 U.S.C. § 77k, l, o. *In re Citigroup Inc. Bond Litig.*, 723 F. Supp. 2d at 581.

The Citigroup defendants and the underwriter defendants filed separate motions to dismiss the consolidated amended complaint in March 2009. Defendants claimed that plaintiffs lacked standing to bring certain claims; that the heightened pleading standard of Rule 9(b) applied and that plaintiffs' pleadings failed to meet it; and that, even if Rule 9(b) did not apply, plaintiffs' complaint failed to allege actionable misstatements or omissions. *Id.* at 572. In a July 2010 opinion and order, this Court granted in part and denied in part the motions. It found that plaintiffs had standing to bring claims pursuant to Sections 11 and 15 of the Securities Act and that plaintiffs had adequately plead a number of actionable misstatements or omissions. *Id.* Specifically, claims survive alleging that the registration statements accompanying the forty-eight Citigroup bond issuances that took place between May 2006 and August 2008—from which Citigroup raised over $71 billion—contained either material misstatements of fact or omissions regarding Citigroup's holdings of CDOs, the credit quality of Citigroup's SIV holdings, Citigroup's "well-capitalized" status, and Citigroup's compliance with GAAP, in violation of Sections 11 and 15. *Id.* at 595-96. The Court dismissed Section 11 claims alleging misstatements respecting Citigroup's pre-December 2007 SIV holdings and Citigroup's ARS exposure. *Id.* at 591, 593. The Court also dismissed all claims brought pursuant to Section 12, finding that plaintiffs did not have standing to bring such claims because they had not claimed to have purchased bond securities directly from defendants. *Id.* at 585.

Defendants moved for reconsideration of the opinion and order, arguing that controlling precedent dictated that plaintiffs lacked statutory standing to bring certain Section 11 claims; they filed an answer to the amended complaint in October 2010, asserting thirty-eight affirmative defenses. Following full briefing, the Court denied the motion for reconsideration in March 2011. (Order dated March 29, 2011, Dkt. No. 82.)

---

[2] The current class representatives are Louisiana Sheriffs' Pension & Relief Fund, the City of Tallahassee Retirement System, the City of Philadelphia Board of Pensions and Retirements, the Miami Beach Employees' Retirement Plan, Southeastern Pennsylvania Transit Authority, American European Insurance Company, Arkansas Teacher Retirement System, Phillip G. Ruffin, and James M. Brown. (Stipulation at 1.)

Active discovery began in August 2010, soon after the resolution of the motions to dismiss. The scope of plaintiffs' requests for production was broad, and the parties engaged in extensive negotiations and numerous conferences regarding which documents would be produced. Plaintiffs also sought third-party discovery from thirteen nonparties, including Citigroup's auditor—KPMG—and a number of former Citigroup employees. All said, the production resulted in plaintiffs obtaining over 42.5 million pages of documents—approximately 38 million from Citigroup and an additional 4.5 million from nonparties. (Decl. of Steven B. Singer, Esq. dated June 7, 2013 ¶¶ 35-42.) Plaintiffs' counsel also took and defended a total of seventy-six depositions. (*Id.* at ¶¶ 64, 87.) Thirty-three of these depositions were performed on a coordinated basis with plaintiffs in the Securities Action, but fourteen additional depositions took place after the Court issued a stay in the Securities Action. (*Id.* at ¶¶ 90-91.) Finally, plaintiffs vetted and retained six experts to prove their claims and rebut defenses in the areas of damages; the adequacy of Citigroup's loan-loss reserves; GAAP compliance; the composition, risk, credit quality, and valuation of CDOs and SIVs; due diligence in connection with public offerings; and federal banking regulations. (*Id.* at ¶ 94.)

During this period, the Court received briefing in support of and in opposition to a number of motions. Specifically, in March 2011, plaintiffs moved for class certification. (Mot. for Class Certification dated March 11, 2011, Dkt. No. 78.) In May 2011, plaintiffs served a motion to compel on three federal banking agencies, which had refused to produce certain requested documents based upon the bank examination privilege. (Mot. to Compel dated May 13, 2011, Dkt. No. 86.) In October 2011, defendants filed a Rule 12(c) motion, arguing that the recent decision of the U.S. Court of Appeals for the Second Circuit, *Fait v. Regions Financial Corp.*, 655 F.3d 105 (2d Cir. 2011), required dismissal of plaintiffs' claims. (Mot. for J. on the Pleadings dated October 27, 2011, Dkt. No. 139.) Following extensive communications among the parties and a detailed review of the allegedly privileged documents, the Court granted in part and denied in part the motion to compel. (Order dated Dec. 5, 2011, Dkt. No. 142.) The Court construed the Rule 12(c) motion as a motion for summary judgment and denied it with leave to renew. (Order dated Nov. 23, 2011, Dkt. No. 141.) And although the Court reviewed the memoranda and exhibits submitted in connection with the motion for class certification, the parties reached a settlement prior to the resolution of that motion.

### C. Settlement Negotiation and the Approval Process

#### 1. *Negotiations and Preliminary Approval*

The parties broached the possibility of resolving this action in early 2012, while fact and expert discovery was proceeding at full force. By September 6, 2012, discussions had progressed to the point that the parties sought, and the Court agreed to, a ninety-day stay of all proceedings—subsequently extended to the end of January 2013. Around this time, the parties jointly engaged Layn R. Phillips, a retired federal judge, to mediate settlement negotiations. The mediator was familiar with the underlying facts because of his previous experience mediating the settlement in the Securities Action. (Singer Decl. ¶¶ 103-04.)

Plaintiffs and defendants provided Judge Phillips with numerous submissions regarding liability and damages during the last few months of 2012 and early 2013, resulting in a recommendation by him that the action be settled for a payment of $730 million by Citigroup. On January 25, the parties accepted this recommendation. (Singer Decl. ¶¶ 105-07.)

The parties then negotiated the remaining terms of the settlement, and on March 25 the Court preliminarily approved the settlement; certified a class consisting of all persons or entities that purchased or otherwise acquired Citigroup bonds during the relevant period for the purposes of settlement;[3] appointed Bernstein Litowitz as class counsel; and appointed the above-described plaintiffs as class representatives. (Singer Decl. ¶¶ 109-10; Order Preliminarily Approving Settlement and Providing for Notice dated Mar. 25, 2013 ("Preliminary Approval Order"), Dkt. No. 155.) Preliminary Approval Order ¶¶ 1-4.) The Court had the benefit of the parties' extensive briefing on the class certification issue to inform its decision to certify the class. The order also approved the form, content, and manner of notice to be distributed to class members—which explained the procedures for submitting a proof of claim, requesting exclusion from the class, and objecting to any aspect of the

---

[3] The class consists of:
> "[A]ll persons and entities who purchased or otherwise acquired, from May 11, 2006 through and including November 28, 2008 (the "Settlement Class Period"), the debt securities (including medium term notes), series of preferred stock and certain series of depository shares representing interests in preferred stock, in or traceable to offerings of the Bond Class Securities, and were damaged thereby (the "Bond Class")."

(Preliminary Approval Order 2-3.)

proposed settlement—and set a fairness hearing for July 23. (Preliminary Approval Order ¶¶ 5, 7, 8.)

### 2. Objections and the Fairness Hearing

Following the issuance of the preliminary approval order, the claims administrator sent notice of the settlement to nearly 500,000 potential class members. Plaintiffs' counsel received only thirty-one requests for exclusion by the date provided in the notice—eighteen of which are from individuals who are not members of the class, did not suffer losses, or did not provide sufficient information to allow plaintiffs' counsel to determine whether they are class members. (Aff. of Jason Zuena dated July 15, 2013 ¶ 5, Ex. 1 to Supp. Decl. of Steven Singer, Esq. ("Supp. Singer Decl.") dated July 15, 2013, Dkt. No. 171; Pls.' Reply Mem. of Law in Support of Mot. for Final Approval of Class Action Settlement and Plan of Allocation ("Pls. Reply") 2, Dkt. No. 170.) Further, plaintiffs' counsel received only five objections to the settlement— one of which included no content. (Pls. Reply 1.) No institutional investor— many of which had large financial stakes in this litigation—has objected to any aspect of the settlement. (*Id.*) And none of the objections challenge the fairness of the proposed settlement figure or the plan of allocation.

After reviewing all written objections, the Court held a fairness hearing as scheduled. At the hearing, the Court heard presentations from plaintiffs' counsel regarding the fairness of the settlement and the reasonableness of the fee request. No objector appeared in person.

## II. FINAL APPROVAL OF CLASS ACTION SETTLEMENT

### A. Proper Notice of Class Certification and the Settlement

"Rule 23 requires notice to the class both when the class is certified pursuant to Rule 23(b)(3) and when a class action settlement has been proposed for court approval." *In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *7. As this Court recently noted, the notice requirements of Rule 23(e) are less specific than those of Rule 23(c); the Court therefore focuses its analysis on the Rule 23(c) requirements. *Id.* That provision requires that the notice inform the class of:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting

exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Individual notice must be provided "to all members who can be identified through reasonable effort." *Id.* Compliance with these requirements satisfies due process. *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 185 (S.D.N.Y. 2012). Additionally, because this class action settlement involves securities claims, the Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires that certain additional information be included in the notice. *See id.*; 15 U.S.C. § 78u–4(a)(7).

The Court has reviewed the notice and finds that it complies with the requirements of Rule 23, the PSLRA, and due process. Specifically, the claims administrator mailed copies of the notice packet to almost 500,000 potential class members and informed the recipients of the date by which requests for exclusion were to be received. (Zuena Aff. ¶¶ 2, 4.) The notice also adequately informed the potential class members of the information required by Rule 23 and the PSLRA. (*See* Notice of Pendency of Class Action and Proposed Settlement; Settlement Fairness Hearing; and Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice"), Ex. A to Aff. of Stephen J. Cirami dated June 7, 2013, Ex. 1 to Singer Decl.) As such, the Court finds that notice to the class was proper.

### B. Fairness of the Settlement

Pursuant to Rule 23(e), the Court must review a proposed class action settlement to determine whether it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). The fairness of a settlement is determined by looking at both the negotiating process by which it was achieved and the settlement's terms—that is, procedural and substantive fairness. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Courts evaluate class action settlements with the "general policy favoring the settlement of litigation" in mind. *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). Nonetheless, reviewing courts must exercise careful scrutiny to ensure that the requirements of Rule 23 have been met and that the settlement is not a product of collusion. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001). Because this settlement was negotiated prior to class certification, it is "subject to a higher degree of scrutiny in assessing its fairness." *Id.*

Applying the required heightened level of scrutiny, the Court finds the proposed class action settlement is fair, reasonable, and adequate for the following reasons.

### 1. Procedural Fairness

Courts may apply a presumption of fairness when a class settlement is the product of "arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores*, 396 F.3d at 116 (quoting *Manual for Complex Litigation (Third)* § 30.42 (1995)). This presumption arises because if the negotiation process is fair "the forces of self-interest and vigorous advocacy will of their own accord produce the best possible result for all sides." *In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *8 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 132 (S.D.N.Y. 1997)). The Court finds that is the case here.

Both plaintiffs' and defendants' attorneys are experienced practitioners whose skill and knowledge of the case has been demonstrated to the Court's satisfaction. As explained, the parties engaged in extensive and contested discovery for over two years prior to the stay imposed by this Court, at which point settlement became the parties' primary focus. Settlement negotiations were overseen by an experienced, neutral third-party mediator over a period of months, and the parties eventually agreed to the settlement terms recommended by this impartial mediator. For these reasons, the Court finds that settlement negotiations were fair and free from collusion, and the presumption of fairness, adequacy, and reasonableness applies. *See Wal-Mart Stores*, 396 F.3d at 116.

### 2. Substantive Fairness

"The Court must next consider whether the substantive terms of the settlement support or rebut the presumption of fairness arising from the arm's-length negotiations." *In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *9. The following nine factors, set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), guide the Court's analysis of the substantive fairness of the terms of the settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund [compared] to a possible recovery in light of all the attendant risks of litigation.

*In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *9 (quoting *Wal-Mart Stores*, 396 F.3d at 117). The Court scrutinizes each of the *Grinnell* factors carefully, but "stop[s] short of the detailed and thorough investigation that it would undertake if it were actually trying the case." *Grinnell*, 495 F.2d at 462.

    *a. The complexity, expense, and likely duration of the litigation*

As this Court noted in the Securities Action settlement, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *9 (quoting *McBean v. City of N.Y.*, 233 F.R.D. 377, 385 (S.D.N.Y. 2006)). Other courts in this district "have long recognized" that securities class action litigation, in particular, "is notably difficult and notoriously uncertain." *In re FLAG Telecom Holdings, Ltd. Sec. Litig.*, No. 02 Civ. 3400 (CM) (PED), 2010 WL 4537550, at *15 (S.D.N.Y. Nov. 8, 2010) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999)). This case was no exception.

Although this action has already proven complex, expensive, and time consuming during its four-and-one-half year duration, the Court has no doubt that the future litigation would have been equally or more so. Extensive summary judgment motions are to be expected. If the litigation were to proceed past summary judgment, preparation for and conduct of a trial would have consumed substantial resources. Either way, the result would have been ripe for appeal, requiring additional time and expense. This factor therefore weighs in favor of approval.

    *b. The reaction of the class to the settlement*

Minimal objections and few requests for exclusion from class members are evidence that a settlement is fair and adequate. *See Wal-Mart Stores*, 396 F.3d at 118; *D'Amato*, 236 F.3d at 86-87. This factor carries particular weight here where only five parties submitted objections, none of which challenge the fairness of the terms of the settlement. Also noteworthy is that only thirty-one requests for exclusion were received from a distribution pool of nearly 500,000—and only thirteen of these requests for exclusion were from class members who suffered losses. Moreover, not one of the objections or requests for exclusion was submitted by an institutional investor. Therefore, as in the Securities Action, "the class's reaction weighs heavily in favor of approval." *In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *9.

> c. *The stage of the proceedings and the amount of discovery completed*

This factor is "intended to assure the Court that counsel for plaintiffs have weighed their position based on a full consideration of the possibilities facing them." *In re Global Crossing Sec. and ERISA Litig.*, 225 F.R.D. 436, 458 (S.D.N.Y. 2004) (quoting *Klein ex rel. Ira v. PDG Remediation, Inc.*, No. 95 Civ. 4954 (DAB), 1999 WL 38179, at * (S.D.N.Y. Jan. 28, 1999)) (quotation marks omitted). Here, litigation has been ongoing for years, and the plaintiffs had a thorough understanding of the strengths and weaknesses of their case. In addition to having the benefit of the Court's opinion and order resolving the motion to dismiss, the Court had decided defendants' motion for reconsideration and their motion for judgment on the pleadings. And both parties had submitted arguments and evidence in favor of or in opposition to the motion for class certification.

Moreover, discovery had been extensive and was nearly complete. As explained, plaintiffs had gathered approximately 42.5 million pages of documents, had taken or defended seventy-six depositions, and had engaged six experts. The plaintiffs had also fought a battle—including a hotly contested motion to compel—over certain documents in the possession of federal banking agencies and claimed to be protected by the bank examination privilege. The upshot of these facts is that "[p]laintiffs . . . had more than enough information to make an informed and intelligent decision." *See In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *10. This factor also weighs in favor of approval.

> d. *The risks of continued litigation associated with maintaining the class through trial and establishing liability and damages*

Uncertainty abounded with regard to plaintiffs' ability to maintain the class through trial and to establish liability and damages—*Grinnell* factors four, five, and six. The Court will not exhaustively detail all the difficulties plaintiffs would have faced had the litigation continued, but highlights a few representative examples.

First and most obviously, the Court had not yet resolved the motion for class certification. Plaintiffs therefore not only faced the risk of maintaining the class through trial, but also of the class potentially not being certified. *See In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *10 ("It is no coincidence that the parties' settlement talks ramped up specifically to avoid the first of these uncertainties: that the Court might deny class certification.").

The highest hurdle for plaintiffs to overcome, however, was establishing liability. In addition to having to counter Citigroup's primary defense—that

its offering materials contained no material misstatements or omissions and that the market was well aware of any allegedly misstated or omitted information—plaintiffs would have had to contend with case law that, since the resolution of defendants' motion to dismiss, has raised the bar for establishing Section 11 liability based on certain types of statements. Following the Second Circuit's decision in *Fait*, plaintiffs would have had to demonstrate that any of defendants' alleged statements that could be categorized as statements of opinion—such as those involving loan-loss reserves—were not only untrue, but "misstated their truly held belief." 655 F.3d at 108. Other courts in this district have interpreted *Fait*'s definition of statements of opinion broadly, applying it to, for example, estimates of the fair market value of assets. *See In re Gen. Elec. Co. Sec. Litig.*, 856 F. Supp. 2d 645, 653 (S.D.N.Y. 2012). *Fait* might have sounded the death-knell to plaintiffs' hope of establishing liability based on the majority of the claims that survived the motion to dismiss.

Finally, in order to be awarded damages, plaintiffs would have had to contend with Citigroup's defense that the historic events occurring in the financial world between May 2006 and November 2008—in particular the market collapse in the latter months of 2008—caused their losses, rather than the misstatements or omissions allegedly made in connection with the public offerings at issue here.

The purpose of this brief exploration of ways in which plaintiffs' efforts might have fallen short is to demonstrate that the fourth, fifth, and sixth *Grinnell* factors all weigh in favor of approval of the settlement. The Court finds particularly compelling the increased risk plaintiffs faced in establishing liability post-*Fait*.

### e. *The ability of defendants to withstand a greater judgment*

Plaintiffs concede that Citigroup could likely withstand a greater judgment. This factor, therefore, does not weigh in favor of approval. This Court and numerous others have recognized, however, that "standing alone," a defendant's ability to withstand a greater judgment "does not suggest that the settlement is unfair." *See In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *11 (quoting *D'Amato*, 236 F.3d at 86).

### f. *The range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation*

Finally, the Court considers the range of reasonableness with respect to the settlement, which involves a comparison of "the terms of the compromise with the likely rewards of litigation." *In re Citigroup Inc. Sec. Litig.*, 2013 WL

3942951, at *11 (quoting *Weinberger*, 698 F.2d at 73). Certainly, the settlement does not represent the best possible recovery for plaintiffs; their damages experts estimate that to be approximately $3 billion. (Singer Decl. ¶ 138.) Nevertheless, a recovery of $730 million represents a substantial sum, "and the risk that the class would recover nothing or would recover a fraction of the maximum possible recovery must factor into the decisionmaking calculus." *In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *11. Moreover, plaintiffs' counsel represents that this $730 million figure is the second-largest recovery in a securities class action brought on behalf of purchasers of debt securities. (Singer Decl. ¶ 3.) Also worthy of note is that, although this litigation and the Securities Action differ in meaningful ways reflected in the settlement figures—most notably insofar as the elements of the violations alleged in that case are arguably more difficult to prove than the elements of the Securities Act violations alleged here—the recovery here is larger than that achieved in the Securities Action, both in terms of the total amount and the percentage of the best possible recovery the settlement figure represents. *See id.* at *11-12. And the Court found that the Securities Act recovery "stands out in the crowd." *Id.* at *12. In short, the final two *Grinnell* factors weigh heavily in favor of approval, as the settlement figure represents a noteworthy recovery for the class, and it falls well within the range of reasonableness.

As in the Securities Action, here, "nearly every traditional indicator of a settlement's fairness points in favor of approval of this settlement." *Id.* at *13. The Court therefore finds that the settlement is fair, reasonable, and adequate and grants plaintiffs' motion for final approval.

### III. FINAL APPROVAL OF THE PLAN OF ALLOCATION

The plan of allocation is subject to the same test of fairness, reasonableness, and adequacy as the settlement itself. *See In re IMAX Sec. Litig.*, 283 F.R.D. at 192; *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 319, 344 (S.D.N.Y. 2005.) "As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re Citigroup Inc. Sec. Litig.*, 2013 WL 3942951, at *13 (quoting *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. at 133). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *In re IMAX Sec. Litig.*, 283 F.R.D. at 192 (quoting *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008)) (quotation marks omitted).

Here, the proposed plan of allocation provides for calculation of damages based on the formula set forth in Section 11(e) of the Securities Act, 15 U.S.C.

§ 77k(e)[4]; it essentially allocates damages on a pro rata basis according to the net loss sustained for each qualifying bond security. Specifically, recognized loss amounts are calculated based on the difference between the purchase price and the closing price of each bond on the last day of the settlement class period. This amount is then offset by recognized gain amounts calculated for shares of the same bond sold, converted, or held for a gain. The resulting figure is the net recognized loss for that security. A claimant's award is the sum of his or her net recognized losses, and the award is allocated on a pro rata basis based on the relative size of each claim. This general rule applies except to class members still holding bond class securities as of March 18, 2013. The calculation of those class members' net recognized loss will differ insofar as the recognized loss amount will be discounted by 90 percent to account for a substantial recovery, subsequent to the class period, in price of a majority of the bond class securities. (Singer Decl. ¶¶ 151-52.)

The Court finds the plan of allocation has a rational basis grounded in a federal statute and that it was formulated by competent, experienced counsel. Thus, the plan is fair, reasonable, and adequate, and the Court hereby grants plaintiffs' motion for final approval of the plan of allocation.

## IV. CONCLUSION

For the reasons set forth above, the $730 million settlement and the plan of allocation are fair, reasonable, and adequate. In addition, the Court finds that the class was provided with adequate notice of class certification and of the settlement. Accordingly, plaintiffs' motion for final approval of the settlement and the plan of allocation is granted. (Dkt. No. 156.)

Dated: New York, New York
       August 20, 2013

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.

---

[4] The statute provides for the following calculation of damages: "the difference between the amount paid for the security ... and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security ... and the value thereof as of the time such suit was brought." 15 U.S.C. § 77k(e).